**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, HI 96734
T:(702) 868-1115

**LAW OFFICES OF GERARD JERVIS**
GERARD A. JERVIS
Hawaii Bar No. 2490
354 Uluniu Street, Ste. 100
Kailua, Hawaii 96734
T: (808) 262-2828
F: (808) 261-2921

*Attorneys on behalf of Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA et al., on behalf of themselves and all others similarly situated, ) <br> ) <br> Plaintiffs; ) <br> ) <br> vs. ) <br> ) <br> PIONEER HI-BRED INTERNATIONAL, INC., a DuPont Business and Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10; ) <br> ) <br> ) <br> ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL NO.:  CV 12 00231 – LEK BMK <br><br> **WAIMEA RESIDENTS' OPPOSITION TO DEFENDANTS' MOTION DISMISS SECOND AMENDED COMPLAINT (DOC #141); DECLARATION OF KYLE SMITH; EXHIBIT 1; CERTIFICATE OF SERVICE** <br><br> **Hearing:** <br> **Date:**   **June 24, 2013** <br> **Time:**   **10:30 a.m.** <br> **Judge:**   **Hon. Leslie Kobayashi** |

# TABLE OF CONTENTS

I. INTRODUCTION                                                                    2

II. LEGAL STANDARD                                                                 3

III. ARGUMENT                                                                      4

    A.  Waimea Residents' Negligence Claims Did Not Accrue in          4
        June 2000 Because Defendants' Negligent Conduct and its
        Connection to the Damage (Dust & Pesticides in Waimea)
        Was Not Discovered Until 2011.

        1.  The Waimea Petition Did Not Start the Statute of        5
            Limitations in June 200 Because It Establishes
            Neither: a) Discovery of Defendants' Negligent Acts,
            nor b) Discovery of the Casual Connection Between the
            Negligent Acts and the Damage.

        2.  The Continuing Nature of Defendants' Dust & Pesticides  7
            Does Not Establish Knowledge of the Negligent Conduct or a
            Causal Connection.

        3.  Whether Plaintiffs "Discovered or Should Have Discovered"
            Defendants' Negligent Conduct and the Causal Connection
            With the Damage is a Question of Fact.

    B.  Plaintiff's Strict Liability Claims Survive for the Same Reasons   12
        Because the Same Questions of Fact Permeate Plaintiffs' Claims.

    C.  Plaintiffs' Claims for Trespass & Nuisance Survive for the Same Reasons   13
        Because the Same Questions of Fact Permeate Plaintiffs' Claims

    D.  Defendants' Landlord Liability Arguments Fail for the Same Reasons.   14

    E.  Plaintiffs' Claims for Misrepresentations are Not Time Barred   15
        Because They Were Only Recently Discovered and are
        Supported by Evidence and the Restatement.

        1.  The Allegations of the Complaint do Not Establish that   15
            Plaintiffs Were Aware of Defendants' Misrepresentations
            Until Recently.

2.  Defendants' Misrepresentations to the County of Kauai          18
    are Actionable Misrepresentations.

F.  Defendants' Final Arguments All Address Questions of Fact      20
    and Misconstrue the Allegations of Plaintiffs' Complaint
    and Hawaii Law.

    1.  Plaintiffs lacked actual knowledge of facts,              20
        not just legal knowledge of a statutory violation.

    2.  Extrinsic Evidence Supports the Plausibility             22
        of Plaintiffs' Claims for Misrepresentation &
        Fraudulent Concealment.

G.  Mediation & Abatement                                          27

IV. CONCLUSION                                                     28

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                              <u>PAGE(S)</u>

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173                                              3
L.Ed.2d 868 (2009).

*Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir.2009).                                                  3

*Smallwood v. NCsoft Corp.*, 730 F.Supp. 2d 1213, 1220-21                                                4, 19,
(D.Haw.2010)                                                                                             22

*Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)                                                     4

*Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct 1827                                                  4

*Scheuer v. Rhodes*, 419 U.S. 232, 94 S.Ct 1683 (1974)                                                   4

*Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 90 (Haw. 1982)                                        5

*AOAO of Newtown Meadows v. Venture 15, Inc.*, 115 Haw. 232, 277,                                        10, 11
167 P.3d 225 (Haw. 2007)

*Leaf v. City of San Mateo*, 104 Cal. App. 3d 1398, 163 Cal.Rptr. 711                                    10
(1980)

*Enfield v. Hunt*, 154 Cal.Rptr. 146, 147, 92 Cal.App.3d 417, 419 (1979)                                 11

*De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.) *cert. denied*,                                       19
441 U.S.965, 99 S.Ct. 2416 (1979)

*Hays v. City & Cnty. Of Honolulu*, 81 Haw. 391, 917 P.2d 718 (Haw. 1996)                                20, 21,

STATUTES & AUTHORITIES                                                PAGE(S)

Fed. R. Civ. P. 12(b)(6)                                                  3

Fed. R. Civ. P 8(a)(2)                                                    3

Restatement (Second) of Torts, §311 *Negligent Misrepresentation*        18
*Involving Risk of Physical Harm*

# I.

# INTRODUCTION

Defendants' motion to dismiss asserts that Waimea Residents' claims are time barred because "Plaintiffs knew of their alleged claims for more than a decade before they filed suit," which Defendants claim is shown by the "clear allegations" of Plaintiffs' complaint.[1] Therefore, Defendants ask this Court to preemptively rule as a matter of law that individual Plaintiffs' misrepresentation claims should be summarily dismissed and that all remaining damages for negligence, nuisance, strict liability, and trespass are limited to just two years of damages.

In support of this position, Defendants claim that individual plaintiffs discovered or should have discovered, a) Defendants' negligent acts; b) damage to their persons and property; and c) the causal connection between the two by June 2000 because the Waimea community warned local growers (including Pioneer) about the impact of dust and their fear of pesticides in a petition to local growers (including Pioneer) in June 2000. Further, Defendants claim "Plaintiffs' fraudulent concealment allegations are implausible."[2]

These arguments, however, misconstrue Plaintiffs' complaint, raise questions of fact inappropriate for a motion to dismiss, and misapply Hawaii law. Accordingly, Waimea Residents respectfully request this Court to deny Defendants' motion to dismiss because:

- **Waimea Residents' claims did <u>not</u> "accrue" because of the Waimea Petition in June 2000.**[3] Rather, because the Waimea Petition does not establish knowledge of: a) Pioneer's negligent conduct, or the b) causal connection between Pioneer's conduct and the damage from dust and pesticides to their property, the statute did not begin to run under Hawaii's "Discovery Rule."

---

[1] *See* Defendants' Motion to Dismiss (Doc. #141-1) at 1.

[2] *Id.* (emphasis added)

[3] *See* Waimea Residents' June 2000 Petition for Cleaner Air, Exhibit 5 to Second Amended Complaint ("SAC").

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

- **Whether Plaintiffs "discovered or should have discovered" Defendants' negligent conduct in June 2000 is a question of fact for the jury.** While Defense counsel are free to argue that individual plaintiffs "knew or should have known" of Defendants' negligence in June 2000, this is a question of fact for the jury that is wholly inappropriate for a motion to dismiss.

- **Waimea Residents' claims are supported by substantial evidence.** While the allegations of the Plaintiffs' complaint should be taken as true, extrinsic evidence supports Plaintiffs' claims, which demonstrate that the Plaintiffs' claims rise far above mere "plausibility."

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails 'to state a claim upon which relief can be granted.[4] To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[5] "While Rule 8 does not demand detailed factual allegations, 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[6] On a Rule 12(b)(6) motion, a court must therefore take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.[7] "As the Ninth Circuit has stated, '[t]he issue is not whether a plaintiffs' success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims.'"[8] Thus, "the court must determine

---

[4] FED.R.CIV.P. 12(b)(6).

[5] FED.R.CIV.P. 8(a)(2).

[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[7] *Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir.2009).

[8] *Smallwood v. NCsoft Corp.,* 730 F.Supp. 2d 1213, 1220-21 (D.Haw.2010)(quoting *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.) *cert. denied,* 441 U.S.965, 99 S.Ct. 2416 (1979).

3

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

whether or not it appears to a certainty under existing law that no relief can be granted under any sort of facts that might be proved in support of a plaintiffs' claims."[9]

## III.

## ARGUMENT

**A. Waimea Residents' Negligence Claims Did Not Accrue in June 2000 Because Defendants' Negligent Conduct and its Connection to the Damage (Dust & Pesticides in Waimea) Was Not Discovered Until 2011.**

Defendants' motion begins with arguing that Plaintiffs' damages for negligence beyond two years are preemptively time-barred because they "accrued not later than June 2000 when [Waimea residents] complained to Pioneer that its farming practices were impacting them."[10] Defendants rely upon one piece of evidence for this contention: Waimea's June 2000 Petition to local growers like Pioneer.[11] Thus, because Pioneer received a petition about dust and pesticides in June 2000 from the Waimea community,[12] Defendants presume that by June 2000, "Plaintiffs had discovered the alleged *negligent acts*, the alleged *damage* and the *causal connection* between the two" by this time.[13]

Defense counsel's conclusion predictably tracts the magic trifecta affirmed by the Hawaii Supreme Court in *Yamaguchi v. Queen's Med. Ctr.*, which states that HRS 657-7's two-year statute of limitations begins to run when a plaintiff discovers or should discover: 1) the negligent

---

[9] *Id.*; *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)(quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct 1827 ("Rule 12(b)(6) does not countenance…**dismissals based on a judge's disbelief of a complaint's factual allegations."**)(emphasis added)(quoting *Scheuer v. Rhodes*, 419 U.S. 232, 94 S.Ct 1683 (1974)(**A well-pleaded complaint may proceed even if it appears "that recovery is very remote or unlikely**.")(emphasis added).

[10] Motion at 7.

[11] Ex. 5 to SAC, Waimea Peititon.

[12] Ex. 5 to SAC, Waimea Petition.

[13] Motion at 7 (emphasis added).

4

act; 2) the damage; and 3) the causal connection between the two.[14] While Defendants demonstrate they know the rule, however, their motion proffers presumption over analysis how the facts and evidence in this case actually satisfy *Yamaguchi*. This is unsurprising for two reasons. First, if one considers the evidence and allegations given by Defendants to toll the statutes of limitation, it is readily apparent that neither the allegations of Plaintiffs' complaint nor the Waimea Petition meet the *Yamaguchi* factors. Second, whether the evidence tolls a statute of limitations is an inquiry for the jury under Hawaii law that turns on questions of fact that survives summary judgment, much less a motion to dismiss.

1. **The Waimea Petition did <u>not</u> start the statute of limitations in June 2000 because it establishes neither: a) discovery of defendants' negligent Acts, nor b) discovery of the causal connection between the negligent acts and the damage.**

As noted, HRS 657-7's two-year statute of limitations begins to run when a plaintiff **discovers or should have discovered**: 1) the negligent act; 2) the damage; and 3) the causal connection between the two.[15] The first reason Defendants' motion fails is because the June 2000 Waimea Petition does not meet the elements required by *Yamaguchi* to initiate the statute of limitations. Specifically, the Waimea Petition does <u>not</u> establish that Plaintiffs discovered (or should have discovered) the damage, Defendants' negligent acts, or the causal connection between Defendants' negligence and the damage by June 2000. While the Waimea Petition does indicate Waimea citizens were aware and concerned about impact to their community by dust

---

[14] *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 90 (Haw. 1982)(Statute of limitation under HRS 657-7 begins to run "the moment plaintiff **discovers or should have discovered** the negligent act, the damage, and the causal connection between the former and the latter.")(emphasis added); *see also* HAW. R. STAT. §657-7 ("Actions for recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided within section 657-7.").

[15] *Id.*

and pesticides from nearby agricultural growers, this at best only meets one element (knowledge of the damage) of the three-prong inquiry under *Yamaguchi*.

This is clear on the face of the Waimea Petition. To begin, the petition is <u>not</u> Pioneer specific, but is instead directed to "local growers of the Waimea, Kauai region."[16] Thus, while the petition placed local growers, including Pioneer, on notice of the dust impacting Waimea and the Waimea communities' fears about pesticides,[17] it provides no basis to conclude that individual plaintiffs' knew of Defendants' specific negligent conduct, nor that such conduct was causing the damage to their community. Defendants' argument that the drafters and signers of the petition had already discovered their negligent conduct is pure conjecture, and is precisely the kind of factual inquiry appropriate for a jury to determine.[18]

Suspicion that local agricultural businesses are creating dust and not following regulations does not equal actual knowledge of negligent conduct nor does it establish knowledge of a causal connection between Defendants' negligence and the damage. While it may be relevant to whether individual Waimea residents exercised reasonable diligence to discover Defendants' negligence, this is a question of fact for a jury. On the face of the Waimea Petition, however, there is not sufficient evidence to reach any such conclusion. Therefore, because the Waimea Petition does <u>not</u> establish knowledge of Defendants' negligent acts, nor any causal connection between Defendants' negligent acts and damage to the community, *as a matter of law*, Defendants' motion should be denied.

---

[16] Ex. 5 to SAC, Waimea Petition.

[17] *Id.*

[18] Note this distinction is not lost on Pioneer. For example, in Pioneer's October 31, 2000, Response Letter to the Waimea Petition, attached to SAC as Exhibit 6, Pioneer distances itself from being the only target of the Waimea Petition: "In June of this year a copy of a petition was addressed to local growers was handed to a staff member of Pioneer Hi-Bred International and, we presume, to other organizations and individuals farming near Waimea."

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

## 2. The continuing nature of Defendants' dust & pesticides does not establish knowledge of negligent conduct or a causal connection.

Defendants' argument that "the clear allegations of multiple allegations of Plaintiffs' pleading" toll the statute of limitation similarly fails. Defendants claim that three specific paragraphs in the complaint in addition to the Waimea Petition conclusively establish that "Plaintiffs had discovered the alleged negligent acts, the alleged damage, and the causal connection between the two. ( E.g. SAC ¶¶ 17, 41, 42, Exhibit 5 to SAC)."[19] Exhibit 5 is the Waimea Petition, already addressed above. The three specific paragraphs provide:

> 17)  Defendants' failure to prevent and control soil erosion from the GMO Test Fields results in the routine generation of excessive fugitive airborne dust that blows into the Waimea community and Waimea Residents' homes, which has occurred from the inception of Pioneer's GMO operation to the present at levels far in excess of historic agriculture practiced near Waimea.
>
> . . .
>
> 41)  Waimea residents have attempted to bring their concerns over the persistent drift of fugitive dust and dangerous pesticides into the Waimea community to Pioneer's attention for over a decade without success.
>
> 42)  In June 2000, Waimea residents petitioned Pioneer to address the impact of fugitive dust and chemicals from Pioneer's GMO Test Fields on their community (the "Waimea Petition").[20]

These paragraphs therefore explain Plaintiffs' contention that Defendants' failure to prevent soil erosion has resulted in the dust blowing into the community (¶17), that Waimea residents have attempted to bring their concerns to Pioneer's attention without success (¶41), and that Waimea residents gave the Waimea Petition to Pioneer to address their concerns about dust and pesticides (¶42). While these three paragraphs acknowledge the continuing nature of dust impacts to

---

[19] Motion at 7 ("The SAC demonstrates that by that point Plaintiffs had discovered the alleged negligent acts, the alleged damage and the causal connection between the two. (*E.g.* SAC ¶¶17, 41, 42, Exhibit 5 to SAC).").

[20] *See* SAC at 6, 10-11.

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

Waimea, and confirm Waimea's concerns over dust and pesticides and their efforts to bring these impacts to Pioneer's attention starting in 2000, these paragraphs do not establish that individual Plaintiffs were aware of Defendants' negligence conduct or the causal connection between that negligent conduct and the ongoing injury. Importantly, Defendants' contention to the contrary contradicts both the paragraphs they cite as well as specific allegations in the complaint that Plaintiffs discovered Defendants' negligence after years of injury to their homes and lives.[21] Thus, to jump to the conclusion urged by Defendants (i.e. knowledge on behalf of individual Plaintiffs) requires specifically rejecting allegations of Plaintiffs' complaint, which Rule 12(b)(6) expressly prohibits.

Despite the mandate of Rule 12(b)(6), Defendants maintain – without evidence – that Plaintiffs had "discovered the alleged negligent acts, the alleged damage, and the causal connection between the two," based on these three paragraphs and the Waimea petition and that ` Plaintiffs unduly delayed bringing their claims against Defendants.

This position, however, contradicts Defendants' vociferous and repeated argument that the years of dust and pesticide impacts caused by Pioneer's GMO Testing operation are presumptively not evidence of negligence because of the Hawaii Right to Farm Act. As Defendants' have repeatedly maintained, so long as "Pioneer conducts its farming operations appropriately… it is immune from liability under the Hawaii Right to Farm Act, HRS Ch. 165."[22] This is because, in Defendants' view, "[t]he use of agricultural chemicals is, by definition, part of farming, and the essence of the Hawaii Right to Farm Act …is that off-site impacts incident to proper farming are presumptively not tortious. Plaintiffs are entitled to try to

---

[21] SAC at ¶¶71- 78.

[22] Defendants Pioneer Hi-Bred International, Inc., Gay & Robinson, Inc., and Robinson Family Partners' Scheduling Conference Statement (Doc. #8) at 3.

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

prove Pioneer failed to follow proper farming practices, but that does not implicate Pioneer's landlord."[23] Defendants therefore claim immunity from liability for offsite impacts caused by their dust and pesticides... *until and unless* it is shown they are not following "generally accepted agricultural and management practices."[24] Thus, even in Defendants' view, knowledge of the damage (i.e. offsite impact of dust and pesticides) is not enough until Plaintiffs have knowledge of Defendant's failure to follow "generally accepted agricultural and management practices." And whether or not Defendants followed "

Defendants cannot have it both ways. If the continuous off-site impact of dust and pesticides to Waimea for more than decade is prima facie evidence of negligence sufficient to trigger the statute of limitations, then the Right to Farm act is no longer at issue because dust and pesticides in the air would itself be evidence of a continuing tort. On the other hand, if the Hawaii Right to Act applies, then evidence of continuous dust and pesticides would "presumptively not tortious," which means Plaintiffs' causes of action could not begin to run until Plaintiffs later discovered Defendants' negligent conduct as alleged in the complaint.

### 3. Whether Plaintiffs "discovered or should have discovered" Defendants' negligent conduct and the causal connection with the damage Is a question of fact.

While Defendants' failure to satisfy the elements of *Yamaguchi* are reason enough to deny their motion, the more fundamental reason why Defendants' motion to dismiss should be denied is because whether Waimea Residents "discovered or should have discovered"

---

[23] *See* Defendants' Opposition to Motion to Amend (Doc.#102) at 11.

[24] *See*, e.g., Defendants' Motion to Dismiss Robinson Entities (Doc. #140-1) at 12 ("Rather, farming can be a nuisance only where 'the farming operation has be conducted in a manner [not] consistent with generally accepted agricultural and management practices.").

Defendants' negligent conduct, the damage, and the causal connection between the two *is a question of fact for the jury*.

For example, in *Newtown Meadows*, the Hawaii Supreme Court analyzed the "Discovery Rule" and whether HRS 657-7's two-year statute of limitations barred construction defects claims against the developer and contractors of Newtown Meadows, when the AOAO learned of the construction defects more than two years before filing suit, but claimed they discovered Defendants' negligence much later.[25] In overturning the trial court's grant of summary judgment against the AOAO, the court acknowledged that the plaintiffs' reasonable diligence is under the "ultimate question" of import:

> The discovery rule operates to protect the plaintiff who is "blamelessly ignorant" of his cause of action. Accordingly, we do not think that plaintiffs' cause of action in this case should accrue from the occurrence of the least essential fact, nor from discovery of the damage to their property, as [the city] contends, but rather from the point in time when [the plaintiffs'] became aware of the [the city's] negligence as a cause, or could have become aware through the exercise of reasonable diligence.

> The ultimate question is therefore whether [the] plaintiffs exercised reasonable diligence in discovering the negligence cause of their injuries. *We see no reason to commence the running of the statute of limitations when [the] plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of damage*.[26]

Under the discovery rule, whether a statute of limitations bars an action is a question for the jury:

> Concerning the issue [whether the plaintiff,] through the exercise of reasonable diligence, should have discovered [the negligent act, the damage, and the causal connection between the two], **that issue is … for the trier of fact**.

---

[25] *AOAO of Newtown Meadows v. Venture 15, Inc.*, 115 Haw. 232, 167 P.3d 225 (Haw. 2007)(emphasis added)(quoting Wright, Miller & Kane, *Federal Practice & Procedure: Civil*, §2729).

[26] *Id*. at 279 (quoting *Leaf v. City of San Mateo*, 104 Cal. App. 3d 1398, 163 Cal.Rptr. 711 (1980)(emphasis in original).

10

It bears repeating, however, that **even when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard**[.][27]

Thus, the *Newtown Meadows* court warns:

When there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the Court or jury to decide. **The drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence**."[28]

Here, Waimea Residents expressly allege that they discovered Defendants' negligent conduct after years of injury to their homes and lives.[29] Importantly, this discovery not simply that Defendants violated Ordinance 808 (i.e. only discovered a legal violation), but rather that they discovered the specific underlying facts demonstrating Defendants' negligent conduct such as: Pioneer's failure to follow through on promises in its October 2000 letter to the community,[30] and Defendants' failure to implement the best management practices called for within Defendants' 2002 Conservation Plan.[31] Further, Plaintiffs' allege that Defendants made specific misrepresentations about their practices to avoid scrutiny from the County of Kauai and the community of Waimea to conceal and lull the community and officials into complacency.[32]

---

[27] *AOAO Newtown Meadows,* 115 Haw. at 277 (emphasis added).

[28] *Id.* at 277 (quoting *Enfield v. Hunt*, 154 Cal.Rptr. 146, 147, 92 Cal.App.3d 417, 419 (1979)(emphasis added).

[29] SAC at ¶¶71- 78.

[30] SAC at ¶46 ("These representations included decreasing vehicular traffic on farm roads, installing irrigation along the western edge of the GMO Test Fields to encourage the growth of a vegetation shield, reducing vehicle speeds on the station to 10mph; graveling the access roads to the GMO Test Fields; and installing water emitters on each side of the access road to the GMO Test Fields so that it can be watered down").

[31] SAC at ¶64-67, *see, e.g.* ¶65 ("After submitting its 2002 Conservation Plan to obtain an Ag Exemption under Ordinance 808, however, Pioneer and the Robinson Entities failed to implement even the minimal conservation measures called for within the 2002 Conservation Plan, much less best management practices, despite knowledge of dust and pesticide complaints from Waimea for more than a decade**.**")

[32] SAC at ¶¶107, 140, 172-187

11

While Defendants are free to challenge these allegations through discovery, "the issue whether the plaintiff exercised reasonable diligence is a question of fact for the Court or jury to decide."[33] Accordingly, because the "drastic remedy of summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence," it is even more inappropriate for this court to consider Defendants' motion to dismiss. Here, whether individual Plaintiffs discovered or should have discovered their causes of action against Defendants turns upon what happened where, what individual Plaintiffs knew when, and whether what they knew when constitutes evidence of negligence, nuisance and trespass. Such questions of fact are for the jury and are therefore inappropriate for dismissal under Rule 12(b)(6).

## B. Plaintiffs' Strict Liability Claims Survive for the Same Reasons Because the Same Questions of Fact Permeate Plaintiffs' Claims.

Defendants' challenge to Plaintiffs' strict liability claim for pesticides fails for the same reasons as their challenge to negligence. Once again, Defendants claim "[t]he SAC makes clear that Plaintiffs knew no later than June 2000 that Pioneer was using chemicals which Plaintiffs claimed were drifting into their community."[34] Based solely on the Waimea Petition, Defendants urge this Court to simply presume that Plaintiffs had "become aware [in June 2000] that the challenged activity allegedly was causing them harm."[35] Again, *Yamaguchi* requires more and the Waimea Petition is not Pioneer specific. The Waimea Petition does not establish when Plaintiffs discovered (or should have discovered) that Pioneer's pesticides were drifting into

---

[33] *Id.* at 277 (quoting *Enfield v. Hunt*, 154 Cal.Rptr. 146, 147, 92 Cal.App.3d 417, 419 (1979)(emphasis added).

[34] Motion at 9

[35] *Id.*

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

Waimea. Rather, the Waimea Petition only places local agricultural operations like Pioneer on notice of the Waimea community's concerns about the possibility of pesticides in the air:

> We are concerned that this dust may contain other pollutants, such as fertilizers and/or pesticides that are used in commercial agriculture, and that the long-term health consequences of continuing present behavior may be severe.[36]

Defendants ask this Court, however, to unilaterally construe that Plaintiffs were aware thirteen (13) years ago that Pioneer pesticides were reaching their property. Contrary to Defendants' representation, however, the Waimea Petition does not establish that plaintiffs were aware of: a) the abnormally dangerous activity (pesticides were in the dust); or b) harm from the activity (pesticides were reaching their property). At most the petition demonstrates Waimea residents' growing concern about dust and pesticides in Waimea from local farming operations such as Pioneer's GMO Research Center, which may be relevant to whether Plaintiffs acted with reasonable diligence, but this provides no basis for dismissal. Nevertheless, Defendants hope this Court will take an evidentiary leap with the Waimea Petition to infer that individual plaintiffs were aware that pesticides from Defendants' fields were reaching their individual homes from the date of the petition forward. Such evidentiary flights are not appropriate for a motion to dismiss and Defendants' challenge to Waimea Residents claim for strict liability on this basis should be refused.

## C. Plaintiffs' Claims for Trespass & Nuisance Survive for the Same Reasons Because the Same Questions of Fact Permeate Plaintiffs' Claims.

Defendants' attack upon Plaintiffs' trespass and nuisance claims suffer the same fate as their challenge to Plaintiffs' negligence and strict liability claims. Defendants argue that dust and

---

[36] Ex. 5 to SAC, Waimea Petition.

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

pesticides, which have impacted Waimea from the inception of Pioneer's GMO Research Center, constitute a continuous tort so that Plaintiffs damages are limited to only two years immediately preceding this litigation.[37]

Again, this argument assumes that evidence of dust and pesticides migrating into Waimea alone and by itself constitutes evidence of trespass and nuisance, which contradicts Defendants' "Right to Farm" defense that off-site impacts from dust and pesticide drift are <u>not</u> nuisance and trespass so long as Defendants are following "generally accepted agricultural and management practices." Under Defendants' own defense, until Plaintiffs demonstrate that Defendants were not following "generally accepted agricultural and management practices," no claim for trespass, nuisance, or negligence can accrue. Defendants, however, want their cake and to eat it too. Defendants want to argue that offsite impacts of dust and pesticides are not sufficient evidence of claims against them for the purpose of liability under the Hawaii Right to Farm Act, but that these identical offsite impacts are sufficient evidence of claims against them to start the statute of limitations running.

For the purpose of a motion to dismiss under Rule 12(b)(6), however, these are distinctions without difference because both scenarios raised questions of fact regarding when Plaintiffs discovered the underlying conduct and the causal connection between the trespass onto their properties that are for the jury and inappropriate for dismissal under Rule 12(b)(6).

**D.  Defendants' Landlord Liability Arguments Fail for the Same Reasons.**

Defendants next assert that Plaintiffs' claims against the Robinson Entities under Count 8 for Landlord Liability are limited to the same statutes of limitation as Pioneer under joint and

---

[37] Motion at 11.

several liability. Plaintiffs agree the same statutes of limitation would apply to both Pioneer and the Robinson Entities under joint and several liability. Assuming this Court finds the Robinson Entities may be held liable for the acts of their tenant, the same damages periods would apply to both.[38] For the reasons stated above, however, when the statutes of limitation run is a question of fact for the jury.

**E. Plaintiffs' Claims for Misrepresentations are <u>Not</u> Time Barred Because They Were Only Recently Discovered and are Supported by Evidence and the Restatement.**

**1. The allegations of the complaint do <u>not</u> establish that Plaintiffs were aware of Defendants' misrepresentations until recently.**

Next, Defendants challenge Plaintiffs' misrepresentation claims. Although Defendants admit "Pioneer represented in October 2000 that it would take steps to limit dust migration and was committed to being a good community member and neighbor,"[39] Defendants argue that Plaintiffs' "acknowledge – indeed affirmatively allege – that, thereafter, ***they were aware immediately and always that Pioneer had failed to take sufficient steps to mitigate the allegedly offensive condition***."[40] Although whether individual Plaintiffs possessed knowledge about specific misrepresentations should be a question of fact, Defendants claim that paragraphs 17, 41-44, 47-49, 67, 75, 89, and 130, demonstrate that Plaintiffs were "aware immediately and always that Pioneer had failed to take sufficient steps."  A review of these paragraphs, however, reveals that they do not:

---

[38] Note that whether the Robinson Entities may be liable for the acts of their tenant, Pioneer, is the subject of Defendants' related motion to dismiss and is therefore not addressed herein.

[39] Motion at 14.

[40] *Id.* (emphasis added).

17) Defendants' failure to prevent and control soil erosion from the GMO Test Fields results in the routine generation of excessive fugitive airborne dust that blows into the Waimea community and Waimea Residents' homes, which has occurred from the inception of Pioneer's GMO operation to the present at levels far in excess of historic agriculture practiced near Waimea.

. . .

41) Waimea residents have attempted to bring their concerns over the persistent drift of fugitive dust and dangerous pesticides into the Waimea community to Pioneer's attention for over a decade without success.

42) In June 2000, Waimea residents petitioned Pioneer to address the impact of fugitive dust and chemicals from Pioneer's GMO Test Fields on their community (the "Waimea Petition").

43) Within the Waimea Petition, local Waimea residents explained their concern that dust from Pioneer's GMO operations was being deposited in "our homes, our cars, our streets and buildings and, most alarmingly, our children, who are forced to breath dust laden air as a part of living."

44) The Waimea Petition further gave Pioneer notice of residents' concern that dust from Pioneer fields "may contain other pollutants, such as fertilizers and/or pesticides" with long-term health consequences for their community, that "current provisions for reducing dust pollution are not being adequately implemented," and that Pioneer had not complied "with existing regulations intended to restrict dust pollution."

. . .

47) After Pioneer's representations, Waimea residents continued to see dust and smell chemicals from Pioneer's GMO Test Fields due to Pioneer's failure to undertake the "immediate steps" it had promised.

48) Since the Waimea Petition, the influx of dust and chemicals from Pioneer's fields has continued while Waimea Residents fight a daily battle to keep their homes and property free of dust and chemicals and continue to suffer on a daily basis.

49) Despite the Waimea Petition in 2000, Pioneer has failed to prevent dust and pesticides from migrating from the GMO Test Fields. This disregard of the impact to Waimea continues to the present and extends beyond Pioneer to include the Robinson Entities.

. . .

67) Rather, Pioneer only belatedly started implementing dust and erosion mitigation measures to control dust and pesticides in 2010 (most of which were originally promised within Pioneer's 2002 Conservation Plan) after Waimea Residents' repeated complaints culminating in 2010, which underscores Pioneer's failure to conduct its GMO research operation in accordance with generally accepted agricultural and management practices.

16

. . .

75)    Rather, when Waimea residents and others raised complaints about dust and pesticides to Pioneer starting as early as 2000, Pioneer claimed it was doing everything possible to keep dust to a minimum and following reasonable agricultural practices.

. . .

89)    Pioneer's failure to satisfy its obligations under Kauai Ordinance 808, implement the minimal conservation measures promised within its Conservation Plan, adequately respond to Waimea Residents' June 2000 petition, follow its own policies and procedures, and otherwise prevent the ongoing creation and deposition of fugitive dust from its GMO operation for over a decade demonstrates Pioneer's failure to reasonably minimize fugitive dust and constitute violations of the Hawaii Air Pollution Control Act. After filing this lawsuit, Waimea Residents have further learned of repeated air quality complaints against Pioneer from the inception of its Waimea operations to the present, which makes Pioneer's failure to conduct its operations in a manner to reasonably fugitive dust all the more concerning.

. . .

130)   Similarly, the Robinson Entities' failure to satisfy its obligations under Kauai Ordinance 808, implement necessary measures to prevent the discharge of dust and pesticides from its property, and otherwise prevent the ongoing creation and deposition of excessive fugitive dust from the GMO Test Fields for over a decade demonstrates the Robinson Entities' failure to reasonably minimize fugitive dust and constitutes the violation of the Hawaii Air Pollution Control Act.

Thus, contrary to Defendants' assertions, these allegations do not show that individual Plaintiffs were "aware immediately and always" of Defendants' misrepresentations. Though these paragraphs discuss the ongoing nature of the dust and pesticides from Defendants' fields, they do not confirm that Plaintiffs were aware Pioneer had broken its commitments to them or the County of Kauai. Further, in direct contradiction of Rule 12(b)(6)'s instruction to take the allegations of the complaint as true, Defendants simply ignore Paragraphs 71-78 of Plaintiffs' complaint that allege Plaintiffs discovered Defendants' misrepresentations and their failure to follow proper farming practices in 2011. Defendants' motion should therefore be denied.

17

**2. Defendants' misrepresentations to the County of Kauai are actionable misrepresentations.**

Defendants' next argue they cannot be liable for misrepresentations in their 2002 Conservation Plan that were "submitted *to the County, not Plaintiffs.*"[41] This analysis, however, ignores Restatement (Second) of Torts, §311 *Negligent Misrepresentation Involving Risk of Physical Harm*, which contemplates harm to the property of others caused by a parties negligent misrepresentation to.[42] As §311 provides:

1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results:

   a. to the other, or

   b. to such third persons as the actor should expect to be put in peril by the action taken.[43]

Here, Pioneer falsely represented to the County of Kauai (on behalf of itself and the Robinson Entities) that it would actively implement conservation for the specific purpose of controlling soil erosion from Defendants' property. Because of these representations, the County exempted Pioneer's Waimea Research Center from oversight that was expressly intended to "safeguard the

---

[41] Motion at 14.

[42] Restatement (Second) of Torts, §311 *Negligent Misrepresentation Involving Risk of Physical Harm* Plaintiffs are unaware of any Hawaii state court considering Section 311 of the Restatement Second of Torts, in the unpublished case of *Isham v. Padi Worldwide Corp*, 2008 WL 877126 (D. Haw. 2008), Judge David Ezra recognized that "Although Hawaii has adopted Section 552, Section 522 and Section 311 are not mutually exclusive. Instead, they are complimentary provisions setting forth elements of negligence misrepresentation claims under different circumstances….Section 311, on the other hand, compensates persons for physical injury and is not limited to information given in a business or professional capacity. *See* Restatement (Second) of Torts, §311 cmt. b. Thus, the adoption of Section 552 does not mean that Section 311 cannot apply as well or instead of Section 552 in the right situation.").

[43] *Id.*

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

public health, safety and welfare" and "to protect property" by establishing "minimum requirements for issuance of permits and the enforcement of such requirements."[44]

Thus, Pioneer made misrepresentations to the County of Kauai (it would implement its Conservation Plant) to further its Defendants' interests (obtain a Agricultural Exemption) in full knowledge that the safety of others and their property was at stake. As *Comment b* to Section 311 explains:

> *b.* The rule stated in this Section finds particular application where it is a part of the actor's business or profession to give information upon which the safety of the recipient or a third person depends. Thus it is as much a part of the professional duty of a physician to give correct information as to the character of the disease from which his patient is suffering, where such knowledge is necessary to the safety of the patient or others, as it is to make a correct diagnosis or to prescribe the appropriate medicine. The rule is not, however, limited to information given in a business or professional capacity, or to those engaged in a business or profession. **It extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of others may depend upon the accuracy of the information.**[45]

Thus, under Section 311 of the Restatement (Second) of Torts, a claim may be brought against any person who gives information to a third party when they "know or should realize" that the safety of others may depend upon the accuracy of the information. Waimea Residents therefore allege a viable claim for Defendants' misrepresentations to the County of Kauai, which are "entitled to proceed beyond the threshold"[46] under Rule 12(b)(6). Plaintiffs' respectfully request this Court to deny Defendants' motion to dismiss.

---

[44] Kauai Ordiance 808, §22-7.1

[45] *Id.*, cmt. b.

[46] *Smallwood v. NCsoft Corp.*, 730 F.Supp. 2d 1213, 1220-21 (D.Haw.2010)(quoting *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.) *cert. denied*, 441 U.S.965, 99 S.Ct. 2416 (1979).

**F. Defendants' Final Arguments All Address Questions of Fact and Misconstrue the Allegations of Plaintiffs' Complaint and Hawaii Law.**

    **1. Plaintiffs lacked actual knowledge of facts, not just legal knowledge of a statutory violation.**

Defendants' final arguments misconstrue the allegations of Plaintiffs' complaint and misapply Hawaii law. First, Defendants assert that Plaintiffs' claims are time-barred because "Plaintiffs' conflate actual knowledge of a statutory knowledge with accrual of their claims."[47] In essence, Defendants argue that the statute of limitations for their claims ran before Defendants' March 2011 Ordinance 808 Violation because, Defendants maintain, Plaintiffs had knowledge of Defendants tortious conduct. Thus, Defendants urge this Court to ignore Plaintiffs complaint, that they only recently learned of Defendants' negligent conduct in 2011,[48] and maintain that "[t]he issue [under Hawaii law] is where Plaintiffs had knowledge *of the injury they claim*."[49]

This contention, however, is simply wrong. As already discussed, the issue under *Yamaguchi* is not merely the injury. The issue is knowledge of the injury, the negligent conduct, and the causal connection. Defendants' reliance upon *Hays v. City & Cnty. of Honolulu* is therefore misplaced.[50] To begin, *Hays* concerns a swimmer injured at the beach who possessed knowledge of all the relevant facts, but misunderstood the application of law to his case because

---

[47] Motion at 16.

[48] Motion at 16-17; *see* SAC at ¶71 ("Waimea Residents have only recently discovered Pioneer and the Robinson Entities' failure to implement Pioneer's 2002 Conservation Plan and generally accepted agricultural practices because of the recent violations of Kauai Ordinance 808 by both the Robinson Entities and Pioneer, which reveals a long-standing disregard of best management practices and Kauai law designed to prevent the discharge of pollutants like pesticides and excessive fugitive dust.").

[49] Motion at 16.

[50] Motion at 17, citing *Hays v. City & Cnty. Of Honolulu*, 81 Haw. 391, 917 P.2d 718 (Haw. 1996).

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

he failed to consult an attorney.[51] The *Hays* court is therefore careful to distinguish *Hays* from cases where the plaintiffs lack knowledge of the specific facts concerning their injury, the negligent conduct, or the causal connection.[52]

Here, Plaintiffs did not merely discover Defendants' 808 violation in 2011, but the actual underlying facts supporting Defendants' failure to follow "generally accepted agricultural and management practices" that ultimately led to the bringing of this claim. While violation of Ordinance 808 certainly provided evidence of Plaintiffs' claims as Defendants concede,[53] the underlying facts that led to this violation were not discovered by Plaintiffs until 2011, which include Pioneer's failure to implement its 2002 Conservation Plan and its other misrepresentations to Waimea and the County of Kauai.[54]

Accordingly, because Defendants' motion does not establish that Waimea Residents' were aware of the harm, the conduct, or the causal connection before 2011 to establish "to a

---

[51] *Id.* at 399 ("Hays seeks equitable relief, in the form of the discovery rule, from the time limitations imposed by HRS §§ 657-7and/or 662-4, essentially because he did not seek the advice of an attorney regarding the law applicable to the circumstances surrounding his injury. To apply the discovery rule in the present case would effectively allow plaintiffs to indefinitely preserve a claim and delay the start of the statutory limitations period until he or she seeks legal advice.").

[52] *Id.* at 397 ("[T]he facts of his case are easily distinguishable from other factual situations in which both this court, as well as federal courts interpreting Hawaii law, have previously applied the discovery rule.")

[53] Motion at 16 (quoting *Loevsky v. Carter*, 707 Haw. 419, 432, 773 P.2d 1120, 1128 (haw. 1989)(this jurisdiction follows the rule that the violation of a statute ***may constitute evidence of negligence***."(emphasis in original); *see also Ono v. Applegate*, 62 Haw. 131, 137 612 P.2d 533, 539 (Haw. 1980)(quoting Restatement (Second) of Torts, §285 How Standard of Conduct is Determined ("**standard of conduct of a reasonable man may be . . . (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide**.")(emphasis added)); *see also Michel v. Valdastri, Ltd.,* 59 Haw. 53, 55 575 P.2d 1299, 1301 (1978)("Proof of a failure of the defendant to conform his conduct to standards established by law for the protection of the class to which the injured party belongs, when shown to have a legitimate connection to the issue, **is admissible as evidence of negligence.**")(emphasis added).

[54] SAC at ¶¶71-78.

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

certainty under existing law that no relief can be granted under any sort of facts that might be proved in support of a plaintiffs' claims,"[55] Defendants' motion must be denied.

2. **Extrinsic evidence supports the plausibility of Plaintiffs' claims for misrepresentation & fraudulent concealment.**

Defendants' last challenge attacks Plaintiffs' claim that Pioneer attempted to intentionally conceal its conduct from Waimea Residents. Specifically, Defendants argue these allegations are "illogical," "contradicted by the SAC's express allegations," and based on no more than "conclusory assertions."[56] Like its challenge to the statute of limitations, the crux of Defendants' position is that no misrepresentations could have possibly occurred because Waimea Residents were aware of the continuous dust. In other words, "Pioneer wasn't dishonest, because the community knew it was lying argument." Therefore, Defendants urge this Court to simply ignore the allegations of the complaint that Pioneer worked to mislead Waimea residents that it was following the law.

Defendants' effort to argue over the evidence with no more than the assertions of its counsel should be refused by this Court. Contrary to Defendants' claims, evidence supports the allegations in the complaint. For example, Paragraph 45-46 of Plaintiffs' complaint allege:

45) Following the Waimea Petition in June 2000, Pioneer responded by letter on October 31, 2000. In its response, Pioneer affirmed its commitment to clear air, recognized residents' reasonable concerns about the "red dust problem that is so much a feature of all of our lives," and represented that it was taking immediate steps to minimize dust from Pioneer fields.

46) These representations included decreasing vehicular traffic on farm roads, installing irrigation along the western edge of the GMO Test Fields to encourage the growth of a vegetation shield, reducing vehicle speeds on the station to 10mph; graveling the access roads to the GMO Test Fields; and installing water emitters on each side of the access road to the GMO Test Fields so that it can be watered down at least once a day. Finally, Pioneer represented

---

[55] *Smallwood*, 730 F.Supp.2d at 1220-21.

[56] Motion at 18.

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

that it was "making every effort to restrict field cultivation efforts with the trade winds are not severe."[57]

Pioneer's October 2000 letter reponse is important because it demonstrates Pioneer's immediate effort in 2000 to convince the community that Pioneer "shares your concern for clean air," and are "committed to keeping dust to a minimum," in an effort to appease Waimea and convince community members that it was taking steps to prevent unnecessary dust.[58] For example, Pioneer specifically told Waimea residents in October 2000 that it had "installed water emitters up each side of that road so it can be wetted down at least once a day."[59] When Ms. Judith Rivera, Pioneer's Waimea Station Manager, arrived in 2008, however, no sprinklers were installed on any of the farm roads crossing the Waimea Research Center:

> Q:  Okay. When you came to the Waimea Research Center in August of 2008, were sprinklers installed along that road [along the pali closest to Waimea River]?
>
> **A.  No.**
>
> Q:  When you came to the Waimea Research Center in August of 2008, were sprinklers installed along any of the other roads that crossed the Waimea Research Center.
>
> **A.  No.**[60]

Like its promise about sprinklers, Pioneer also promised in October 2000 to install "irrigation along the western edge of our land to encourage the growth of a vegetation shield." Again, Ms. Rivera's testimony confirms this was never maintained, which is why Pioneer was forced to hastily install new irrigation in 2011 to encourage a vegetation shield and windbreak:

---

[57] SAC at ¶¶45-46, Exhibit 6 to SAC.

[58] Exhibit 6 to SAC.

[59] *Id.*

[60] *See* Excerpt of April 18, 2013, Deposition of Judith Rivera, at 114:6-14, attached hereto as **Exhibit 1.**

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

Q.      When you arrived at Waimea Research Center in August of 2008, was there an irrigation system in place along the pali that was being used?

A.      This is a difficult question because since there was so much rain during a significant period of the time, and I just arrive in Waimea, I was not able to observe any irrigation system. **However, I did – eventually I was aware that one time there was an effort of running a pipe on the ridge to maintain that area green. But eventually I don't know what happened. I – I don't know.** [61]

                        …

Q:      Regardless, I take it that when a decision was made that irrigation was needed along the pali, you had to install a new system?

A.      Yes, appropriate for trees.[62]

Similarly, in December 2011, Pioneer wrote the Waimea community after complaints related to dust and pesticides spiked in 2010 appease residents.[63] This time, Pioneer again claimed that "[b]eing good stewards of the island where our ohana live and work continues to be a core value for Pioneer employees."[64] Importantly, while Pioneer recognized the dust problem to Waimea, it also expressly represented that it was following "reasonable agricultural practices" for field preparation:

In the past, several Waimea residents have shared concerns with us about dust. Although its not unusual to see movement of red dirt from time-to-time, the region experienced an unusually dry 2010 with weather records showing unusually low rainfall. During this same time frame, we and other agricultural companies were preparing large sections for planting. **We followed reasonable agricultural practices for field preparation including the use of sprinklers and tanker trucks to water the ground and fields roads during the planting season.**[65]

---

[61] Ex. 1., Deposition Excerpt of Judith Rivera at 163:3-13(emphasis added)

[62] *Id.* at 164:15-18.

[63] *See, e.g.,* SAC at ¶179

[64] SAC at ¶¶179, Exhibit 12.

[65] *Id.*

24

Pioneer's claim that it was following "reasonable agricultural practices" is demonstrably untrue. For example, Pioneer did not install sprinklers on its new fields before opening up the land in 2010 as represented by Pioneer:

> Q. Were any sprinklers installed on any of the new fields at Akia 10, Akia 40, 50, or 60 before they were opened?
>
> **A. No.**[66]

Further, contrary to the claim in Pioneer's December 2011 letter, Pioneer did <u>not</u> possess a Conservation Plan, agricultural exemption, or permit for land preparation of its new fields:

> Q. So which of the new fields were prepared in January time frame of 2010?
>
> **A. It was Akia 10. Right here (writing).**
>
> Q. So just Akia 10.
>
> **A. Before – let me see. Before the lease occurred, Akia 10 was prepared for the spring cycle.**
>
> …
>
> Q. Why was Akia 10 prepared for planting in January ahead of the others?
>
> **A. Because of – because the location was close to our station right across the road. And it was – there was something about the sugarcane being harvested or something that made the field easier to work with.**
>
> Q. And again, we talked about this earlier, but essentially when we say Akia 10 was prepared for planting, what that basically means is that it was plowed?
>
> **A. Yeah.**
>
> Q. Okay. Did you know when Akia 10 was prepared for planting that a conservation plan was required.
>
> **A. I didn't know.**
>
> Q. Could you say that again?
>
> **A. I didn't know.**
>
> MR. FRIEDENBERG:  Move to strike. Vague and calls for a legal conclusion.
>
> . . .

---

[66] Ex. 1, Rivera Depo Excerpt at 142:13-16.

Q. The same question for you, Akias 40, 50, and 60, when those fields were prepared, were you aware that a conservation plan was required to be in place before preparing them for planting?

**A. I was not aware.**[67]

Thus, after community complaints were made in 2010 and Pioneer knew members of the community were meeting with attorneys and considering litigation, Pioneer sent a letter in December 2011 to all members of the community (including represented clients), which made express misrepresentations about Pioneer's farming practices to the Waimea community. Through discovery in this case, it has now been established this same letter was reviewed by Pioneer's communications department, an outside communications firm hired by Pioneer, Pioneer's in-house counsel, and Pioneer's outside counsel in this case.[68] In other words, Pioneer knew that members of the community were considering litigation and they sent a letter to the community that made misrepresentations about what Pioneer had done in an effort to convince community members to not bring suit. Thus, Plaintiffs contend that the allegations of their complaint go well beyond "conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences" as alleged by Defendants. Accordingly, Waimea Residents respectfully request this Court to deny Pioneer's motion to dismiss under Rule 12(b)(6).

. . .

---

[67] Ex. 1, Deposition Excerpt of Judith Rivera at 80:25 - 82:17; 83:2-6.

[68] *See* Defendants' February 19, 2013, Letter to Judge Kurren at 5 ("Subsequent to the [Pioneer Open House] meeting, Ms. Goldstein, with the assistance of an outside communications firm, drafted a follow-up letter to community residents. As was Ms. Goldstein's regular practice, she provided the draft letter to Pioneer's in-house attorneys for their legal review and comment. Both in-house counsel and Pioneer's outside lawyers reviewed the letter and provided legal review and advice.").

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

**G. Mediation & Abatement**

Finally, Defendants' contention that Plaintiffs and their counsel unduly delayed filing their claims in 2011 for more than nine months is unfounded.[69]  As Pioneer is readily aware, Plaintiffs engaged in good faith discussions with Pioneer before Mediator Keith Hunter in 2011 to discuss how to abate the problem and mutually agreed with Pioneer's counsel to work on abating the extreme dust issue *before* focusing on the harm to the Waimea community. As confirmed by emails between Plaintiffs' counsel and Pioneer's in-house counsel at the time, Warren Price, Esq., and Ken Okomoto, Esq., the purpose of these efforts was **to abate the harm** before focusing on how to resolve the damage caused by Pioneer's dust and pesticides:

> In our view, as I mentioned to Gerry yesterday, the first thing we need Pioneer to do is to acknowledge there is a friggin dust problem and get it abated. Later we can deal with the other issues related to the dust – what was in it and what harm did it cause aside from the dust itself – but the first order of business in Ken and my view is to get the situation under control and stop bullshitting the Waimea folks.[70]

It is therefore disingenuous for Defendants to now suggest that Plaintiffs were dilatory in bringing claims against Pioneer when they were working with Pioneer to address the problem. Unfortunately, Mr. Price and his colleagues are no longer part of this litigation because progress with Pioneer to amicably resolve these cases largely ceased when Pioneer's corporate representative, William "Bill" Gordon, passed away and Mr. Price later withdrew from this case. Accordingly, Defendants' attempt to use Plaintiffs' efforts to work with Pioneer in good faith in 2011 to abate the problem and stop misleading Waimea residents is unfair and misleads this Court about the history between the parties before filing this litigation.

---

[69] Motion at 17 ("Even after the notice of violation was issued, Plaintiffs' waited another nine months before filing suit.").

[70] *See* January 4, 2011, Email from Warren Price, Esq., to Kyle Smith, Esq., and Gerry Jervis, Esq., discussing the parties' efforts to abate the dust problem before addressing the damage.

## III.

## CONCLUSION

Defendants' motion to dismiss is a tactical and transparent effort to convince this Court to ignore Hawaii law, the allegations of Plaintiffs' complain, and substantial questions of material fact to obtain dismissal before discovery under Rule 12(b)(6). Because Plaintiffs' complaint states viable claims supported by evidence that are entitled to discovery, however, Waimea Residents respectfully request this Court to deny dismissal under Federal Rule of Civil Procedure 12(b)(6).

DATED this 27th day of May 2013.

LYNCH, HOPPER, SALZANO & SMITH
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734

*And*

LAW OFFICES OF GERARD JERVIS
GERARD A. JERVIS
Hawaii Bar No. 2490
354 Uluniu Street, Ste. 100
Kailua, Hawaii 96734

28

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA et al., on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs; )<br><br>vs. )<br><br>PIONEER HI-BRED INTERNATIONAL, INC., a DuPont Business and Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10; )<br><br>Defendants. ) | CIVIL NO.:  CV12 00231 – LEK BMK<br><br><br><br>**DECLARATION OF KYLE SMITH** |

I, KYLE SMITH, HEREBY DECLARE AS FOLLOWS:

1) I am the counsel of record for plaintiffs in this matter.

2) I am authorized and competent to testify to the matters herein, and unless otherwise indicated and make this declaration upon personal knowledge unless otherwise indicated.

3) Attached hereto as Exhibit 1 is a true and accurate copy of an excerpt the April 18, 2013, Deposition of Judith Rivera.

4) The quotation from the January 4, 2011, Email between Warren Price, Esq., to Kyle Smith, Esq., and Gerry Jervis, Esq., is a true and correct quotation of the email.

5) I, Kyle Smith, hereby declare under penalty of law that the foregoing is true and correct, except to those matters stated upon information and belief, and as to those matters, they are believed to be true.

. . .

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

DATED:      Kailua, Hawaii, 27th day of
            May, 2013.

**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, A301
Kailua, HI

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs; <br><br> vs. <br><br> PIONEER HI-BRED INTERNATIONAL, INC., a DuPont Business and Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL NO.:  CV12 00231 – LEK BMK <br><br><br> **CERTIFICATE OF SERVICE** |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies a true and correct copy of WAIMEA RESIDENTS'

OPPOSITION TO DEFENDANTS' MOTION DISMISS SECOND AMENDED COMPLAINT

(DOC #141); DECLARATION OF KYLE SMITH; EXHIBIT 1; CERTIFICATE OF SERVICE

and related documents was served on the parties listed below at their last known addresses by

electronic service through CM/ECF and email:

**GLYNN & FINLEY, LLP**.
Clement L. Glynn, Esq.
100 Pringle Avenue, #500
Walnut Creek, CA 94596
Email:  cglynn@glynnfinley.com

**CARLSMITH BALL LLP**
Mike Purpura, Esq.
1001 Bishop St.
Honolulu, Hawaii 96813
Email: mpurpura@carlsmith.com

. . .

31

Law Offices of Gerard Jervis
Lynch Hopper Salzano & Smith

DATED:  Kailua, Hawaii, this 27th day of May, 2013.


_____
**LYNCH, HOPPER, SALZANO &
SMITH**
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, A301
Kailua, HI

And

**LAW OFFICES OF GERARD JERVIS**
GERARD A. JERVIS
Hawaii Bar No. 2490
354 Uluniu Street, Ste. 100
Kailua, Hawaii 96734

32