IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JIM AANA, et al., on behalf          )    CIVIL NO. 12-00231 LEK-BMK
of themselves and all others         )
similarly situated,                  )
                                     )
            Plaintiffs,              )
                                     )
      vs.                            )
                                     )
PIONEER HI-BRED                      )
INTERNATIONAL, INC., a DuPont        )
Business and Iowa                    )
Corporation, GAY & ROBINSON,         )
INC., a Hawaii corporation;          )
ROBINSON FAMILY PARTNERS, a          )
general partnership                  )
registered in Hawaii; and DOE        )
DEFENDANTS 1-10,                     )
                                     )
            Defendants.              )
_____        )


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS GAY & ROBINSON, INC. AND ROBINSON FAMILY PARTNERS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); AND GRANTING IN PART AND DENYING IN PART DEFENDANTS GAY & ROBINSON, INC., ROBINSON FAMILY PARTNERS, AND PIONEER HI-BRED INTERNATIONAL, INC.'S**
<u>**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

On February 20, 2013, Defendants Gay & Robinson, Inc. and Robinson Family Partners ("the Robinson Defendants") filed their Motion to Dismiss Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) ("the Robinson Motion"). [Dkt. no. 140.] On the same date, the Robinson Defendants and Pioneer Hi-Bred International, Inc.[1] ("Pioneer") filed a Motion to

_____

[1] The Court will refer to Pioneer and the Robinson

(continued...)

Dismiss Plaintiffs' Second Amended Complaint ("Defendants'
Motion"). [Dkt. no. 141.] Plaintiffs Jim Aana, et al., on
behalf of themselves and all others similarly situated
(collectively, "Plaintiffs"), filed their memorandum in
opposition to the Robinson Motion on May 24, 2013, and the
Robinson Defendants filed their reply ("Robinson Reply") on
June 10, 2013. [Dkt. nos. 193, 201.] Plaintiffs also filed
their memorandum in opposition to Defendants' Motion on May 27,
2013, and Defendants filed their reply ("Defendants' Reply") on
June 10, 2013. [Dkt. nos. 194, 202.] These matters came on for
hearing on June 24, 2013. Appearing on behalf of Defendants were
Michael J. Scanlon, Esq., Michael M. Purpura, Esq., and Adam D.
Friedenberg, Esq. Appearing on behalf of Plaintiffs were P. Kyle
Smith, Esq., and Gerard R. Jervis, Esq. After careful
consideration of the motions, supporting and opposing memoranda,
and the arguments of counsel, the Robinson Motion and Defendants'
Motion are HEREBY GRANTED IN PART AND DENIED IN PART for the
reasons set forth below.

## BACKGROUND

Plaintiffs filed their original Complaint on December
13, 2011 in the state court. On May 4, 2012, Defendants filed
their Notice of Removal of Mass Action pursuant to 28 U.S.C.

---

[1](...continued)
Defendants collectively as "Defendants."

§§ 1332, 1441, and 1446, as well as under the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). [Dkt. no. 1; id., Exh. A (Complaint).] Plaintiffs filed a Motion to Remand on May 25, 2012, [dkt. no. 9,] which the district judge denied on August 16, 2012 [dkt. no. 30].[2] Plaintiffs filed a Renewed Motion for Remand on February 7, 2013. [Dkt. no. 129.] On April 26, 2013, this Court denied that motion, ruling that there is diversity jurisdiction over the instant case pursuant to CAFA. [Dkt. no. 173.]

On February 6, 2013, Plaintiffs filed their Second Amended Complaint (Property Related Claims) ("Second Amended Complaint"). [Dkt. no. 128.] According to the Second Amended Complaint, in approximately August of 1998, the Robinson Family Partners leased fields to the east of Waimea, Kauai, to Gay & Robinson, Inc., which in turn leased it to Pioneer. [Second Amended Complaint at ¶ 10.] "Pioneer uses the fields . . . to conduct open air testing of genetically modified ("GMO") crops as part of Pioneer's Waimea Research Center." [Id. at ¶ 12 (footnote omitted).] The Court will refer to the fields as "the GMO Test Fields." Plaintiffs allege that poor soil conservation practice have led to the migration of pollutants, such as dust

---

[2] This case was previously assigned to United States District Judge J. Michael Seabright. Judge Seabright filed an order of recusal on November 27, 2012, and the case was reassigned to this Court.

and pesticides, that blow into the Waimea community, damaging Waimea residents' homes and creating a health hazard.  [Id. at ¶¶ 15-17, 30-33.]  Plaintiffs allege that Defendants have breached their common law duties, as well as their duties under state laws and local ordinances such as the Hawaii Air Pollution Control Act, Haw. Rev. Stat. Chapter 342B, Haw. Rev. Stat. § 149A-31, and Kauai Ordinance 808 ("Ordinance 808").  [Id. at ¶¶ 27-28.]  Plaintiffs also allege that the Robinson Defendants, through their historic use of pesticides on their other properties, have an understanding of the harmful effects of pesticide and dust migration.  Despite having this knowledge, the Robinson Defendants failed to:

> a) investigate Pioneer's conservation and farming practices; b) investigate the degree of danger to Waimea residents and the environment posed by Pioneer's pesticides; c) require Pioneer to implement measures to prevent the discharge of pollutants like dust and pesticides from Defendants' GMO Test Fields; and d) . . . implement any measures itself to prevent the migration of pollutants from the GMO Test Fields into the Waimea community and environment.

[Id. at ¶ 39.]

Plaintiffs allege that, in June 2000, the Waimea residents gave Pioneer a Petition For Cleaner Air (the "Waimea Petition"), which contained complaints about the impact of fugitive dust and chemicals from the GMO Test Fields.  [Id. at ¶ 42; id., Exh. 5 (Waimea Petition).]  On October 31, 2000, Pioneer responded to the Waimea Petition by letter, affirming its

4

commitment to protecting the environment and the Waimea community ("October 2000 Response Letter"). [Second Amended Complaint, Exh. 6 (October 2000 Response Letter).] Pioneer also represented that it was taking various steps such as, "decreasing vehicular traffic on farm roads, installing irrigation along the western edge of the GMO Test Fields to encourage the growth of a vegetation shield, [and] reducing vehicle speeds on the station to 10 mph . . . ." [Second Amended Complaint at ¶¶ 45-46.] Despite these representations, Plaintiffs allege that they saw no changes and continued to feel the effects from the pollutants.

Plaintiffs allege that Pioneer's disregard of the impact to Waimea violated Ordinance 808, [id. at ¶ 50,] which requires the implementation of "'Best Management Practices' or 'BMPs' [which] means activities, practices, facilities, and/or procedures that will to the maximum extent practicable prevent the discharge of pollutants, including sediment and other contaminants, from a construction site." [Id. at ¶ 56 (footnote and some quotation marks omitted).] Plaintiffs allege that, "[i]n 2002, Pioneer requested an Agricultural Exemption under Ordinance 808 for working the GMO Test Fields, which [would] exempt[] Pioneer's grubbing of its GMO Test Fields from oversight by the Kauai County Engineer and the necessity to obtain a permit under Ordinance 808." [Id. at ¶ 62 (footnote omitted).] As part of its application, Pioneer submitted a conservation plan ("2002

Conservation Plan").  Plaintiffs allege that Pioneer did not implement the elements of the plan, and dust and pesticides from Pioneer's operations continued to harm the Waimea residents. [Id. at ¶¶ 64-67; id., Exh. 9 (2002 Conservation Plan).]

Plaintiffs also allege that, as part of Pioneer's response to complaints from the Waimea community in 2010, Pioneer issued a letter dated December 2011, which represented that it had been following reasonable agricultural practices ("December 2011 Letter").  Plaintiffs allege that these representations were false.  [Second Amended Complaint at ¶ 179; id., Exh. 12 (December 2011 Letter).]

Plaintiffs allege that the Waimea residents only recently discovered that Defendants failed to implement the 2002 Conservation Plan.  Plaintiffs state that they learned of this through the March 3, 2011 Notice of Grubbing Violation - Sedimentation & Erosion Control Ordinance 808 TMK: (4) 1-7-005:004 issued to Defendants by the County of Kauai Department of Public Works ("Notice of Violation").  [Second Amended Complaint at ¶ 71; id., Exh. 10 (Notice of Violation).]  The Notice of Violation stated that Defendants were in violation of Ordinance 808 because they failed to maintain the GMO Test Fields in a condition that would prevent damage by sedimentation to area waters and the property of others.  [Second Amended Complaint at ¶ 72.]  Plaintiffs allege that, after the Notice of Violation,

> Waimea Residents now know that not only did Pioneer and the Robinson Entities fail to implement the minimal conservation measures - much less best management practices - from 2002 to 2010 required within the 2002 Conservation Plan, but that the Robinson Entities *also* leased approximately 1000 additional acres to Pioneer in 2010 that Pioneer began immediately grubbing *without* a permit, conservation plan, or Ag exemption.

[Id. at ¶ 78 (emphases in original).]

Plaintiffs' Second Amended Complaint alleges the following claims: (1) negligence against all Defendants for failure to use due care (Count I); (2) negligence against all Defendants for failure to investigate and warn (Count II); (3) negligence per se against all Defendants (Count III); (4) strict liability against Pioneer (Count IV); (5) trespass against all Defendants (Count V); (6) nuisance against all Defendants (Count VI); (7) negligent and intentional misrepresentation against all Defendants (Count VII); and (8) landlord liability for the acts of a tenant against the Robinson Defendants (Count VIII).

Plaintiffs seek the following relief jointly and severally against Defendants: general, special, and consequential damages; diminution in value to Waimea residents' real property; costs and reasonable expenses to cure and mitigate conditions; preliminary and permanent injunctive relief requiring Defendants to investigate and implement measures that comply with applicable laws and cease the migration of excessive fugitive dust and pesticides; punitive damages; attorney's fees; and prejudgment

interest.  [Id. at pg. 39.]  Plaintiffs also seek to toll the statute of limitations because: "a) of the recent discovery of Pioneer and the Robinson Entities' violations of state and local law; b) Pioneer's fraudulent concealment of its ongoing violations of state and local law; c) for any and all other reasons to justify equitable tolling of any applicable statute." [Id. at pgs. 39-40.]

**I.  The Robinson Motion**

In the Robinson Motion, the Robinson Defendants seek dismissal of all claims against them on the grounds that, as the landlord, they cannot be held liable for the alleged tortious acts of Pioneer, their tenant.

The Robinson Defendants first argue that Plaintiffs' negligence claim against the Robinson Defendants (Count I) must fail because it is based upon the manner in which Pioneer conducts farming on the leased property.  [Mem. in Supp. of Robinson Motion at 6.]  Specifically, Count I alleges that Defendants failed to "use due care to prevent the mitigation of excessive fugitive dust and dangerous pesticides into the Waimea community and environment."  [Second Amended Complaint at ¶ 100.] The Robinson Defendants argue, however, that a landlord is not obligated to oversee the operations of its tenant but, rather, is liable for the torts of its tenant only where it knew at the time of letting that the tenant would necessarily act tortiously.

[Mem. in Supp. of Robinson Motion at 7 (quoting Restatement (Second) of Torts § 837 (1979)).]

While the Robinson Defendants have found no Hawai`i cases applying § 837, courts in California and other states have done so.  [Id. at 7-8.]  The Robinson Defendants note that a California appellate court held, under facts similar to the instant case, that a lessor is "not responsible for dust drift caused by lessee where land 'leased for a lawful and proper purpose, when there is no nuisance or illegal structure upon it at the time of the letting[.]'"  [Id. at 8 (quoting Meloy v. City of Santa Monica, 12 P.2d 1072, 1074 (Cal. Ct. App. 1932)).]

The Robinson Defendants also state that they are aware of no Hawai`i case applying this principle, but they do note that Hawai`i courts have followed the Restatement (Second) of Torts, § 356, which the Robinson Defendants argue articulates the identical principle of non-liability in the premises liability context.  [Id. at 11.]  Thus, the Robinson Defendants argue that "in Hawaii, as elsewhere, '[t]he general rule is that a landowner is not liable for injuries occurring after a lessee takes possession of the land.'"  [Id. at 11-12 (alteration in Mem. in Supp. of Robinson Motion) (some citations omitted) (quoting Mitchell v. United States, Civ. No. 11-00088 HG-KSC, 2011 WL 4048986, at *4 (D. Hawai`i Sept. 12, 2011)).]

Applying this standard to the instant case, the

9

Robinson Defendants argue that Plaintiffs have alleged no facts that, if proven, would demonstrate that the Robinson Defendants had knowledge of unlawful conduct at the time they leased the Property to Pioneer, or that they leased the Property for an inherently injurious purpose.  Defendants note that farming is not inherently a nuisance, as stated in the Hawai`i Right to Farm Act, Haw. Rev. Stat. § 165-1 *et seq*.  [Id. at 12.]  Rather, farming is only a nuisance where "'the farming operation has been conducted in a manner [not] consistent with generally accepted agricultural and management practices.'"  [Id. (alteration in Mem. in Supp. of Robinson Motion) (quoting Haw. Rev. Stat. § 165-4).]  Further, the Robinson Defendants note, under the Right to Farm Act, "nuisance" includes any claim for property damage caused by farming, including negligence and trespass claims.  [Id. at 12-13 (citing Haw. Rev. Stat. § 165-2).]  As such, the Robinson Defendants argue that their knowledge that Pioneer planned to conduct farming activities on the leased land does not equate with a knowledge that Pioneer would create a nuisance.

The Robinson Defendants also argue that, to avoid dismissal, Plaintiffs were required to allege that, when the lease was signed, the Robinson Defendants had knowledge of Pioneer practices that would necessarily create a nuisance, for example, allegations that the Robinson Defendants had knowledge about particular Pioneer farming techniques that were unlawful.

10

The Robinson Defendants argue that, due to Plaintiffs' failure to do so, Plaintiffs' negligence claim fails against them as a matter of law.[3]  [Id. at 13-14.]

The Robinson Defendants further argue that Plaintiffs' allegations that the Robinson Defendants have violated Ordinance No. 808, are likewise insufficient to state a tort claim.  The Robinson Defendants note that the purpose of the county permitting ordinance is to protect against sedimentation of water bodies, and that it requires anyone engaged in certain "'grading, grubbing and stockpiling'" activities to obtain a permit before conducting such activity.  [Mem in Supp. of Robinson Motion at 15 (quoting Ordinance 808).]  The Robinson Defendants argue that the ordinance does not create any legal duty: Hawai`i courts "have held unambiguously that 'a duty of care may be established by statute if legislative enactment [] lays down requirements of conduct, and provides expressly or by implication that a violation shall entail civil liability in tort.'"  [Id. at 15-16 (alteration in Mem. in Supp. of Robinson Motion) (some citations and internal quotation marks omitted) (quoting Arquette v. State, 128 Haw. 423, 513, 290 P.3d 493 (Haw. 2012)).]  Ordinance 808 does not contain such provisions.  The Robinson Defendants

_____

[3] The Robinson Defendants further assert that Plaintiffs' theory of vicarious lessor liability would, if endorsed, be "disastrous not only to Hawaii agriculture, but to the State itself, which leases thousands of farm acres to private farming operations."  [Mem. in Supp. of Robinson Motion at 14.]

further argue that evidence of a purported breach is irrelevant
if there is no duty in the first place.  As such, the Robinson
Defendants argue that Count I fails as a matter of law and should
be dismissed.  [Id. at 16-17.]

     As to Count II (failure to warn), the Robinson
Defendants argue that this claim must likewise fail as a matter
of law.  As an initial matter, the Robinson Defendants note that
"there is no general negligence cause of action for 'failure to
warn.'"  [Id. at 17.]  It is a products liability concept with no
application in the instant case.  [Id.]  The Robinson Defendants
further argue that, regardless, the Court should dismiss Count II
for the same reasons as Count I.  [Mem. in Supp. of Robinson
Motion at 17-18.]

     The Robinson Defendants argue that the Court must also
dismiss Count III (negligence per se).  They argue that there is
no independent cause of action for "negligence per se," but,
rather, that the Hawai`i courts follow the rule that a violation
of a statute may constitute evidence of negligence.  As such, the
Robinson Defendants argue, the third claim is simply a repetition
of the negligence claim in Count I.  Further, the Robinson
Defendants argue, because there is no legal duty, any alleged
violation of the state statutes or the local ordinance is
irrelevant to the issue of liability.  Moreover, the Robinson
Defendants argue that Plaintiffs' claim based on the alleged

12

violations must fail as a matter of law because neither the statutes that Plaintiffs invoke nor Ordinance 808 provide a private right of action. [Id. at 18-20.] The Robinson Defendants therefore argue that the Court must also dismiss Count III as a matter of law.

As to Count V (trespass), the Robinson Defendants argue that Plaintiffs have failed to allege any facts that would show that the Robinson Defendants participated in the alleged entry by Pioneer onto Plaintiffs' land. Rather, the Robinson Defendants note, the claim is predicated entirely on the "legally defective" notion that the Robinson Defendants bear responsibility for the acts of their tenant. [Id. at 21.] The Robinson Defendants therefore argue that the Court must also dismiss Count V for the reasons set forth supra.

The Robinson Defendants argue that Count VI (nuisance) must fail as a matter of law as well because they cannot be held liable for Pioneer's conduct. The Robinson Defendants emphasize that, like the other counts, Count VI fails to allege that the Robinson Defendants did anything directly to cause dust or pesticides to reach Plaintiffs' properties. [Id.] The Robinson Defendants note that the Second Amended Complaint does allege that the "'Robinson Entities possessed knowledge of the *risk* of migration of pollutants . . . before leasing to Pioneer.'" [Id. at 22-23 (alteration and emphasis in Mem. in Supp. of Robinson

Motion) (quoting Second Amended Complaint at ¶ 165).]   The
Robinson Defendants emphasize, however, that "[t]he law does not
make a landlord liable if it leases to a tenant knowing there is
a 'risk' – or even a 'manifest possibility' – that something may
happen[;] [r]ather, the law will impose liability on a landlord
only where it knows the tenant's operation *will be* a nuisance."
[Id. at 23 (emphasis in Mem. in Supp. of Robinson Motion)
(citations omitted).]   The Robinson Defendants further argue that
Plaintiffs' allegation that the Robinson Defendants failed to
exercise a contractual right to "control" Pioneer's operations
cannot support a nuisance claim because a landlord does not owe a
duty to third parties to exercise a contractual right of reentry.
[Id.]   The Robinson Defendants therefore argue that Count VI
fails as a matter of law against them.

      The Robinson Defendants note that Count VII (negligent
and/or intentional misrepresentation) alleges that: a group of
Waimea residents sent the Waimea Petition to Pioneer in 2000; in
the October 2000 Response Letter, Pioneer stated that it would
take immediate steps to improve its operations to reduce dust;
and Pioneer failed to do so.   [Id. at 24 (citing Second Amended
Complaint at ¶¶ 174-75, 178-80).]   The Robinson Defendants
emphasize that Plaintiffs do not allege that the Waimea Petition
was given to the Robinson Defendants or that the Robinson
Defendants made any representations to Plaintiffs about Pioneer's

farming operations, or about anything at all.  Absent an

allegation that the Robinson Defendants made a material

misrepresentation, Count VII fails as a matter of law.  [Id.]

Finally, as to Count VIII (landlord liability), the

Robinson Defendants first note that this count restates the same

vicarious liability claim alleged in the original complaint (as

Count VII) in Casey, et al. v. Pioneer, et al., CV 12-00655 LEK-

BMK, which also arises from the effect of Pioneer's activities on

the GMO Test Fields.  The state court, inter alia, dismissed

Count VII without prejudice prior to removal.[4]  [Id. at 25.]  The

Robinson Defendants further note that Count VIII alleges that the

Robinson Defendants knew from their own farming operations, which

---

[4] Defendants, who are also the defendants Casey, removed
Casey on the ground that the amended complaint presented a basis
for diversity jurisdiction that did not exist in the original
complaint.  Defendants asserted that the Robinson Defendants'
citizenship should not be considered for jurisdictional purposes
because the Casey plaintiffs fraudulently joined them.  [Casey,
Notice of Removal of Action (28 U.S.C. Section 1441), filed
12/7/12 (dkt. no. 1), at ¶¶ 1-3, 7-9.]  The landlord liability
claim is set forth in Count VIII.  [Casey, Notice of Removal,
Exh. C (Amended Complaint) at ¶¶ 188-200.]  The claims in the
Casey amended complaint are virtually identical to the claims in
the Second Amended Complaint in the instant case.  [Casey, Notice
of Removal at ¶ 4.]
    On January 7, 2013, the Casey plaintiffs filed a motion for
remand, arguing that they had viable claims against the Robinson
Defendants and therefore the Robinson Defendants' citizenship
destroyed diversity.  [Casey, (dkt. no. 16).]  This Court
ultimately denied the motion for remand, finding that the Casey
plaintiffs had fraudulently joined the Robinson Defendants.
Casey v. Pioneer Hi-Bred Int'l, Inc., Civ. No. 12-00655 LEK-BMK,
2013 WL 1701873, at *7 (D. Hawai`i Apr. 17, 2013).  On May 23,
2013, the magistrate judge in Casey consolidated Casey with the
instant case.  [Casey, (dkt. no. 66).]

are different from Pioneer's farming operations, that Pioneer's farming operations "might have 'potential' off-site impacts" and that, "despite 'actual knowledge of the risk of drift of pollutants[,]' the Robinson Defendants 'leased the GMO Test Fields to Pioneer without conducting any due diligence about the risks of Pioneer's GMO operation . . . .'" [Id. (quoting Second Amended Complaint at ¶¶ 189, 191).] The Robinson Defendants argue that, as discussed above, the law does not require a landlord to try to determine at the time of letting whether a tenant will properly conduct its operations; as long as the purpose of the lease is lawful, the landlord is not liable for the tenant's improper actions during the lease. [Id. at 26.] As such, the Robinson Defendants seek dismissal of Count VIII.

The Robinson Defendants therefore argue that there is no basis for Plaintiffs' claims against them, and they urge the Court to dismiss all of Pioneer's claims against them with prejudice. [Id. at 27.]

## II.  Plaintiffs' Memorandum in Opposition

In their memorandum in opposition to the Robinson Motion, Plaintiffs argue that landlord liability also arises when the landlord learns, after entering into a lease, of the tenant's dangerous practices, but does nothing, even though the landlord has the ability to stop the practices. Further, Plaintiffs argue that the Second Amended Complaint alleges, and the evidence will

support, that the Robinson Defendants knew of the potential danger prior to the lease, learned of the actual harm during the lease, and possessed the ability to stop the harm. [Mem. in Opp. to Robinson Motion at 2.] Thus, Plaintiffs argue that, if the factual allegations in the Second Amended Complaint are proven, the Robinson Defendants will be liable for Pioneer's farming practices on the GMO Test Fields pursuant to the rule set forth in Restatement (Second) of Torts § 837. Plaintiffs argue that what the Robinson Defendants consented to, knew about, or had reason to know about, are all questions of fact that cannot be determined in a motion to dismiss. Plaintiffs note that the Second Amended Complaint expressly alleges that: prior to entering into the lease with Pioneer, the Robinson Entities had knowledge of the danger from farming near Waimea without appropriate conservation measures; during the lease, the Robinson Entities knew about the harm Pioneer was causing; the Robinson Entities had a duty under local law to eliminate the harmful conditions; and they had sufficient control to eliminate the conditions, but did nothing. [Id. at 9-10.] Plaintiffs emphasize that, taking these allegations as true and viewing them in the light most favorable to Plaintiffs, they have stated a plausible claim against the Robinson Defendants. [Id. at 11.]

Plaintiffs argue that, as recognized in Restatement (Second) of Torts § 837, there are many exceptions to the general

rule of landlord non-liability.  [Id. at 12-13.]  Plaintiffs argue that the Robinson Defendants: violated a safety law, namely Ordinance 808; "were involved in deciding what steps should be taken to address dust after the problems finally became too severe to ignore[;]" and "were aware of the dust problem before leasing to Pioneer and had actually paid to clean at least one home in Waimea[;]" and still failed to stop Pioneer's harmful practices.  [Mem. in Opp. to Robinson Motion at 13 (citing Second Amended Complaint at ¶¶ 52, 69).]

Plaintiffs further argue that the evidence already available supports their allegations that the Robinson Defendants' own conduct contributed to the alleged harm, and that the Robinson Defendants knew about and had the ability to stop the harm.  Specifically, Plaintiffs point to: (1) the Robinson Defendants' control over roads on the leased lands and the fact that Pioneer and the Robinson Defendants communicated about efforts to water the roads to mitigate the dust, [id. at 17 (citing Mem. in Opp. to Robinson Motion, Decl. of Kyle Smith ("Smith Decl."), Exh. 3 (August 2010 email string between Mark Takemoto, Gerardo Rojas Garcia, Charles Okamoto, and others));] (2) the Robinson Defendants' ability to instruct Pioneer to water the roads, as evidenced by the testimony of the Robinson Defendants' deponent, Charles Okamoto, that he instructed Pioneer to water the roads, [id. (quoting Smith Decl., Exh. 4 (email

18

string dated July 2010-August 2010 between Charles Okamoto,

Mark Takemoto, and others));] (3) the Robinson Defendants'

participation in conservation measures, including selecting the

type of trees that would be planted, [id. at 18 (citing Smith

Decl., Exh. 5 (10/20/10 email string between Mark Takemoto,

Judith Rivera, and others));] and (4) the Robinson Defendants'

own contribution to the dust problem, as evidenced by Pioneer's

Waimea Station Manager, Judith Rivera, asking a Pioneer employee

in November 2010 to talk to Gay & Robinson about speeding on the

road on the Property because that leads to dust, and the

Department of Health inspector will be inspecting the premises,

[id. (citing Smith Decl., Exh. 6 (11/10/11 email from

Judith Rivera to Mark Takemoto and others))].  Further,

Plaintiffs argue, the Robinson Defendants failed to conduct

reasonable due diligence before renewing their existing lease and

expanding the GMO Test Fields by more than 1,000 acres in April

2010.  [Id. at 21-22 (citing Second Amended Complaint at ¶ 191).]

         As to their other claims, Plaintiffs state that, while

they have pled each of their negligence, failure to warn, and

negligence per se claims as a different count, they could have

pled all three as a single negligence claim.  Plaintiffs,

however, were trying to make the different legal analyses clear

to the Court.  As for the failure to warn claim, Plaintiffs argue

that failure to warn is a recognized concept under negligence

law, not merely a products liability claim.  [Id. at 19.]  As for
the negligence per se claim, Plaintiffs acknowledge that
"'negligence per se' is an evidentiary doctrine where evidence of
violation of a statute supports a claim for negligence," but they
state that it is common practice in Hawai`i to plead a separate
negligence per se claim "to give[] notice to the court and
parties of the evidentiary basis for the claim."  [Id. at 20.]
Plaintiffs argue that the Robinson Defendants' violations of
Ordinance 808 and other laws are relevant evidence of the
Robinson Defendants' negligence.  [Id.]

       As for their trespass and nuisance claims, Plaintiffs
argue that a landlord can be held liable under the same
circumstances described in connection with the negligence claims.
[Id. at 20-21.]  As to their claims for misrepresentation,
Plaintiffs note that the Second Amended Complaint alleges that
the Robinson Defendants were aware of misrepresentations that
Pioneer made on their behalf to Plaintiffs.  Plaintiffs argue
that they are entitled to conduct discovery on those allegations.
[Id. at 21 (citing Second Amended Complaint at ¶¶ 175-82).]

       Plaintiffs therefore ask the Court to deny the Robinson
Motion.  [Id. at 24.]

## III. **Robinson Reply**

       In their reply, the Robinson Defendants first emphasize
that this Court has already found that the claims in Casey, which

are virtually identical to the claims in the Second Amended
Complaint in this case,[5] do not state an actionable claim against
the Robinson Defendants.  [Robinson Reply at 1 (citing Casey v.
Pioneer Hi-Bred Int'l, Inc., Civ. No. 12-00655 LEK-BMK, 2013 WL
1701873, at *7 (D. Hawai`i Apr. 17, 2013)).]  The Robinson
Defendants argue that the Casey plaintiffs made the same
arguments regarding landlord liability that Plaintiffs now raise
in response to the Robinson Motion.  [Id. at 3.]  The Robinson
Defendants note that this Court "exhaustively examined" the Casey
plaintiffs' arguments, and this Court concluded that the Casey
plaintiffs failed to state an actionable claim against the
Robinson Defendants because the Casey plaintiffs failed to
demonstrate that the Robinson Defendants knew of the alleged
tortious conduct at the time either the 1998 lease or the 2010
lease was signed.  [Id. at 4-5 (quoting Casey, 2013 WL 1701873,
at *6).]  Further, this Court rejected the Casey plaintiffs'
arguments regarding Ordinance 808, the alleged preexisting nature
of the tort, and the Robinson Defendants' alleged control over
the GMO Test Fields by virtue of the lease terms.  [Id. at 7-8
(quoting Casey, 2013 WL 1701873, at *6-7).]

     The Robinson Defendants further argue that Plaintiffs
cannot rely on extrinsic evidence in a motion to dismiss, but,

---

     [5] This Court issued the order on the motion for remand in
Casey before the two cases were consolidated.

rather, the Court looks only to the sufficiency of the pleadings on their face.  [Id. at 8-9.]  Even if this Court considers extrinsic evidence, the Robinson Defendants assert that the deposition testimony Plaintiffs rely upon is immaterial.  For example, the Robinson Defendants contend that testimony that Pioneer leased a water truck from the Robinson Defendants does not establish that the Robinson Defendants are somehow liable for torts that were allegedly ongoing.  Further, the Robinson Defendants argue, evidence that they allegedly knew of the dust problem at the end of 2010 is irrelevant because the leases were entered into in 1998 and April 2010. [Id. at 9-10.]

The Robinson Defendants next argue that this Court likewise rejected Plaintiffs' current arguments regarding control, failure to warn, negligence per se, and landlord liability when the Casey plaintiffs raised them in connection with the motion for remand.  [Id. at 11-14.]  Finally, the Robinson Defendants argue that this Court must dismiss Plaintiffs' misrepresentation claims against them because Plaintiffs state only that Pioneer made the allegedly false statements.  Plaintiffs have not alleged any facts supporting the claim against the Robinson Defendants.  [Id. at 13-14.]

The Robinson Defendants therefore ask the Court to dismiss all of the claims against them.  [Id. at 15.]

22

IV.  **Defendants' Motion**

         Defendants' Motion argues that all of Plaintiffs'

claims are untimely because the Second Amended Complaint makes

numerous allegations which demonstrate that Plaintiffs knew of

the basis for their claims for more than a decade before they

filed suit.  [Mem. in Supp. of Defendants' Motion at 4 (citing

Second Amended Complaint at ¶¶ 17, 41-44, 47-49, 67, 75, 89,

130).]

         First, Defendants note that Plaintiffs' negligence

claims (Counts I through III) are subject to a two-year statute

of limitations pursuant to Haw. Rev. Stat. § 657-7.  [Id. at 6-

7.]  Defendants further note that a claim subject to § 657-7

accrues "'the moment plaintiff discovers or should have

discovered the negligent act, the damage, and the causal

connection between the former and the latter.'"  [Id. at 7

(quoting Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d

689, 693-94 (1982)).]  Here, Defendants argue, "Plaintiffs'

claims accrued not later than June 2000 when they complained to

Pioneer that its farming practices were impacting them."  [Id.

(citing Second Amended Complaint at ¶ 42; id., Exh. 5 (Waimea

Petition)).]  Defendants note, however, that Plaintiffs appear to

be asserting continuing torts, because they allege that

Defendants' acts are of a continuing nature and have continued

for over a decade, and that they have been continuously injured

23

by Defendants' conduct. [Id. (citing Second Amended Complaint at ¶¶ 17, 18, 40, 41, 48, 106, 115, 129, 130).] As such, Plaintiffs' claims are saved from being completely time-barred by the continuing tort doctrine, but their recovery is limited as a matter of law to the two years preceding the instant action. Plaintiffs filed the instant action on December 13, 2011, therefore, their recovery, if any, for their negligence claims is limited to claims accrued on December 13, 2009 or later. Defendants argue that the Court should therefore dismiss Plaintiffs' negligence claims to the extent they are predicated on claims accruing before December 13, 2009. [Id. at 8-9.]

Defendants next argue that Plaintiffs' strict liability claim (Count IV), trespass claim (Count V), and nuisance claim (Count VI) are likewise limited to the two-year statutory period preceding the instant action. Like the negligence claims, these claims accrued when Plaintiffs first became aware that the challenged activities were causing them harm, but they may seek recovery for the two-year period before they filed this action pursuant to the continuing tort doctrine. As such, Defendants argue that the Court should dismiss Counts IV, V, and VI to the extent they are premised on conduct occurring prior to December 13, 2009. Similarly, assuming, *arguendo* that Plaintiffs' landlord liability claim (Count VIII) states an actionable claim, it is also limited to the two years preceding

24

the action pursuant to Haw. Rev. Stat. § 657-7.  [<u>Id.</u> at 9-12.]

Defendants also contend that Plaintiffs' claim for misrepresentation (Count VII) is entirely time-barred. Defendants note that Plaintiffs allege that, as a result of the alleged misrepresentations, they "'relied to their detriment by postponing action against Pioneer[.]'"  [<u>Id.</u> at 13 (alteration Defendants') (emphasis omitted) (quoting Second Amended Complaint at ¶ 183).]  Defendants emphasize that this allegation does not change the fact that Plaintiffs were immediately aware after the October 2000 Response Letter that Pioneer failed to take sufficient steps to mitigate the allegedly tortious condition. [<u>Id.</u> at 14 (citing Second Amended Complaint at ¶¶ 17, 41-44, 47-49, 67, 75, 89, 130).]  Defendants therefore argue that the alleged fraudulent misrepresentation claim based on the October 2000 Response Letter accrued in 2000.

Defendants note that Plaintiffs also attempt to make a misrepresentation claim out of the 2002 Conservation Plan that Pioneer submitted to the County of Kauai ("the County"); however, Defendants emphasize that the 2002 Conservation Plan was not submitted to Plaintiffs.  Defendants further emphasize that there is no allegation that Plaintiffs ever received a copy of the 2002 Conservation Plan, or that Pioneer ever intended or foresaw that Plaintiffs might rely upon it.  As such, Defendants argue that Plaintiffs' misrepresentation claim based on th 2002 Conservation

Plan fails.  [Id.]  Defendants further argue that, even if a
misrepresentation claim based on the 2002 Conservation Plan was
actionable, it accrued in 2002, when Plaintiffs became aware that
Pioneer was not actually mitigating the dust and pesticides from
its farming operations.  Finally, as to Plaintiffs' claim that
Pioneer stated in the December 2011 Letter that it was following
reasonable agricultural practices in 2010, Defendants argue that
such a vague allegation is insufficient to state a claim for
fraudulent misrepresentation against the Robinson Defendants, and
Plaintiffs have still failed to show detrimental reliance as to
the Robinson Defendants.  [Id. at 15.]

        Defendants note that Plaintiffs "attempt to resurrect
their pre-December 2009 claims by alleging fraudulent
concealment."  [Id. at 16.]  Plaintiffs state that they only
recently discovered Pioneer's failure to implement the 2002
Conservation Plan and generally accepted agricultural practices,
and Plaintiffs were unaware of Pioneer's breach of duty until the
County's March 2011 Notice of Violation.  [Id. (citing Second
Amended Complaint at ¶¶ 71, 74).]  According to Defendants,
Plaintiffs contention is that a claim does not accrue until the
point of actual knowledge.  Defendants emphasize that the Second
Amended Complaint is full of allegations that: Plaintiffs knew of
the allegedly tortious acts for more than a decade (and certainly
before the March 2011 Notice of Violation); they made repeated

26

complaints to Pioneer; and alleged tortious acts continued.
Whether the alleged statutory "violations" are evidence of
negligence or not, Defendants argue, Plaintiffs knew that
Pioneer's farming activities on the GMO Test Fields were
allegedly causing them damage. [Id. at 16-17.]

Defendants note that fraudulent concealment can toll
the statute of limitations only where affirmative conduct by one
party would lead the other party to believe that he or she did
not have a claim. [Id. at 20.] Defendants argue, however, that
Plaintiffs have not alleged such affirmative conduct. The 2002
Conservation Plan was neither submitted nor provided to
Plaintiffs and, regardless of statements Pioneer allegedly made
in the October 2000 Response Letter or the December 2011 Letter,
Plaintiffs could see that the allegedly tortious conduct was
continuing. Indeed, Defendants note, Plaintiffs filed suit four
days after the December 2011 Letter was postmarked, indicating
that they did not believe Pioneer's statements that it was
following reasonable agricultural practices. [Id. at 20-21
(citing Second Amended Complaint at ¶¶ 107, 116, 140, 150, 158,
169; Second Amended Complaint, Exh. 12 (December 2011 Letter)).]
In sum, Defendants argue that Plaintiffs have failed to allege
fraudulent concealment that would toll the applicable statutes of
limitations. [Id. at 22.]

Defendants ask this Court to find that Plaintiffs'

misrepresentation count is barred in its entirety, and that

recovery for any damages accrued before December 13, 2009 is

barred for the negligence, strict liability, trespass, nuisance,

and landlord liability claims. [Id. at 22-23.]

## V.   Plaintiffs' Memorandum in Opposition

In their memorandum in opposition to Defendants'

Motion, Plaintiffs argue that Defendants' Motion misconstrues the

Second Amended Complaint and raises questions of fact

inappropriate for a motion to dismiss.

Plaintiffs first argue that their negligence claims did

not accrue in June 2000 because Plaintiffs did not discover the

negligent conduct and its connection to the damage until 2011.

Specifically, Plaintiffs argue that the Waimea Petition in June

2000 does not establish the accrual of their negligence claims.

Plaintiffs note that the two-year statute of limitations in Haw.

Rev. Stat. § 657-7 begins to run when a plaintiff knows of, or

should have discovered, (1) the negligent act, (2) the damage,

and (3) the causal connection between the two. [Mem. in Opp. to

Defendants' Motion at 5 (citing Yamaguchi v. Queen's Medical

Center, 65 Haw. 84, 90 (1982)).] Plaintiffs argue that the

Waimea Petition was merely a statement of the community's concern

about the farming activities of Pioneer and other local farmers

and, at best, only meets the knowledge of the damage element of

the three-pronged requirement. Plaintiffs argue that the Waimea

28

Petition does not evince their knowledge of specific negligent conduct, or that any such conduct was causing harm.  [Id. at 5-6.]  Plaintiffs emphasize that the 2000 Waimea Petition merely stated their concern that Defendants were failing to prevent soil erosion and thereby allowing dust to blow into the community. The petition does not suggest that Plaintiffs knew of Defendants' negligent conduct or the causal connection between the conduct and their injury.  [Id. at 7-8.]

Plaintiffs assert the Hawai`i Right to Farm Act and the Robinson Defendants' knowledge that Pioneer was farming do not constitute specific knowledge of negligence.  [Id. at 8-9.] Plaintiffs argue:

> Defendants cannot have it both ways.  If the continuous off-site impact of dust and pesticides to Waimea for more than [a] decade is prima facie evidence of negligence sufficient to trigger the statute of limitations, then the Right to Farm act [sic] is no longer at issue because dust and pesticides in the air would itself be evidence of a continuing tort.  On the other hand, if the Hawaii Right to [Farm] Act applies, then evidence of continuous dust and pesticides would [be] "presumptively not tortious," which means Plaintiffs' causes of action could not begin to run until Plaintiffs later discovered Defendants' negligent conduct as alleged in the complaint.

[Id. at 9.]

Plaintiffs further argue that whether they knew or should have known of Defendants' negligent conduct and the causal connection is a question of fact.  Plaintiffs argue that they only discovered Defendants' negligent conduct after years of

property damage, when they found out about the violations of
Ordinance 808, Pioneer's failure to follow through on the
promises in its October 2000 Response Letter, and Defendants'
failure to follow their 2002 Conservation Plan.  Further,
Plaintiffs allege that Defendants made specific
misrepresentations about their practices.  Plaintiffs therefore
argue that the issue of whether Defendants exercised reasonable
diligence is a question of fact for the jury.  [Id. at 9-12.]
Plaintiffs contend that their strict liability, trespass,
nuisance, and landlord liability claims survive for the same
reasons.  [Id. at 12-15.]

       Plaintiffs further argue that they only recently
discovered their claims for misrepresentation, and therefore
those claims are not time-barred.  Specifically, Plaintiffs argue
that the issue of whether they had actual knowledge of Pioneer's
misrepresentations is a question of fact.  Further, Plaintiffs
contend that Defendants' argument that Plaintiffs were aware
immediately after the October 2000 Response Letter that Pioneer
was not taking the steps it promised to take is unsupported by
the allegations in the Second Amended Complaint.  [Id. at 15-17
(quoting Second Amended Complaint at ¶¶ 17, 41-44, 47-49, 67, 75,
89, 130).]  Plaintiffs argue that their allegations regarding the
ongoing nature of the drift of dust and pesticides from the GMO
Test Fields do not confirm Plaintiffs' knowledge that "Pioneer

had broken its commitments to them or the County of Kauai." [Id. at 17.]

As to Defendants' argument that their alleged misrepresentations to the County in their 2002 Conservation Plan are not actionable because the plan was not submitted to Plaintiffs, Plaintiffs argue that Restatement (Second) Torts § 311, contains a definition of negligent misrepresentation that contemplates harm to the property of third parties caused by a party's negligent misrepresentation. Plaintiffs assert that Pioneer, on its own behalf and on behalf of the Robinson Defendants, made false representations (that it would implement its 2002 Conservation Plan) to the County, and that, "[b]ecause of these representations, the County exempted Pioneer's Waimea Research Center from oversight that was expressly intended to 'safeguard the public health, safety and welfare' and 'to protect property' . . . ." [Id. at 18-19.] Restatement (Second) of Torts § 311 recognizes a claim against anyone who gives information to a third party when he knows, or should know, that the accuracy of the information may affect the safety of others. As such, Plaintiffs argue, they have alleged viable claims based upon Defendants' misrepresentations to the County. [Id. at 19.]

Plaintiffs next argue that Defendants' remaining arguments all address questions of fact and misconstrue the allegations in the Second Amended Complaint. Plaintiffs

emphasize that they did not merely discover Defendants' violation of Ordinance 808 in 2011, but they also discovered underlying facts demonstrating Defendants' failure to follow generally accepted agricultural and management practices.  As such, Plaintiffs argue, they were not aware of the harm, the underlying tortious conduct, or the causal connection prior to 2011.  [Id. at 20-22.]  Plaintiffs further argue that the October 2000 Response Letter and the December 2011 Letter are relevant false representations because they were attempts to convince Plaintiffs that Defendants were taking steps to prevent dust and to follow reasonable agricultural practices.  [Id. at 22-25.]  Further, Plaintiffs assert that Pioneer knew Plaintiffs were considering litigation and sent the December 2011 Letter in an attempt to forestall the filing of this suit.  [Id. at 26.]

Finally, Plaintiffs argue that Defendants' contention that they unduly delayed filing their claims in 2011 for more than nine months is unfounded: Plaintiffs argue that they engaged in good faith discussions with Pioneer before a mediator in 2011 prior to filing suit in an effort to have Plaintiffs' concerns addressed while still avoiding litigation.  [Id. at 27.]

Plaintiffs therefore ask the Court to deny Defendants' Motion.  [Id. at 28.]

## VI.  **Defendants' Reply**

In their reply, Defendants note that, contrary to
Plaintiffs' arguments that they did not "discover" their claims
until 2011, Plaintiffs allege in their Second Amended Complaint
that Defendants tortiously interfered with their community by
causing the migration of dust and pesticides from the GMO Test
Fields onto their properties, causing continuous property damage,
since at least June 2000.  Defendants assert that Plaintiffs
cannot avoid dismissal of stale claims by denying or misstating
their own factual allegations; the allegations in the Second
Amended Complaint are binding admissions.  [Defendants' Reply at
3.]  Defendants emphasize that they are not arguing that
Plaintiffs' claims (other than the misrepresentation claims) are
completely barred, but only that, under the continuing tort
doctrine, the actionable time period for those claims is limited
to the two-year statutory period before commencement of the
action on December 13, 2011 for the Aana plaintiffs and on
May 23, 2012 for the Casey plaintiffs.  [Id. at 1-3.]

Defendants reiterate their argument that Plaintiffs'
negligence, strict liability, nuisance, trespass, and vicarious
liability claims accrued no later than June 2000.  Defendants
emphasize that Plaintiffs allege repeatedly in the Second Amended
Complaint that they knew as early as June 2000 that dust and
pesticides generated by Pioneer's farming activities migrated to

their properties causing damage.  As such, their claims accrued in June 2000.  [Id. at 4-5 (citing Second Amended Complaint at ¶¶ 17, 41-44, 47-49, 89; Second Amended Complaint, Exh. 5 (Waimea Petition)).]  Defendants further argue that the express allegations in the Second Amended Complaint contradict Plaintiffs' arguments that the Waimea Petition did not demonstrate actual knowledge in 2000 that Pioneer's activities were causing dust damage to their properties.  [Id. at 5-6.]

Defendants further argue that Plaintiffs' reliance on a purported requirement of knowledge of the "specific negligent conduct" is inconsistent with controlling law and Plaintiffs' own factual allegations.  Rather, Defendants argue that, as soon as Plaintiffs knew Pioneer's farming damaged their properties and interfered with their right to use and enjoy their properties, they were on notice of their claims.  [Id. at 6.]

Defendants note that Plaintiffs argue that Defendants' reliance on the Hawai`i Right to Farm Act proves that Plaintiffs' claims did not accrue until Plaintiffs knew of Defendants' alleged failure to follow "generally accepted agricultural and management practices."  Defendants argue, however, that claim accrual requires only that Plaintiffs knew of potentially actionable conduct, the damage to their properties, and the causal connection between the two.  Here, Defendants argue, Plaintiffs have clearly alleged that Pioneer's farming began

34

damaging them in 2000.  Plaintiffs did not need to know whether
or not that conduct was negligent, a nuisance, a trespass, or
purported strict liability for Plaintiffs to have sufficient
notice of their claims for accrual.  Defendants emphasize that
Plaintiffs do not dispute that they have alleged continuing
tortious activity, nor do they dispute that Hawai`i law limits
their recovery to damages accruing within the statutory period
before the action.  [Id. at 7-9.]

         Defendants argues that the issue of when Plaintiffs
discovered, or should have discovered, the alleged torts is not a
question of fact; the issue of timeliness is appropriately
addressed at the pleading stage as a matter of law.  Defendants
emphasize that it is well-settled that, in ruling on a motion to
dismiss, the Court need not consider arguments and legal
conclusions that are inconsistent with the facts alleged in the
pleading.  [Id. at 9-10.]

         Defendants note that Plaintiffs do not assert a
separate claim for violation of Ordinance 808 and, therefore, the
timing of Plaintiffs' discovery of that violation is immaterial.
Further, Defendants recognize that the continuing tort doctrine
applies, and they acknowledge that any claims alleging tortious
conduct occurring in 2011 are timely.  If Plaintiffs are arguing
that none of their claim accrued before 2011, Defendants wonder
why they oppose Defendants' Motion at all.  [Id. at 10-11.]

Defendants reiterate that Plaintiffs' misrepresentation claims are not saved by the continuing tort doctrine and are therefore entirely time-barred.  Defendants note that the misrepresentation claims are based on allegedly false representations that Pioneer made in the October 2000 Response Letter, the 2002 Conservation Plan, and the December 2011 Letter. [Id. at 12 (citing Second Amended Complaint at ¶¶ 174-78).] Defendants note that Plaintiffs did not file suit until 2011 and, as such, the misrepresentation claims based on the 2000 and 2002 communications are clearly barred by the applicable six-year limitations period.  Defendants argue that Plaintiffs do not address the December 2011 Letter in their memorandum in opposition to Defendants' Motion and, therefore, Plaintiffs concede that it is not an actionable misrepresentation.[6]  [Id.]

Finally, Defendants argue that Plaintiffs' submission of extrinsic evidence in their memorandum in opposition is improper, and this Court must disregarded Plaintiffs' exhibits. Even if the Court considers the extrinsic evidence, the deposition testimony Plaintiffs rely upon does not change the analysis of the statute of limitations issue.  [Id. at 13-14 & n.5.]  Defendants further assert that Plaintiffs' arguments regarding pre-suit mediation are both improper and immaterial.

---

[6] Defendants note that Plaintiffs filed suit in December 2011 and it is therefore unclear how Plaintiffs relied to their detriment on the December 2011 Letter.  [Id. at 12 n.4.]

Had mediation been responsible for delaying Plaintiffs' filing suit, the parties would have contemplated entering into a tolling agreement; however, they never did so.  [Id. at 15-16.]

       In sum, Defendants argue that Plaintiffs' negligence, strict liability, nuisance, trespass, and landlord liability claims are all continuing torts for which the actionable time period is limited to two years before the original complaint was filed on December 13, 2011 for the Aana plaintiffs and May 23, 2010 for the Casey plaintiffs.  Further, Plaintiffs' misrepresentation claims are time-barred because Plaintiffs were immediately aware that Pioneer did not take the steps described in its October 2000 Response Letter, and Plaintiffs have alleged no other actionable misrepresentations.  Defendants therefore urge the Court to grant Defendants' Motion.  [Id. at 17.]

## STANDARD

       Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

37

Id.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

        "Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

**DISCUSSION**

**I.   Count III and Count VIII**

        At the outset, this Court notes that Hawai`i law does not recognize a negligence per se cause of action for the violation of state or county law.  The Hawai`i Supreme Court has stated:

> In tort law, noncompliance with an established statutory standard is not necessarily conclusive on the issue of negligence, Pickering v. State, 57 Haw. 405, 408, 557 P.2d 125, 127 (1976), but is merely evidence of negligence, Michel v. Valdastri, Ltd., 59 Haw. 53, 575 P.2d 1299 (1978).  Under tort law the Employee driving his vehicle over a solid line to pass another vehicle on a highway would be a violation of the traffic code, but without more, such a passing would not amount to negligence per se. . . .

Camara v. Agsalud, 67 Haw. 212, 218, 685 P.2d 794, 798 (1984).

see also Medeiros v. Haw. Dep't of Labor & Indus. Relations, 108 Hawai`i 258, 276, 118 P.3d 1201, 1219 (2005) (Levinson, J., dissenting) (quoting Camara, 67 Haw. at 218, 685 P.2d at 798); Ritchie v. Wahiawa Gen. Hosp., 597 F. Supp. 2d 1100, 1107 n.10 (D. Hawai`i 2009) (citing Medeiros v. Haw. Dept. of Labor & Indus. Relations, 108 Hawai`i 258, 276, 118 P.3d 1201, 1219 (2005)).  Thus, to the extent that Count III alleges a negligence per se claim distinct from Plaintiffs' general negligence claim, Count III fails as a matter of law.

Even if the Court construes Count III as alleging claims directly under the Hawai`i Pesticides Law, the Hawai`i Air Pollution Control Act, and Kauai Ordinance 808, [Second Amended Complaint at ¶¶ 27-28,] Count III would still fail as a matter of law.  The Hawai`i Pesticides Law and the Hawaii Air Pollution Control Act do not create a private right of action to enforce those statutes.  See Haw. Rev. Stat. § 149A-33 (providing the Department of Agriculture "the authority to carry out and effectuate the purpose of th[e] [Hawai`i Pesticides Law] by rules"); Haw. Rev. Stat. § 342B-42 (providing the director of the Department of Health the right to enforce the Hawaii Air Pollution Control Act).  Similarly, Ordinance 808 does not create a private right of action for its violation.  See Casey, 2013 WL 1701873, at *7.

39

This Court therefore GRANTS the Robinson Motion and Defendants' Motion as to Count III and DISMISSES Count III in its entirety.  Insofar as this Court finds that the defects in Count III cannot be cured by amendment, see Harris, 573 F.3d at 737, the dismissal is WITH PREJUDICE.  This Court, however, emphasizes that Plaintiffs may use evidence of the alleged violations of the Hawai`i Pesticides Law, the Hawai`i Air Pollution Control Act, and Ordinance 808 to support their remaining negligence claims.

Count VIII is titled "Landlord Liability for Acts of Tenant[.]"  [Second Amended Complaint at pg. 36.]  The Court FINDS that Count VIII does not state an affirmative claim for relief.  Rather, Count VIII describes a legal theory by which Plaintiffs assert that the Robinson Defendants are responsible for Pioneer's actions and omissions.  To the extent Plaintiffs attempt to assert a separate cause of action in Count VIII, the claim fails as a matter of law, and the defects in Count VIII cannot be saved by amendment.  This Court therefore GRANTS the Robinson Motion and Defendants' Motion as to Count VIII and DISMISSES Count VIII WITH PREJUDICE.  This Court, however, emphasizes that Plaintiffs may rely on the legal arguments described in Count VIII to allege the Robinson Defendants' liability for Plaintiffs' remaining claims.

## II.   **Robinson Motion**

### A.   **Counts I, II, V, and VI**

In the Robinson Motion, the Robinson Defendants seek dismissal of Count I (negligence), Count II (failure to warn), Count V (trespass), and Count VI (nuisance) on the grounds that as a landlord, they cannot be held liable for the alleged tortious acts of Pioneer, their tenant.  The Court agrees.

In <u>Casey v. Pioneer Hi Bred International, Inc.</u>, this Court stated,

> As a general rule, a lessor is not liable for the tortious conduct of its lessee.  <u>See</u> <u>Mitchell [v. United States</u>, Civ. No. 11-00088 HG-KSC], 2011 WL 4048986, at *4 [(D. Hawai`i Sept. 12, 2011)] (stating that, generally, a landowner is not liable for injuries occurring on the land once the lessor takes possession, and that landowner liability "turns on 'the degree of control' the landowner exercises over the land.").  The Restatement (Second) of Torts, Section 837 provides that a lessor of land is subject to liability for a nuisance caused by an activity carried out upon its land only if, at the time of the lease, the lessor (1) consents to the activity or knows or has reason to know it will be carried on, and (2) knows or should know that it will necessarily involve or is already causing a nuisance.  Restatement (Second) of Torts: Activities After Transfer of Land § 837 (1979); <u>see also</u> <u>Meloy v. City of Santa Monica</u>, 12 P.2d 1072, 1074 (Cal. Ct. App. 1932) (finding a landlord not responsible for a nuisance caused by lessee where land "leased for a lawful and proper purpose, when there is no nuisance or illegal structure upon it at the time of the letting"); <u>City of L.A. v. Star Sand & Gravel Co.</u>, 12 P.2d 69 (Cal. Ct. App. 1932) (same).

Civil No. 12-00655 LEK-BMK, 2013 WL 1701873 at *6 (D. Hawai`i

Apr. 17, 2013).[7]

At the time they entered into the lease, the Robinson Defendants may have known that Pioneer would be using the property to farm, however, as stated in the Hawai`i Right to Farm Act, farming is not inherently a "nuisance".  The Hawai`i Right to Farm Act states as its "findings and purpose":

> The legislature finds that when nonagricultural land uses extend into agricultural areas, farming operations often become the subject of nuisance lawsuits that may result in the premature removal of lands from agricultural use and may discourage future investments in agriculture.  The legislature also finds that under the Hawaii State Planning Act, it is a declared policy of this State to "foster attitudes and activities conducive to maintaining agriculture as a major sector of Hawaii's economy."  Accordingly, it is the purpose of this chapter to reduce the loss to the State of its agricultural resources by limiting the circumstances under which farming operations may be deemed to be a nuisance.

Haw. Rev. Stat. § 165-1.  The Act also states that, "[n]o court . . . shall declare any farming operation a nuisance for any reason if the farming operation has been conducted in a manner consistent with generally accepted agricultural and management practices.  There shall be a rebuttable presumption that a farming operation does not constitute a nuisance."  Haw. Rev.

---

[7] This Court recognizes that there is no Hawai`i case law applying Restatement (Second) of Torts § 837.  As this Court has previously noted, however, Hawai`i courts often look to California courts for guidance when there is no Hawai`i precedent regarding a Restatement provision.  See, e.g., Wood v. Greenberry Fin. Servs., Inc., 907 F. Supp. 2d 1165, 1182 (D. Hawai`i 2012) (discussing Restatement (Second) of Torts § 876(b), (c)).

Stat. § 165-4.  Further, Haw. Rev. Stat. § 165-2 states, in pertinent part:

> "Nuisance" as used in this chapter, includes all claims that meet the requirements of this definition regardless of whether a complainant designates such claims as brought in nuisance, negligence, trespass, or any other area of law or equity; provided that nuisance as used in this chapter does not include an alleged nuisance that involves water pollution or flooding.

Thus, in order to establish their negligence, trespass, or common law nuisance claims, Plaintiffs will have to prove that Pioneer failed to operate the GMO Test Fields "in a manner consistent with generally accepted agricultural and management practices." In order to establish the Robinson Defendants' liability for those claims, Plaintiffs will have to prove that, when they entered into the lease with Pioneer, the Robinson Defendants: (1) consented to Pioneer's unlawful farming practices or knew, or had reason to know, Pioneer would carry on unlawful practices; and (2) knew or should have known that Pioneer's activities would necessarily involve or were already causing a nuisance as defined under the Hawai`i Right to Farm Act.

Plaintiffs argue that, even if the Court finds that, at the time of letting, the Robinson Defendants did not know Pioneer would use the property in an unlawful manner, landlord liability may still arise if the Robinson Defendants learned of the unlawful conduct after entering into the lease with Pioneer, and the Robinson Defendants had the ability to stop the conduct but

43

did nothing.  [Mem. in Opp. to Robinson Motion at 2.]  Even assuming, *arguendo*, that such a claim is actionable,[8] the Court finds that Plaintiffs have failed to allege facts that, if proven, would demonstrate that the Robinson Defendants were aware, or should have been aware, of the complaints regarding Pioneer's farming operations.

The Court therefore FINDS that Plaintiffs have not pled sufficient factual allegations to support their claims of negligence, failure to warn, trespass, and nuisance (Counts I, II, V, and VI) against the Robinson Defendants.  This Court, however, finds that it is arguably possible for Plaintiffs to cure the defects in these claims against the Robinson Defendants by amendment.  See Harris, 573 F.3d at 737.  The Robinson Motion is therefore GRANTED IN PART AND DENIED IN PART as to the portions of Counts I, II, V, and VI against the Robinson Defendants.  Those claims are DISMISSED WITHOUT PREJUDICE.

**B.**   **Count VII**

Count VII, Plaintiffs' negligent misrepresentation and intentional misrepresentation claim, is based on Defendants' alleged failure to carry out the representations made in the October 2000 Response Letter and the 2002 Conservation Plan, as well as on the allegedly false representation in the December

---

[8] Restatement (Second) of Torts § 837(2) states: "A vendor of land is not liable for a nuisance caused solely by an activity carried on upon the land after he has transferred it."

2011 Letter that Pioneer had been following reasonable agricultural practices.  [Second Amended Complaint at ¶¶ 174-75, 179.]  The Robinson Defendants argue that Count VII fails against them because Pioneer was the party that made these alleged misrepresentations, and there is no allegation that the Robinson Defendants made any material misrepresentation regarding the GMO Test Fields or even received the 2000 Waimea Petition.  [Mem. in Supp. of Robinson Motion at 24.]

This Court has identified the following elements of an intentional or fraudulent misrepresentation claim: "'(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance.'"  Strojny v. PermaDri, Inc., CIV. 11-00131 LEK-KSC, 2012 WL 4718099, at *18 (D. Haw. Sept. 30, 2012) (quoting Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai`i 461, 482-83, 228 P.3d 341, 362-63 (Ct. App. 2010) (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989))).

> The elements of a negligent misrepresentation claim are: "'(1) false information [is] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation.'"

Id. at *19 (some citations omitted) (quoting Zanakis-Pico v.

Cutter Dodge, Inc., 98 Hawai`i 309, 321, 47 P.3d 1222, 1234 (2002)).

The Court agrees with the Robinson Defendants and finds that Count VII does not allege facts that, if proven, would establish either the elements of an intentional or the elements of a negligent misrepresentation claim.  Pioneer, not the Robinson Defendants, made the representations in the October 2000 Response Letter, the 2002 Conservation Plan, and the December 2011 Letter.  Plaintiffs do not allege either that the Robinson Defendants knew Pioneer would make these representations or that the Robinson Defendants contemplated that Plaintiffs would detrimentally rely upon these representations.  As to Plaintiffs' negligent misrepresentation claim, as set forth *supra* section II.A., Plaintiffs have failed to demonstrate that the Robinson Defendants had a duty as a landlord to prevent or correct the allegedly negligent misrepresentations of Pioneer, their tenant.  Further, even if the Court found that the Robinson Defendants had such a duty, Plaintiffs have not sufficiently alleged that they relied upon the misrepresentations.  The Second Amended Complaint contains numerous allegations demonstrating that, since 2000, Plaintiffs were aware of the persistent drift of fugitive dusts and pesticides into the Waimea community, as well as the source of the dusts and pesticides.  [Second Amended Complaint at ¶¶ 41-48.]

The Court therefore FINDS that Count VII does not allege the necessary facts to state either an intentional/fraudulent misrepresentation claim or a negligent misrepresentation claim against the Robinson Defendants.  This Court, however, finds that it is arguably possible for Plaintiffs to cure the defects in Count VII by amendment.  See Harris, 573 F.3d at 737.  The Robinson Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VII, which is DISMISSED WITHOUT PREJUDICE as to the Robinson Defendants.

## III. **Defendants' Motion**

The crux of Defendants' Motion is that significant portions of the claims in the Second Amended Complaint are time-barred.

### A.   **Applicable Statute of Limitations for Negligence Claims**

"In diversity actions, federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations."  Heiser v. Ass'n of Apartment Owners of Polo Beach Club, 848 F. Supp. 1482, 1484 (D. Hawai`i 1983) (citing Walker v. Armco Steel Corp., 446 U.S. 740, 745-46, 100 S. Ct. 1978, 1982-83, 64 L. Ed. 2d 659 (1980)).  Negligence claims in Hawai`i are subject to the two-year statute of limitations set forth in Haw. Rev. Stat. § 657-7.  See, e.g. Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Hawai`i 232, 276-77, 167 P.3d 225, 269-70 (2007).

47

Pursuant to Hawaii's "discovery rule," a cause of action does not "accrue," and the statute of limitations in § 657-7 does not begin to run, until the plaintiff knew or should have known of the defendant's negligence.  Hays v. City & County of Honolulu, 81 Hawai`i 391, 393, 917 P.2d 718, 720 (1996).  As such, a claim accrues "the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter."  Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d 689, 693-94 (1982) (citation omitted); see also Hays, 81 Hawai`i at 396, 917 P.2d at 723 ("[Haw. Rev. Stat.] § 657-7.3's two-year limitation commences to run when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage." (quoting Jacoby v. Kaiser Found. Hosp., 1 Haw. App. 519, 525, 622 P.2d 613, 617 (1981))).

Here, Defendants argue that Plaintiffs' claims, with the exception of Count VII, accrued no later than June 2000, when they submitted their complaint about the impact of Pioneer's farming practices.  [Mem. in Supp. of Defendants' Motion at 7 (citing Second Amended Complaint at ¶ 42; id., Exh. 5).]  Under Haw. Rev. Stat. § 657-7, the failure to discover a specific and actionable legal duty does not delay the start of the two-year limitations period.  Hays, 81 Hawai`i at 398, 917 P.2d at 725.

48

The Hawai`i Supreme Court, however, has applied the discovery rule and tolled the statute of limitations in cases where the plaintiff's lack of knowledge stemmed from:

> (1) [plaintiff's] inability to ascertain the necessary factual foundation upon which to base the elements of his negligence claim, such as lacking specialized medical knowledge, see, e.g., Yoshizaki [v. Hilo Hosp.], 50 Haw. [150,] 150, 433 P.2d [220,] 221 [(1967)] (plaintiff unaware that first physician's diagnosis incorrect until receipt of treatment from second physician for condition stemming from treatment pursuant to first diagnosis); Jacoby, 1 Haw. App. at 520-21, 622 P.2d at 614-15 (plaintiff unaware that second ailment causally related to treatment for first condition until she sought treatment for second ailment); (2) an alleged concealment of facts regarding the cause of his injuries, see, e.g., Yamaguchi, 65 Haw. at 87, 648 P.2d at 691 ("Appellant's principal contention on appeal is that the statute of limitations was tolled by appellees' (essentially the hospital's) failure to disclose information of alleged acts of negligence constituting the basis of his claim, or at least that an issue of material fact concerning appellees' concealment of incriminating information remained, precluding summary judgment."); or (3) inherent difficulties in the nature of the injury or the causal relationship between the negligent act and the injury, such as technological, scientific, or medical limitations. See, e.g., In re Hawaii Federal Asbestos Cases, 734 F. Supp. 1563, 1566 (D. Hawai`i 1990) ("Many . . . claims of injury [from asbestos exposure] are based on subjective declarations of shortness of breath, tiredness and general lassitude. X-rays may or may not show the presence of asbestos-induced changes in the lung.  Even many forms of pulmonary analysis are not definitive in measuring impairment. . . .  All of the above indicates a need for some form of easily verifiable standard for determining whether an 'injury' exists and when such injury warrants an award of compensation." (Footnotes omitted.)). . . .  As Yamaguchi provides, the

> discovery rule prevents the running of the statute of limitations "until [the] plaintiff [has] knowledge of those facts which are necessary for an actionable claim before the statute begins to run." It does not delay the start of the limitations period until the plaintiff learns of the legal duty upon which he or she may base a cause of action.

Id. at 397-98, 917 P.2d at 724-25 (some alterations in Hays).

> The Hawai`i Supreme Court also recognized that:

> A discovery rule which conditions accrual of an action on a plaintiff's specific knowledge of another's negligence means, in many cases, that an action will not accrue until a party walk's [sic] into a lawyer's office and is advised that he [or she] has an actionable claim. This should not be the law. A party must exercise reasonable diligence in pursuing a claim. If a plaintiff fails to exercise such diligence in a timely manner, the cause of action should be barred by the statute of limitations.

Id. at 398, 917 P.2d at 725 (alterations in Hays) (quoting In re Hawaii Federal Asbestos Cases, 854 F. Supp. 702, 708 (D. Hawai`i 1994)).

In the instant case, the 2000 Waimea Petition demonstrates Plaintiffs' knowledge that Pioneer was using chemicals that, along with dust from Pioneer's operations, were allegedly drifting onto Plaintiffs' properties. The Waimea Petition stated that, the Waimea residents "believe that current provisions for reducing dust pollution are not being adequately implemented, and that local agricultural businesses are not complying with existing regulations intended to restrict dust pollution." [Second Amended Complaint, Exh. 5 at 1.] The Waimea

residents also stated, "[w]e are concerned that this dust may contain other pollutants, such as fertilizers and/or pesticides that are used in commercial agriculture, and that long-term health consequences of continuing present behavior may be severe." [Id.]

Plaintiffs cannot take advantage of the discovery rule's tolling of the statute of limitations because, as shown by the Waimea Petition, Plaintiffs clearly had knowledge that Pioneer's actions were affecting the community. Even assuming, *arguendo*, that Plaintiffs lacked knowledge of an actionable claim, Plaintiffs cannot take advantage of the discovery rule's exception because the facts in this case are unlike the type of circumstances in which the Hawai`i state courts have allowed the exception. Hawai`i state courts and federal courts applying Hawai`i law have generally allowed the exception in claims where: the plaintiff is faced with technological, scientific, or medical limitations; the plaintiff is unable to ascertain the necessary factual foundation; or the defendants are involved in concealing facts regarding the cause of the injuries. Hays, 81 Hawai`i at 397-98, 917 P.2d at 724-25. In the instant case, for more than a decade, Plaintiffs witnessed the allegedly tortious acts and Pioneer's failure to mitigate the harm. Plaintiffs also cannot claim that Pioneer's October 2000 Response Letter or the December 2011 Letter concealed facts regarding the cause of the injuries.

This Court agrees with Defendants that the allegations in the Second Amended Complaint show that Plaintiffs were aware immediately after both responses that Pioneer's farming practices were the cause of the migration of dust and pesticides and that Pioneer had failed to take sufficient steps to mitigate the allegedly tortious condition.  <u>See</u> Mem in Supp. of Defendants' Motion at 14 (citing Second Amended Complaint at ¶¶ 17, 41-44, 47-49, 67, 75, 89, 130).

Plaintiffs also argue that dust and pesticides should be treated differently when determining whether the statute of limitations bar the claims.  Unlike dust, pesticides are intangible and not readily detectable.  Plaintiffs therefore argue that, as long as Plaintiffs exercised reasonable diligence, the statute of limitations for claims alleging harm from pesticides should not accrue until 2011, when Plaintiffs discovered Defendants' negligent conduct and its connection to the damage to Plaintiffs' properties.  This Court, however, finds that addressing reasonable diligence is unnecessary because the 2000 Waimea Petition explicitly referenced pesticides and fertilizers as possible harmful agents in the air.  Thus, this Court concludes that, whether the alleged breaching entity is dust or pesticides,  Plaintiffs' negligence claims accrued in 2000.

**B.**   <u>Other Claims Subject to Haw. Rev. Stat. § 657-7</u>

As to Count IV (strict liability), Hawai`i law recognizes the doctrine of strict liability for ultra-hazardous activities.  See, e.g., <u>Akee v. Dow Chem. Co.</u>, 293 F. Supp. 2d 1140, 1143 (D. Hawai`i 2002) (citing <u>Beckstrom v. Hawaiian Dredging Co.</u>, 42 Haw. 353 (1958)).  Assuming, for purposes of Defendants' Motion, that Plaintiffs can state a plausible strict liability claim under the facts of this case,[9] the two-year statute of limitations period in § 657-7 also applies to Count IV.  <u>See, e.g.</u>, <u>In re Haw. Fed. Asbestos Cases</u>, 854 F. Supp. 702, 707 (D. Hawai`i 1994) (applying § 657-7 to strict liability claims in product liability action).

Section 657-7 also applies to Plaintiffs' trespass claim (Count V).  <u>See</u> <u>Dunbar v. Cnty. of Maui</u>, CV. No. 07-00107 DAE-BMK, 2008 WL 2622814, *3-4 (D. Hawai`i July 2, 2008) (applying § 657-7 to, *inter alia*, claim for trespass to property).  This Court is not aware of any case law expressly stating the applicable statute of limitations for a nuisance claim.  Plaintiffs' allegations in their nuisance claim (Count VI), however, clearly describe "damage or injury to persons or property," and therefore this Court concludes that § 657-7 also

---

[9] As recognized in Defendants' Motion, "[b]ecause this motion addresses only limitations issues, the Court need not reach the fundamental issue of whether farming can be deemed an 'ultra-hazardous activity.'"  [Mem. in Supp. of Defendants' Motion at 10 n.4.]

applies to Count VI.

The Court now turns to the issue of whether any tolling doctrine applies.

### C.   The Continuing Tort Doctrine

Hawai`i recognizes a continuing tort doctrine under which "a continuing wrong may, in effect, toll the statute of limitations with respect to tortious conduct that is ongoing." Garner v. State Dep't of Educ., 122 Hawai`i 150, 168, 223 P.3d 215, 233 (Ct. App. 2009) (citing Anderson v. State, 88 Hawai`i 241, 248-50, 965 P.2d 783, 790-92 (App. 1998); Wong Nin v. City and County of Honolulu, 33 Haw. 379, 386 (1935)).  Where the defendant could have taken curative action at all times, the damage "cannot be deemed to be a permanent nuisance" and thus is "a continuing injury against which the statute of limitations" does not run.  Anderson, 88 Hawai`i at 249, 965 P.2d at 791 (citation and internal quotation marks omitted).

Under the continuing tort doctrine, "a continuous tortious act should not be subject to a limitations period until the act ceases." Id. at 250, 965 P.2d at 792.  "[W]hile the statute of limitations is 'tolled' by a continuing tortious act, recovery may be had only for damages accruing within the statutory period before the action, but not for damages accrued prior to that period." Garner, 122 Hawai`i at 168, 223 P.3d at 233 (emphasis in original) (citing Anderson v. State, 88 Hawai`i

241, 250, 965 P.2d 783, 792 (App. 1998) (citing <u>Wong Nin v. City and County of Honolulu</u>, 33 Haw. 379, 386 (1935))).  The practical effect is that "the date that the tort 'first accrues' moves forward into the future as long as the tortious conduct continues."  <u>Id.</u>

Plaintiffs' Counts I, II, IV, V, and VI are all based on the alleged continuing tort that, since 2000, Pioneer's poor soil conservation practices have led to the migration of pollutants that blow into the Waimea community, damaging Waimea residents' homes and creating a health hazard.  [Second Amended Complaint at ¶¶ 15-17.]  Plaintiffs claim that, in spite of the October 2000 Response Letter and the December 2011 Letter from Pioneer stating its commitment to protecting the Waimea community and to following reasonable agricultural practices, there have been no changes.  [<u>Id.</u> ¶ 178.]  Plaintiffs further allege that, from 2000 to the present day, Pioneer has committed additional violations of state and local laws.  [<u>Id.</u> at ¶ 181.]

Based upon these factual allegations, the Court CONCLUDES that the continuing tort doctrine applies and tolls the statute of limitations for Counts I, II, IV, V, and VI.  Thus, the date that the alleged torts first accrue moves forward from 2000 into the future.  Based upon the continuing tort doctrine, the actionable time period for these counts is limited to two years before the original complaint was filed on December 13,

2011 for the <u>Aana</u> plaintiffs and May 23, 2012 for the <u>Casey</u> plaintiffs.

      **D.**    <u>**Count VII**</u>

        Count VII asserts claims of intentional/fraudulent misrepresentation and negligent misrepresentation based upon the October 2000 Response Letter, the 2002 Conservation Plan, and the December 2011 Letter.  Plaintiffs allege that they relied to their detriment on these misrepresentations by postponing action against Defendants.  [<u>Id.</u> at ¶¶ 173-83.]  Defendants argue that Plaintiffs' misrepresentation claims based on pre-December 2009 statements should be time-barred.  [Mem. in Supp. of Defendants' Motion at 13.]  Both negligent misrepresentation claims and intentional/fraudulent misrepresentation claims, however, are subject to the six-year limitations period in Haw. Rev. Stat. § 657-1(4).  <u>Au v. Au</u>, 63 Haw. 210, 216-17, 626 P.2d 173, 178-79 (1981).  Because of the nature of Plaintiffs' misrepresentation claims, the continuing tort doctrine does not apply.  The Court therefore FINDS that the portions of Plaintiffs' misrepresentation claims based on the October 2000 Response Letter and 2002 Conservation Plan are time-barred.  The portion of Plaintiffs' misrepresentation claim based on the December 2011 Letter, however, is not time-barred.

E.   **Fraudulent Concealment**

        Plaintiffs also argue that the statute of limitations
for each of their claims should be tolled because of fraudulent
concealment.  Plaintiffs emphasize that they only recently
discovered Pioneer's failure to implement the 2002 Conservation
Plan and generally accepted agricultural practices when the
County issued the March 2011 Notices of Violation.  [Second
Amended Complaint at ¶¶ 71-78.]

        Fraudulent concealment has been defined as
        "employment of artifice, planned to prevent
        inquiry or escape investigation, and misled or
        hinder acquirement of information disclosing a
        right of action.  The acts relied on must be of an
        affirmative character and fraudulent."  Lemson v.
        General Motors Corp., 66 Mich. App. 94, 97, 238
        N.W.2d 414, 415 (1975).  Fraudulent concealment
        involves the actions taken by a liable party to
        conceal a known cause of action.

Au, 63 Haw. at 215, 626 P.2d at 178 (some citations omitted).

The Hawai`i Supreme Court went on to state,

        The fraudulent concealment which will postpone the
        operation of the statute must be the *concealment
        of the fact that plaintiff has a cause of action.
        If there is a known cause of action there can be
        no fraudulent concealment* . . . .

        It is not necessary that a party should know the
        details of the evidence by which to establish his
        cause of action.  *It is enough that he knows that
        a cause of action exists in his favor, and when he
        has this knowledge, it is his own fault if he does
        not avail himself of those means which the law
        provides for prosecuting or preserving his claim.*
        (Citation omitted.) (Emphasis added.)

Id. at 215-16, 626 P.2d at 178 (alteration in Au) (quoting Weast

57

<u>v. Duffie</u>, 272 Mich. 534, 539, 262 N.W. 401, 402 (1935)).

Plaintiffs' attempt to resurrect the time-barred claims based on the October 2000 Response Letter and the 2002 Conservation Plan by alleging fraudulent concealment is unavailing.  The Second Amended Complaint clearly indicates Plaintiffs' knowledge that Defendants' conduct, which caused the persistent drift of fugitive dust and dangerous pesticides into the Waimea community, has been a daily, ongoing issue for the last decade.  [Second Amended Complaint at ¶¶ 40-41.] Plaintiffs, therefore, cannot claim a lack of actual or constructive notice.  The Court also finds that Plaintiffs did not act with due diligence, given that they knew shortly after the October 2000 Response Letter, that Pioneer had failed to take sufficient actions, if any, because the intrusion of dust and pesticides continued.  The Court therefore FINDS that Plaintiffs have not pled factual allegations that, if proven, would establish a basis to toll the applicable statutes of limitations based on fraudulent concealment.

     **E.**   <u>**Summary of Claims**</u>

As to Counts I, II, IV, V, and VI, the Court GRANTS Defendants' Motion as to the portions of these claims accruing prior to December 13, 2009.  This Court, however, finds that it is arguably possible for Plaintiffs to cure the defects in those claims by amendment.  The dismissal is therefore WITHOUT

PREJUDICE.  The portions of Counts I, II, IV, V, and VI accruing on or after December 13, 2009 remain.

As to Count VII, the Court GRANTS Defendants' Motion as to the portions of Count VII based upon the October 2000 Response Letter and the 2002 Conservation Plan.  This Court, however, finds that it is arguably possible for Plaintiffs to cure the defects in those portions of Count VII by amendment.  The dismissal is therefore WITHOUT PREJUDICE.  The Court DENIES Defendants' Motion as to the portion of Count VII based upon the December 2011 Letter.

The Court emphasizes that, insofar as Defendants' Motion only addressed the timeliness of Plaintiffs' claims, this Court expresses no opinion on whether Plaintiffs' remaining claims state plausible claims for relief.

## CONCLUSION

On the basis of the foregoing, the Robinson Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, both filed on February 20, 2013, are HEREBY GRANTED IN PART AND DENIED IN PART.

The Robinson Motion and Defendants' Motion are GRANTED with respect to Count III, and the Robinson Motion is GRANTED as to Count VIII.  Those claims, in their entirety, are

DISMISSED WITH PREJUDICE.

The Robinson Motion is GRANTED IN PART AND DENIED IN PART with respect to Counts I, II, V, VI, and VII.  Those claims are DISMISSED WITHOUT PREJUDICE as to the Robinson Defendants.

Defendants' Motion is GRANTED IN PART AND DENIED IN PART with respect to Counts I, II, IV, V, VI, and VII.  The portions of Counts I, II, IV, V, and VI accruing prior to December 13, 2009 are DISMISSED WITHOUT PREJUDICE.  The portions of Count VII based upon the October 2000 Response Letter and the 2002 Conservation Plan are DISMISSED WITHOUT PREJUDICE.  Defendants' Motion is DENIED as to the portion of Count VII based upon the December 2011 Letter.

To the extent that the Court has dismissed some of the counts in the Second Amended Complaint without prejudice, the Court GRANTS Plaintiffs leave until **September 6, 2013** to file a third amended complaint consistent with the terms of this Order.  The Court CAUTIONS Plaintiffs that, if they fail to file their third amended complaint by **September 6, 2013**, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice.  Further, if Plaintiffs file a third amended complaint which fails to address the defects identified in this Order, the Court may dismiss the claims which this Court has dismissed without prejudice with

prejudice.  The Court emphasizes that it has not granted Plaintiffs leave to add new parties, claims, or theories of liability.  If Plaintiffs' third amended complaint includes new parties, claims, or theories of liability, this Court may dismiss such new parties, claims, or theories of liability with prejudice.

It IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 9, 2013.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**JIM AANA, ETC., ET AL V. PIONEER HI-BRED INTERNATIONAL, INC., ET AL**; CIVIL NO. 12-00231 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS GAY & ROBINSON, INC. AND ROBINSON FAMILY PARTNERS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6); AND GRANTING IN PART AND DENYING IN PART DEFENDANTS GAY & ROBINSON, INC., ROBINSON FAMILY PARTNERS, AND PIONEER HI-BRED INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT