**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, HI 96734
T:(808) 791-9555

**LAW OFFICES OF GERARD JERVIS**
GERARD A. JERVIS
Hawaii Bar No. 2490
354 Uluniu Street, Ste. A205
Kailua, Hawaii 96734
T: (808) 262-2828

*Attorneys on behalf of Plaintiffs*


# UNITED STATES DISTRICT COURT
# DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA et al., on behalf of themselves and all others similarly situated, | ) CIVIL NO.:  CV12 00231 – LEK BMK<br>) [Consolidated with CV 12-00655-LEK – BMK] |
| Plaintiffs; | ) |
| | ) |
| vs. | ) |
| | ) |
| DUPONT PIONEER, an Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10; | ) **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc #339); EXHIBITS 1-3; DECLARATION OF KYLE SMITH; CERTIFICATE OF SERVICE** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) **Hearing:** |
| | ) **Date:      November 12, 2013** |
| | ) **Time:      9:45 a.m.** |
| | ) **Judge:     Hon. Leslie Kobayashi** |
| | ) |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 2

II.   LEGAL STANDARD ....................................................................................... 3

III.  ARGUMENT ................................................................................................... 4

A.    The Third Amended Complaint Alleges the Robinson Entities were *Aware* of the Conditions of Their Fields, *Contributed* to the Creation of Dust, *Failed* to Avoid the Harm, and *Renewed* Pioneer's Leases Despite Actual Knowledge of the Nuisance .......................................................................................................... 4

    1.   The TAC alleges specific facts that demonstrate the Robinson Entities "knew or should have known" of the nuisance before renewing the Pioneer lease ........................................................................................................ 4

    2.   *Mitchell v. United States* and Restatement §837 do not bar Plaintiffs' claims ..................................................................................................... 7

    3.   The Hawaii Right to Farm Act Does Not Bar Plaintiffs' Claim ................ 10

    4.   Ordinance 808 is directly relevant to whether Defendants followed GAAMP ............................................................................................... 13

    5.   The Hawaii Constitution provides a private right of action for Waimea Plaintiffs ............................................................................................... 17

B.    Defendants' "Actionable Damage Period" Arguments Should be Rejected because the Running of the Statute of Limitations is a Question of Fact Inappropriate under Rule 12(b)(6) for 200 Plaintiffs ............................................................................... 19

C.    Defendants Challenge to "Prospective Property Damages" Is Premature ............. 24

D.    The Hawaii Right to Farm Act Does Not Preclude Strict Liability. ...................... 24

E.    Under the Hawaii Discovery Rule, the Statute of Limitations for Fraud Runs From Discovery of the Fraud ............................................................................................. 27

IV.   CONCLUSION .............................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Akee v. Dow Chem. Co.,*
  293 F. Supp. 2d 1140, 1143 (D. Hawaii 2002)................................................27

*AOAO Newtown Meadows v. Venture 15,*
  115 Haw. 232 (2007)............................................................................21, 23

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...........................3

*Bartleson v. United States,*
  96 F.3d 1270, 1274-75 (9th Cir. 1996)..........................................................24

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 557 (2007) ..............................................................................3

*Chee v. Amanda Goldt Property Management,*
  143 Cal.App.4th 1360, 1372-1374, 50 Cal.Rptr.3d 40, 50-51 (2006)................6

*County of Hawaii v. Ala Loop Homeowners,*
  123 Hawaii 391, 409 (2010) ....................................................................18, 19

*De La Cruz v. Tormey,*
  582 F.2d 45, 48 (9th Cir.) *cert. denied*, 441 U.S.965, 99 S.Ct. 2416 (1979) ................3, 13

*Marcus v. Holder,*
  574 F.3d 1182, 1184 (9th Cir. 2009) ........................................................3, 22

*Mitchell v. United States,*
  Civ. No. 11-00088, 2011 WL 4048986 (D.Haw.  Sept. 12, 2011)...........4, 7, 8

*Neitzke v. Williams,*
  490 U.S. 319, 327, 109 S.Ct 1827 .................................................................3

*Scheuer v. Rhodes,*
  419 U.S. 232, 94 S.Ct 1683 (1974) ...............................................................3

*Smallwood v. NCsoft Corp.,*
  730 F.Supp. 2d 1213, 1220-21 (D.Haw.2010) .........................................3, 13

*Thomas v. Kidani,*
  126 Haw. 125, 132, 267 P.3d 1230 (Haw. 2011) .........................................28

*Uccello v. Laudenslayer,*
  44 Cal.App.3d 504, 511-12, 118 Cal.Rptr. 741, 745 (1975)............................6

*Yamaguchi v. Queen's Med. Ctr.,*
  65 Haw. 84, 90 (Haw. 1982) ..................................................................21, 23

## Statutes

1986 Haw. Sess. Laws Act 80, 1 at 104 ........................................................17, 18
Federal Insecticide Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §136 et seq...................25
Federal Rule of Civil Procedure 8(a)(2) ...............................................................3
Federal Rule of Civil Procedure 12(b)(6)..................................................*passim*
Federal Rule of Civil Procedure 54(b) ...............................................................29

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Federal Rule of Civil Procedure 54(c) ...................................................................24
Hawaii Constitution, Article XI, § 9 ...............................................................17, 18
Hawaii Revised Statutes § 46-1.5 ........................................................................14
Hawaii Revised Statutes § 46-1.5(13) ..................................................................14
Hawaii Revised Statutes § 46-17 .....................................................................14, 15
Hawaii Revised Statutes § 149A-31 .................................................................18, 25
Hawaii Revised Statutes § 165-2 .....................................................................12, 27
Hawaii Revised Statutes § 165-4 .....................................................................11, 12
Hawaii Revised Statutes § 342(b) ....................................................................17, 18
Kauai County Revised Code of Ordinance 808, §22-7.1 ................................*passim*
Stand. Comm. Rep. No 77, in 1 Proceedings of the Constitutional Convention of 1978, at 689-690 (1980) ...................................................................................18

## Other Authorities

10A Wright, Miller & Kane, Federal Practice and Procedure, §2729 .........................23
Restatement (Second) of Torts §837 ....................................................................*passim*

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

# I.

# INTRODUCTION

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the pleadings. Defendants urge this Court, however, to ignore the allegations of the Third Amended Complaint ("TAC")[1] and weigh the evidence in the light most favorable for Defendants. Plaintiffs' therefore respectfully request this Court to deny Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because:

- **The TAC alleges numerous facts that establish the Robinson Entities "knew or should have known" of the nuisance created by Pioneer before leasing new lands to Pioneer.** Indeed, as the TAC alleges, the Waimea dust problem and community complaints and relations were specifically discussed as part of Pioneer lease negotiations, and the Robinson Entities provided expertise and equipment to Pioneer because of the problems.

- **When Plaintiffs "knew or should have known" of Pioneer's negligence and whether Plaintiffs exercised reasonable diligence is a question of fact for the jury.** While Defendants argue the 2000 Waimea Petition demonstrates *all* 200 Plaintiffs knew Pioneer and the Robinson Entities committed negligence in 2000, there is no evidence all Plaintiffs were even aware of the Petition, much less Pioneer's negligence, to allow this Court to dismiss pre-2009 claims *with prejudice* for all Plaintiffs.

- **The Hawaii Right to Farm Act does not grant immunity for Pioneer's pesticide pollution or strict liability for ultra-hazardous activities.** While Pioneer claims the Right to Farm Act grants it immunity to pollute Waimea with pesticides because it is a "farmer," "Generally Accepted Agricultural and Management Practices" does not mean that Pioneer can ignore state and federal laws that strictly prohibit pesticide drift.

- **A motion to dismiss is not intended to restrict *remedies* before the evidence.** While Pioneer wishes to limit Plaintiffs possible remedies by conceding it has committed continuing torts, there is no evidence regarding the harm it has caused or whether it can reasonably abate the harm it has caused. Therefore, Pioneer's effort to limit Plaintiffs' remedies is premature.

---

[1] *See* Plaintiffs' Third Amended Complaint ("TAC"), attached hereto as **Exhibit 1.**

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails 'to state a claim upon which relief can be granted.[2] To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] "While Rule 8 does not demand detailed factual allegations, 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4] On a Rule 12(b)(6) motion, a court must therefore take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party."[5] "As the Ninth Circuit has stated, '[t]he issue is not whether a plaintiffs' success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims.'"[6] Thus, "the court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any sort of facts that might be proved in support of a plaintiffs' claims."[7]

---

[2] FED. R. CIV. P. 12(b)(6).

[3] FED. R. CIV. P. 8(a)(2).

[4] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[5] *Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir.2009).

[6] *Smallwood v. NCsoft Corp.*, 730 F.Supp. 2d 1213, 1220-21 (D.Haw.2010)(quoting *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.) *cert. denied*, 441 U.S.965, 99 S.Ct. 2416 (1979).

[7] *Id.*; *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)(quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct 1827 ("Rule 12(b)(6) does not countenance…**dismissals based on a judge's disbelief of a complaint's factual allegations.")**(emphasis added)(quoting *Scheuer v. Rhodes*, 419 U.S. 232, 94 S.Ct 1683 (1974)(**A well-pleaded complaint may proceed even if it appears "that recovery is very remote or unlikely**.")(emphasis added).

### III.

### ARGUMENT

**A. The Third Amended Complaint Alleges the Robinson Entities were *Aware* of the Conditions of Their Fields, *Contributed* to the Creation of Dust, *Failed* to Avoid the Harm, and *Renewed* Pioneer's Leases Despite Actual Knowledge of the Nuisance.**

Defendants' motion begins with asserting that Plaintiffs do not allege any facts that the Robinson Entities "knew or had reason to know" that Pioneer's GMO Test Fields were creating a nuisance.[8] This argument begins with the familiar refrain that the Robinson Entities, as the landlord, simply cannot be held liable for the conduct of their tenant, Pioneer, under *Mitchell v. United States* and the Restatement (Second) of Torts §837.[9] Importantly, Defendants attack is not based on evidence or even the allegations of the TAC. Rather, it is purely legal challenge that claims landlords cannot be liable for the torts of their tenants under any circumstances. Defendants' attack, however, is untrue under the law, the allegations of the TAC, and the evidence.

**1. The TAC alleges specific facts that demonstrate the Robinson Entities "knew or should have known" of the nuisance <u>before</u> renewing the Pioneer lease.**

The TAC alleges the Robinson Entities "knew or should have known that Pioneer's activities necessarily involved and were already causing a nuisance." This allegation is not "an unadorned, the-defendant-unlawfully-harmed-me accusation,"[10] but is based on specific facts supporting Plaintiffs' assertion that the Robinson Entities knew, or should have known, of the nuisance created by Pioneer. As the TAC alleges:

    a. The parties' lease documents expressly contemplated that Pioneer's farming operations would necessarily result in a nuisance;

---

[8] Motion at 12.

[9] Motion at 12.

[10] *Iqbal,* 556 U.S. at 678.

Page 4

b. Waimea Resident Klayton Kubo's complaint to the Robinson Entities in 2000 about Pioneer operations on the GMO Test Fields;

c. The Waimea Petition to local growers in 2000, which the Robinson Entities were aware of upon information and belief, related to dust and pesticide concerns;

d. Pioneer's 2002 lease negotiations with the Robinson Entities to lease additional fields;

e. The Robinson Entities' simultaneous cultivation of sugar cane on fields immediately adjacent to Pioneer's operations, which both contributed to the dust from the simultaneous use of shared roads and provided the repeated opportunity to observe Pioneer's farming practices;

f. The Robinson Entities' cultivation of sugar cane on fields subsequently leased to Pioneer, which provided the Robinson Entities intimate knowledge of erosion on the GMO Test Fields into Waimea;

g. The Robinson Entities' specific partnership with Pioneer to supply equipment and personnel to Pioneer to address erosion concerns on the GMO Test Fields in 2002.

h. The Robinson Entities' violation of their independent duty under Ordinance 808 to ensure best management practices were actively implemented on the GMO Test Fields;

i. The Robinson Entities' consent to lease additional fields to Pioneer in 2002, 2005, and 2010, despite knowledge of ongoing erosion problems on the GMO Test Fields;

j. The Robinson Entities' consent to lease additional fields to Pioneer in 2002, 2005, and 2010, when it knew Pioneer had not obtained grading permits or agricultural exemptions prior to commencing operations;

k. The Robinson Entities consent for Pioneer to commence grubbing operations in 2010 on GMO Test Fields before the 2010 Lease began without a grubbing permit or Agricultural Exemption."[11]

These alleged facts support Plaintiffs' contention that the Robinson Entities were not merely aware of the risk of offsite drift of pollutants (from previously farming the same fields and having dust problems), but were aware of the actual nuisance on the Waimea fields and complaints regarding Pioneer's farming operations. The Robison Entities' knowledge stems from farming immediately adjacent to Pioneer (§134(e & f); leasing equipment and people to Pioneer

---

[11] TAC ¶135.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

to address dust and erosion issues (§134(g)), discussing Waimea dust problems and community complaints during lease negotiations with Pioneer (§134(d)), and allowing Pioneer to enter Robinson lands *before* the 2020 lease (§134(k)). The Robinson Entities are not mere absentee landlords without knowledge, access, or expertise in their tenant's operation. Rather, they possessed knowledge of their tenants' operation and were on-site and included in discussions about the dusty field conditions and Waimea complaints.

Knowledge of the nuisance by the landlord gives rise to duty. When a landlord learns of the danger and has the ability to avoid the harm…a duty arises to use ordinary care to eliminate the condition:

> [E]ither at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, **the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act**.[12]

Thus, landlord liability can arise when "where the landlord 'participated in the wrongful act by authorizing or permitting it to be done' or where the landlord **failed to conduct a reasonable inspection of the premises before renewing a lease**."[13] Accordingly, because the TAC alleges that the Robinson Entities knew, or at minimum should have known, of the conditions created by Pioneer and complaints regarding Pioneer's farming operations before renewing and expanding

---

[12] *Uccello v. Laudenslayer*, 44 Cal.App.3d 504, 511-12, 118 Cal.Rptr. 741, 745 (1975) (citation omitted). (holding landlord could have been held liable for dog attack due to actual knowledge of dog's vicious propensities and option to terminate the tenancy); *Chee v. Amanda Goldt Property Management,* 143 Cal.App.4th 1360, 1372-1374, 50 Cal.Rptr.3d 40, 50-51 (2006) (general rule and exceptions where landlord knows of the hazard and has the ability to prevent the harm).

[13] *Chee,* 143 Cal.App.4th at 1374, 50 Cal.Rptr.3d at 51 (citations omitted)(emphasis added).

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Pioneer's Waimea leases, the TAC states a plausible claim for relief against the Robinson Entities and Plaintiffs respectfully request this Court to deny Defendants' motion.

### 2.  *Mitchell v. United States* **and Restatement §837 do not bar Plaintiffs' claims.**

The Restatement (Second) of Torts §837 and *Mitchell v. United States* are therefore not barriers to Plaintiffs' claims.[14] Indeed, both *Mitchell* and §837 recognize exceptions to the "general rule" that landlords are not liable for the tortious conduct of their tenants. As the *Mitchell* court notes, the "[a] landowner's liability for negligence in connection with hazardous conditions on land turns on 'the degree of control' the landowner exercises over the land."[15] In *Mitchell*, however, the Court granted dismissal because the lease "provide[d] for control of the premises by the [tenant]," and the plaintiff did not allege the landlord exercised sufficient control over Bowfin Park despite the lease terms.[16]

Unlike the *Mitchell* plaintiff, Waimea Plaintiffs allege that Defendants' lease expressly contemplated creation of a nuisance,[17] the Robinson Entities exercised control under the terms of the lease to abate the nuisance;[18] the Robinson Entities were consulted and hired to address the

---

[14] Motion at 12, citing *Mitchell v. United States*, Civ. No. 11-00088, 2011 WL 4048986 (D.Haw.  Sept. 12, 2011).

[15] *Mitchell,* 2011 WL 4048986 at 4.

[16] *Id.* at 5 ("The lease provides for control of the premises by the Pacific Fleet Submarine Memorial Association. **The Plaintiff does not argue, or allege, that the Government in fact exercised control over the property despite the terms of lease**.")(emphasis added).

[17] TAC ¶135.

[18] TAC ¶136 ("[T]he Robinson Entities possessed sufficient control under the terms of the 1998 Lease and 2010 Lease to the GMO Test Fields to inspect the GMO Test Fields and to eliminate the conditions themselves, force Pioneer to eliminate the conditions, or terminate the lease.").

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

dust nuisance on the property after it arose;[19] the Robinson Entities "contributed to the dust from the simultaneous use of shared roads" on the property;[20] and they held an independent duty to implement best management practices regardless of their lease with Pioneer.[21]

Unlike the U.S. government landlord in *Mitchell*, Plaintiffs' TAC therefore alleges specific facts supporting the conclusion that the Robinson Entities  "knew or should have known" of the dangerous condition on their property and had control over the property to eliminate the dangerous conditions.[22] These alleged facts go far beyond conclusory assertions and *Mitchell* provides no "barrier" to Plaintiffs' claims from proceeding to discovery because Plaintiffs allege that the Robinson Entities had both knowledge of, and sufficient control to eliminate, the nuisance.

Restatement § 837 also does not bar Plaintiffs' claims because Pioneer *knew and had reason to know* of the nuisance on their land. As §837 provides:

> (1) **A landlord <u>is</u> subject to liability for a nuisance** caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and
>> a)      at the time of the lease the lessor **consents to the activity** *or* **knows or has reason to know** that it will be carried on, and
>> b)      he then **knows or should know that it will necessarily involve or is already causing the nuisance**.[23]

While this Court previously expressed doubt whether liability might arise after commencement of the lease, this Court's analysis relies upon subsection (2), which applies to vendors rather

---

[19] TAC ¶33 ("[A]fter learning of the ongoing erosion and dust problems on the GMO Test Fields, the Robinson Entities leased personnel and equipment to Pioneer for the specific purpose of erosion control on the GMO Test Fields.")

[20] TAC ¶135(e).

[21] TAC ¶ 72.

[22] TAC ¶136.

[23] Restatement (Second) of Torts, §837 *Activities After Transfer of Land* (1979)(emphasis added), attached hereto as **Exhibit 2.**

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

than lessors.[24] Comment g to §837 expressly recognizes that a lessor who renews a lease with knowledge of the interference with the use and enjoyment of another's land is liable for continuation of the interference *after* the renewal:

> *g. Lease renewed.* If at the time that the lessor renews the lease he knows that activities are being carried on or that physical conditions have been created upon the leased land that are causing an unreasonable interference with the use and enjoyment of another's land, **he is liable for the continuance of the interference after the renewal.**[25]

While Defendants have claimed landlord liability may only arise when the landlord learns of the nuisance *before* a lease begins, Comment g recognizes that liability can arise *after* a lease begins when a landlord learns "activities are being carried on" or "physical conditions have been created upon the leased land" that are causing an "unreasonable interference with the use and enjoyment of another's land," and the landlord renews the lease. Here, the TAC alleges:

> 33) After the 1998 Lease, **the Robinson Entities were specifically made aware of ongoing erosion and dust problems associated with the GMO Test Fields and related roads as early as 2002 through lease discussions with Pioneer and through the complaint or at least one resident from Waimea.** Indeed, after learning of the ongoing erosion and dust problems on the GMO Test Fields, the Robinson Entities leased personnel and equipment to Pioneer for the specific purpose of erosion control on the GMO Test Fields.
>
> 34) Despite actual knowledge of the erosion problems on the GMO Test Fields after the 1998 Lease to Pioneer, the Robinson Entities entered into additional leases with Pioneer for acreage in 2002, 2005, and ultimately entered the 2010 Lease for 1100 acres and again allowed Pioneer to commence grubbing operations *without* obtaining grubbing permits or an agricultural exemption in blatant violation of Kauai law.[26]

---

[24] *See* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Doc.224)("Order") at 44. (Even assuming *arguendo,* that such a claim is actionable, the Court finds that Plaintiffs have failed to allege facts that, if prove, **would demonstrate that the Robinson Defendants were aware, or should have been aware, of the complaints regarding Pioneer's farming operations**.")(emphasis added).

[25] *Id.*, Restatement (Second) of Torts §837, cmt g. (1979)(emphasis added).

[26] TAC at 9, ¶¶33-34 (emphasis added).

Page 9

The TAC therefore alleges the Robinson Entities knew of the conditions before leasing additional lands to Pioneer and community complaints, but expanded Pioneer's Waimea leases anyway despite this knowledge.[27] Indeed, the condition of Waimea fields, dust problems, and community complaints were specifically part of lease discussions between Pioneer and the Robinson Entities in 2002.[28] Despite knowledge of the condition of the Waimea fields and community complaints, the Robinson Entities leased additional fields with Pioneer for more acreage in 2002, 2005, and ultimately in 2010.[29]

Accordingly, because the Robinson Entities' renewed and expanded lease operations with knowledge that dust problems were interfering with the use and enjoyment of property in Waimea, Plaintiffs are entitled to proceed beyond the threshold of 12(b)(6) to establish their claims for negligence (Claim 1 & 2), trespass (Claim 4), and nuisance (Claim 5).

### 3. The Hawaii Right to Farm Act Does Not Bar Plaintiffs' Claim.

The Hawaii Right to Farm Act does not change this conclusion. While Defendants claim the Hawaii Right to Farm Act is a barrier to Plaintiffs' claims. It is not. Defendants argue that "knowing that offsite impacts [are] inevitable is different from knowing that the tenant would engage in allegedly tortious activities."[30] Even if the Robinson Entities knew "offsite impacts were inevitable," the Robinson Entities maintain they could not have known Pioneer would not follow

---

[27] *Id.*

[28] TAC ¶135(d).

[29] TAC ¶33-34.

[30] Motion at 13.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

"generally accepted agricultural and management practices" ("GAAMP").[31] To begin, this claim is not wholly accurate. As Comment i to Restatement §837 explains:

> "[u]nless the activity is such that it will necessarily involve a private or public nuisance, the lessor's conduct in consenting to it is not a basis for subjecting him to liability… When, however, the activity is such that it will necessarily involve an unreasonable interference with the use and enjoyment of another's land or with the rights of the public no matter how it is carried on, the lessor **is responsible for the interference if he should have known of its harmful nature when he consented to it**."[32]

Comment i therefore makes clear that leasing land when one knows, or should know, that "offsite impacts are inevitable" typically means the landlord *is responsible*. This conclusion, however, is not necessarily what happens with farming because the Hawaii Right to Farm Act allows farming to create some types of nuisances so long as the "farmer" follows GAAMP.[33] This is the difference between dust from a farming operation and dust from a construction site as argued by Plaintiffs during this Court's prior hearing.[34]

In construction, dust equals nuisance. But in the context of farming, Plaintiffs agree with Defendants that dust or odors does <u>not</u> equal nuisance.[35] Instead, the Hawaii legislature has placed an additional burden upon Plaintiffs, which creates a "rebuttable presumption that a farming operation does not constitute a nuisance" when the operation is conducted in a manner consistent with GAAMP.[36] Seeing dust and smelling odors does not indicate a tort until one knows or should

---

[31] *Id.*

[32] Restatement (Second) of Torts, §837, cmt. i (emphasis added).

[33] HAW. R. STAT. 165-4.

[34] *See* April 1, 2013, Hearing Transcript for Defendants' Motion to Dismiss (Doc. # 339-2) ("Transcript") at 40:5-13 ("THE COURT:  I think the closer analogy is these construction dust cases.").

[35] Motion 14; *see also* Exhibit A to Motion, April 1, 2013, Hrg. Tr. at 30:18-24 ("Farming does involve noise and dirt and things like that. That's not actionable by itself.")

[36] HAW. R. STAT. §165-4.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

know the agricultural operation is not following "generally accepted agricultural and management practices." Stated differently, knowledge of damage (i.e., dust) is not the same as knowledge of the negligent act (failure to follow GAAMP). Further, the Hawaii Right to Farm Act does not define, no doubt because the definition of "farming operation" is broad and the practice of farming is local.[37] GAAMP for Kauai may differ for Oahu, which may differ from GAAMP on the mainland; and GAAMP for roadside vegetable stands differ from aquaculture, which differ from GMO Test Fields.[38] Therefore, simply seeing dust or smelling odors does not equal knowledge of negligence unless one has some idea of appropriate GAAMP for that specific kind of farming.

What makes the Robinson Entities' knowledge of Pioneer's fields different from Waimea residents is that the Robinson Entities: possessed specialized knowledge of farming and field conditions at Waimea,[39] knowledge of appropriate GAAMP to avoid offsite dust impacts,[40] were aware of dust problems and Waimea complaints from the community in 2000 and lease negotiations in 2002,[41] were able to observe Pioneer's operations from immediately adjacent fields,[42] and contributed to the dust problem by using the same roads.[43] Further, Pioneer specifically consulted with the Robinson Entities and entered various partnerships and leases with Pioneer to address erosion and dust problems.[44] In fact, Pioneer specifically consulted with the Robinson Entities about dust problems and community relations and solicited the Robinson

---

[37] HAW. R. STAT. §165-2.

[38] HAW. R. STAT. §165-4.

[39] TAC ¶ 30-34, 43.

[40] TAC ¶33.

[41] TAC ¶33-34, 135(d).

[42] TAC ¶135(e).

[43] TAC ¶33, 135(e).

[44] TAC ¶33, 135(g).

Entities for knowledge and equipment on how to address these issues.[45]  Finally, the Robinson Entities are different because they possessed an independent obligation under Kauai Ordinance 808 to make sure a grading permit or conservation plan was in place *before* commencing operations and to implement best management practices on their property.[46] Stated differently, unlike Waimea Residents, the Robinson Entities knew what GAAMP were appropriate for their Waimea fields and knew or should have known that Pioneer's operations were causing a nuisance.

The Hawaii Farm Act therefore does not immunize the Robinson Entities because the Robinson Entities not only had reason to know, but actually knew, Pioneer's Waimea operations were causing a nuisance because Pioneer consulted with the Robinson Entities about the problem, community complaints and relations, and potential remedies. Despite this knowledge, the Robinson Entities renewed and enlarged its Waimea leases with Pioneer and even allowed them to begin operations on the Robinson Entities' fields *before* the 2010 lease was finalized.[47] Therefore, the Robinson Entities' motion to dismiss must be dismissed because it does not "appear to a certainty under existing that no relief can be granted under any sort of facts that might be proved in support of plaintiffs' claims."[48]

### 4. Ordinance 808 is directly relevant to whether Defendants followed GAAMP.

Defendants attack that the TAC "devotes inordinate space to discussing Kauai Ordinance 808" ignores the importance and relevance of Ordinance 808 to this case. Repeatedly, Defendants

---

[45] TAC ¶135(g).

[46] TAC ¶ 59-73, 135(h).

[47] TAC ¶135(k).

[48] *Smallwood,* 730 F.Supp. 2d as 1220-21 (quoting *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.) *cert. denied*, 441 U.S.965, 99 S.Ct. 2416 (1979).

Page 13

argue Ordinance 808 is irrelevant because the Hawaii Right to Farm Act allows them to pollute.

For example, Defendants previously stated:

> [W]e note that is the Hawaii Right to Farm Act and the Restatement (Second) of Torts that govern the claim alleged. Plaintiffs' allegations that the Robinson Defendants violated a county permitting ordinance [i.e. Ordinance 808] do not change the legal framework for assessing whether a duty exists. It is the courts of Hawaii, not the County of Kauai, that say what state law is.[49]

Defendants' commentary insults Kauai residents and demonstrates unfamiliarity with Hawaii law.

First, the County of Kauai is vested with full authority to establish ordinances to protect the health, life, and property of residents from public nuisances like dust and odors.

As HRS 46-1.5(13) provides, "[e]**ach county shall have the power to enact ordinances deemed necessary to protect health, life, and property**, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute where the statute does not disclose an express or implied intent that the statute shall be exclusive or uniform throughout the State."[50]  Meanwhile, HRS § 46-17 mandates that "[a]ny provision of law to the contrary notwithstanding, **the council of any county may adopt and provide for the enforcement of ordinances regulating or prohibiting noise, smoke, dust, vibration, or odors which constitute a public nuisance**. No such ordinance shall be held invalid on the ground that it covers any subject or matter embraced within any statute or rule of the State; **provided that in any case of conflict between a statute or rule and an ordinance, the law affording the most protection to the public shall apply**."[51] The County of

---

[49] Motion to Dismiss (140-1) at 15.

[50] HAW. R. STAT. §46-1.5 (emphasis added).

[51] HAW. R. STAT. § 46-17 (emphasis added).

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Kauai therefore has full authority as granted by the Hawai'i legislature to make the laws regulating nuisances like dust on Kauai.

Ordinance 808 is an environmental soil conservation ordinance in Kauai and its express purpose is "**to safeguard** the public health, safety and welfare; **to protect property;** [and] to control soil erosion and sedimentation by setting standards for grading, grubbing, and stockpiling" operations on Kauai.[52]  Kauai Ordinance 808 defines "grubbing" to include any act – such as plowing and agricultural fieldwork – that removes vegetation from the land;[53] and it mandates that <u>all</u> grading, grubbing, and stockpiling activity "shall incorporate Best Management Practices ("BMPs") to the maximum extent practicable to prevent damage by sedimentation to streams, watercourses, natural areas, **and the property of others**."[54] BMPs are specific conservation practices to prevent the discharge of pollutants like dust and fumes to the maximum extent practicable.[55]

Ordinance 808 therefore expressly mandates that BMPs be implemented to the maximum extent practicable to prevent harm to the property, health, and welfare of others from pollutants like dust and pesticides. Importantly, Ordinance 808 requires it "**shall be the permittee's *and* the property owner's responsibility to ensure that the BMPs are satisfactorily implemented.**"[56] Further, Ordinance 808 expressly states that "[u]nless excluded under Section 22-7.6 [i.e. an Agricultural Exemption], **no grading, grubbing, or stockpiling shall be commenced or performed without [grading permit as prescribed in this Article.]**"

---

[52] *See* Kauai County Revised Code of Ordinance 808, §22-7.1 Purpose and Scope (emphasis added).
[53] *Id.* at ¶53, §22-7.4 Definitions.
[54] *Id.* at ¶55, §22-7.5 Minimum Best Management Practices (emphasis added).
[55] *Id.* at ¶56, §22-7.4, Definitions, "Best Management Practices."
[56] *Id.* at ¶59, §22.7.5 (emphasis added).

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Under the Hawaii Right to Farm Act, agricultural operations must follow GAAMP. Ordinance 808 is therefore directly relevant to what GAAMP are on Kauai when it comes to dust, pesticides, and farming and Defendants' failure to follow Ordinance 808 is a primary reason, though not the only reason, why the Hawaii Right to Farm Act does not protect Defendants' operations. Defendants cannot rationally argue it is a "generally accepted agricultural practice" to not follow the law. Thus, on Kauai, Ordinance 808's requirements are directly relevant to what GAAMP are for agriculture, dust, and pesticides. The Hawaii Right to Farm Act does not contradict Kauai Ordinance 808 and Kauai Ordinance 808 is not "irrelevant" as Defendants repeatedly claim. Rather, State and federal laws, local practice, and ordinances like Ordinance 808 define what GAAMP are on Kauai.

Here, under Ordinance 808, the Robinson Family Partners were responsible to actively implement best management practices on their Waimea fields to safeguard public heath and the property of others. While this may be "more protective of the public" for property owners leasing to farming operations elsewhere, HRS § 46-17 makes clear that counties have full authority to make more restrictive ordinances regulating nuisances likes dust and pesticides.[57]

Further, the TAC's emphasis upon Kauai Ordinance 808 is well placed because, as this Court has emphasized, Plaintiffs "may use evidence of the alleged violations of the Hawaii Pesticides Law, the Hawaii Air Pollution Air Control Act, **and Ordinance 808 to support their remaining negligence claims**."[58] Just as the violation of Ordinance 808 is relevant to negligence claims against Pioneer, the violation of Ordinance 808 is relevant to the negligence/nuisance/trespass claims against the Robinson Entities to show they "should have

---

[57] HAW. R. STAT. § 46-17 (emphasis added).

[58] Order at 40.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

known" of the conditions created by Pioneer because the Robinson Entities were supposed to make sure BMPS were actively implemented on their Waimea fields.

Accordingly, because Defendants' violation of Kauai Ordinance 808 is relevant to both Defendants' failure to follow GAAMP on Kauai and Defendants' negligence, Ordinance 808 is not "irrelevant" and Plaintiffs respectfully request this Court to deny the motion to dismiss.

**5.   The Hawaii Constitution provides a private right of action for Waimea Plaintiffs.**

Defendants' assertion that "this Court has ruled that no private right of action exists against third parties under Ordinance 808, the Hawaii Pesticide Law, or the Hawaii Air Pollution Control Act" is also misguided. First, this Court's Order actually states "the Hawaii Pesticides Law and the Hawaii Air Pollution Control Act do not create a private right of action to enforce this statute." This does not mean, however, that no private right action exists. For Defendants to urge this Court to find otherwise is plain error. The private right of action for Plaintiffs is not found within these statutes, *it is found within the Hawaii Constitution*.

The Hawaii Constitution provides a private right of action to enforce laws that are related to environmental quality.[59] Specifically, the Hawaii Constitution provides every "person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources."[60] "*Any person* may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by

---

[59] TAC ¶121, citing 1986 Haw. Sess. Laws Act 80, 1 at 104 ("The legislature finds that article XI, section 9, of the Constitution of the State of Hawaii **has given the public standing to use the courts to enforce laws intended to protect the environment.**")(emphasis added).

[60] TAC ¶122, quoting Hawaii Const., art. XI, §9.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

law."[61] The Hawaii Constitution therefore provides the public with standing to enforce laws to protect the environment.[62] As reflected in the report of the Committee on Environment, Agriculture, Conservation and Land during the proceedings of the 1978 Constitutional Convention:

> **Your Committee believes that a clean and healthful environment is an important right of every citizen and that this right deserves constitutional protection.**
> …
> **Your Committee believes that this important right deserves enforcement and has removed the standing to sue barriers, which often delay or frustrate resolutions on the merits of actions or proposals, and provides that individuals may directly sue public and private violators of statutes, ordinances and administrative rules relating to environmental quality.** The proposal adds no new duties but does add potential enforcers. This private enforcement right complements and does not replace or limit existing government enforcement authority.[63]

Kauai Ordinance 808, Hawaii Revised Statute 149A-31, and the Hawaii Air Pollution Control Act all relate to the conservation, protection, and enhancement of the natural resources and environment and fall within the scope of article XI, section 9 of the Hawaii Constitution.[64] Thus, each of these statutes is intended to protect the environment and therefore Waimea residents possess a private right of action to enforce the statute.

Defendants' assertion to the contrary invites this Court to commit reversible error. So far, this Court's Order holds only that these *statutes* do not create a private right of action, but does not address whether the Hawaii Constitution guarantees a private right of action. This is a narrow

---

[61] TAC ¶123; *see County of Hawaii v. Ala Loop Homeowners*, 123 Hawaii 391, 409 (2010).

[62] TAC ¶124, quoting *See, e.g.*, 1986 Haw. Sess. Laws Act 80, 1 at 104 ("The legislature finds that article XI, section 9, of the Constitution of the State of Hawaii **has given the public standing to use the courts to enforce laws intended to protect the environment.**")(emphasis added).

[63] TAC ¶124, quoting Stand. Comm. Rep. No 77, in 1 Proceedings of the Constitutional Convention of 1978, at 689-690 (1980)(emphasis added).

[64] TAC ¶126

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

distinction, granted, but a distinction that avoids the reversible error Defendants urge this Court to make. While Defendants attack Plaintiffs' "stubbornness" and argue, "republishing these allegations cannot change [the Court's ruling]," [65] Plaintiffs believe the Court would prefer to get it right. In Hawaii, a private right of action *does* exist to enforce laws related to environmental quality and pollution and "[a]ny person may enforce this right." Here, Plaintiffs brought this lawsuit to protect their community *and* their environment because rivers, and oceans, and yes, even honeybees – which Defendants repeatedly scoff at – are important to Waimea.

**B. Defendants' "Actionable Damage Period" Argument Fails Because the Running of the Statute of Limitations is a Question of Fact for 200 Plaintiffs.**

Defendants' request for the "actionable damage period" to be limited to two years *with prejudice* for 200 Plaintiffs invites clear error and should be denied by this Court. Whether the statute of limitations has run is an individualized question of fact for the jury. This is particularly true when this case concerns more than 200 Plaintiffs and is not a class. Further, because Plaintiffs specifically allege they did not discover Defendants' negligence until after the March 2011 Notice of Violation of Ordinance 808, Defendants' motion should be denied.[66]

In its prior order, this Court held the 2000 Waimea Petition "demonstrates Plaintiffs' knowledge that Pioneer was using chemicals that, along with dust from Pioneer's operations, were drifting onto Plaintiffs' properties."[67] The Court therefore concluded "Plaintiffs cannot take advantage of the discovery rule's tolling of the statute of limitations because, as shown by the

---

[65] Motion at 16-17. Note that while the SAC cited *County of Hawaii v. Ala Loop Homeowners*, 123 Hawaii 391, 409 (2010), the TAC expands the analysis to avoid the mistake Defendants hope this Court will make.

[66] TAC §83-94.

[67] Order at 50.

Waimea Petition, ***Plaintiffs clearly had knowledge that Pioneer's actions were affecting the community***."[68]

In addition to this finding, the Court also state that "for more than a decade, Plaintiffs witnessed the allegedly tortious acts and Pioneer's failure to mitigate the harm…Plaintiffs also cannot claim that Pioneer's October 2000 Response Letter or the December 2011 Letter concealed facts regarding the cause of the harm."[69] Therefore, the Court "agrees with Defendants that the allegations in the Second Amended Complaint show that Plaintiffs were aware immediately after both responses that Pioneer's farming practices were the cause of the migration of dust and pesticides and that Pioneer failed to take sufficient steps to mitigate the allegedly tortious condition."[70] Finally, this Court "finds that addressing reasonable diligence is unnecessary because the 2000 Waimea Petition explicitly referenced pesticides and fertilizers as possible harmful agents in the air."[71]

But as Defendants acknowledge, "[e]ven had there been multiple complaints about dust from neighbors living downwind of the a farm on southwest Kauai, such would not have signaled that Pioneer had engaged in nuisance behavior (or "unlawful practices); indeed the Hawaii Right to Farm Act presumes the opposite."[72] Plaintiffs couldn't say it better themselves.

Simply because <u>some</u> Plaintiffs were upset about dust and potential pesticides in 2000 to sign a petition to local agricultural growers does not mean all Plaintiffs had discovered, or through the use of reasonable diligence should have discovered, that Defendants' negligence was

---

[68] Order at 51 (emphasis added).

[69] Order at 51.

[70] Order at 52.

[71] Order at 52.

[72] Motion at 15-16.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

causing the problem.[73] Not every Plaintiff lived in Waimea when the 2000 Petition was signed. Not every Plaintiff signed the 2000 Petition. Not every Plaintiff was even aware of the 2000 Petition. Rather, the 2000 Petition was sent by "a number of residents from Waimea."[74] Small "r."[75] As the TAC explains, the 2000 Waimea Petition supports the "*Historic Knowledge and Disregard of Waimea's Concerns by Defendants*,"[76] it does not mean every Plaintiff signed the petition or had knowledge of the petition. As Defendants are fond of pointing out, this is not a class action. Therefore, a finding of fact *with prejudice* that all 200 Plaintiffs knew of should have known of Defendants' negligence in 2000 is simply inappropriate and Defendants' request for this Court to commit reversible error should be refused.

Similarly, this Court's finding that "Plaintiffs were aware immediately after both responses that Pioneer's farming practices were the cause of the migration of dust and pesticides and that Pioneer failed to take sufficient steps to mitigate the allegedly tortious condition"[77] conflicts with the allegations of both the second and third amended complaints. None of the paragraphs cited by Defendants (SAC § 17, 41-44, 47-49, 67, 75, 89, 130), which this Court's order relies upon, alleges or establishes that Plaintiffs were "immediately aware" that Pioneer's "negligent farming practices were the cause of the dust and pesticides" as assumed by the Court's order.

---

[73] AOAO *Newtown Meadows v. Venture 15*, 115 Haw. 232 (2007), quoting *Yamaguchi v. Queen's Med. Ctr.,* 65 Haw. 84, 90 (Haw. 1982)(Statute of limitation under HRS 657-7 begins to run "the moment plaintiff **discovers or should have discovered** the negligent act, the damage, and the causal connection between the former and the latter.")(emphasis added)

[74] TAC ¶¶47-49.

[75] TAC ¶47 ("**A number of residents** from Waimea attempted to bring their concerns over the drift of fugitive dust and dangerous pesticides into the Waimea community to the attention of local growers, including Pioneer and the Robinson Entities, in 2000.")(emphasis added).

[76] TAC ¶51.

[77] Order at 52.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Such findings of fact are not permitted under Rule 12.[78] As explained by the TAC, Plaintiffs did not discover Pioneer's "negligent farming practices" until much later.[79] When this point was originally raised, however, the Court made the point that Plaintiffs *should have realized* something was wrong because of the unusual amount of dust evidenced by the petition:

> THE COURT: I mean, these people live in an agricultural area, so it's not like they've never seen dust before, been bothered by the sugar cane, like you said.
>
> MR. SMITH: Right.
>
> THE COURT: They obviously, to have a petition like that, they realized, hey, somebody was doing something wrong, and as a result they were getting this hideous dust, they were getting property damage, maybe people were feeling ill, what have you. **So they knew enough. And they knew it came from a general area. Now, they may not have known specifically it was Pioneer, but they knew enough at that point. So then the two years starts running, and they have to do reasonable diligence to say is it Pioneer? Is it Gay & Robinson? What's going on?** And it sounded like they started doing that because this dialogue starts with Pioneer, and then I think your argument is that there should be equitable tolling because they were sort of misdirected as a result of the representations made by Pioneer that, no, everything is fine. We're doing everything possible. It can't – nothing is wrong. And that's sort of another argument.[80]

After a number of Waimea residents sent the Waimea Petition in 2000 and residents continued to see dust, the Court contends that all 200 Plaintiffs *should have done* "reasonable diligence" to find out "What's going on?" Thus, after realizing dust was continuing despite Pioneer's promises, Plaintiffs (at least those Plaintiffs who sent the Petition) *should* have investigated to find out if Pioneer or the Robinson Entities were at fault. Plaintiffs agree these are arguments Defendants are entitled to argue to the jury. But whether a plaintiff, much less 200 Plaintiffs,

---

[78] *Marcus,* 574 F.3d at 1184 ("all allegations of material fact as true and construe them in the light most favorable to the nonmoving party")

[79] TAC §83-94.

[80] Transcript at 47:7-48:2 (emphasis added).

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

"knew or should have known" of Defendants' "negligent farming practices" is a question of fact for the jury. This conclusion is particularly justified when the determination whether Pioneer was, or was not, following "generally accepted farming practices" requires specialized knowledge about what is appropriate for the Waimea fields and Pioneer's agricultural operation.[81]

As the Hawaii Supreme Court expressly recognizes in *Newtown Meadows*, "[c]oncerning the [issue whether the plaintiff] through the use of reasonable diligence, should have discovered [the negligent act, the damage, and the causal connection between the two] that issue is…for the trier of fact."[82] Indeed, as the *Newtown* court recognizes, "[i]**t bears repeating, however, that even where there is no dispute as to the facts, it is usually for the jury to decide whether the conduct in question meets the reasonable man standard.**"[83] This is all the more important in a case like this one, where one complaint speaks for nearly 200 Plaintiffs.

Accordingly, because these questions of fact cannot be answered on behalf of all Plaintiffs on a motion to dismiss under Rule 12(b)(6) where all allegations must be taken as true and in the most favorable light for Plaintiffs, Plaintiffs respectfully request this Court to deny Defendants' motion to dismiss Plaintiffs' claims beyond two years prior to filing the complaint.

---

[81] TAC ¶¶88-89 ("Waimea Residents did not know – nor could they have known – what 'generally accepted agricultural and management practices' were appropriate for a GMO research facility because that *factual* determination requires specific expertise in the agro-sciences.").

[82] *Newtown Meadows*, 115 Haw. at 270; *see Yamaguchi v. Queen's Med. Ctr.*, 65 Haw. 84, 90, 648 P.2d 689, 695 (Haw. 1982)("The sole question remaining relative to the effect of HRS §657-7.3 on appellant's usit was therefore whether the six-year statute had been tolled by a failure to reveal information concerning the alleged negligently administered treatment to appellant. **This question is ordinarily regarded as a question of fact.**").

[83] *Id.*, quoting 10A Wright, Miller & Kane, Federal Practice and Procedure, §2729 (emphasis added).

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

## C.  Defendants Challenge to "Prospective Property Damages" Is Premature.

Defendants' challenge to "prospective damages" should be denied because it is premature. Though Defendants concede this case presents a continuing tort because of its ongoing nature, this does not mean the harm can be "abated at any time."[84] As *Bartleson v. United States*, cited by Defendants, explains, "[w]hether a nuisance will be classified as continuing or permanent depends not on the offending party's interest in continuing the nuisance, **but on the type of harm suffered**."[85] While Defendants have an interest in categorizing their harm as temporary and easily abatable, there is no evidence to support this conclusion. While "noise, vibration, or foul odor" may be classic examples of continuing nuisance, there is no way to tell how lasting the impact is from either Pioneer's dust or pesticides.[86] For example, if Pioneer's pesticides or pesticides have resulted in long-term, chronic impacts, or if Pioneer cannot abate the harm, then limiting the potential remedies available for Plaintiffs at the pleading stage is premature. Further, Rule 54(c) provides a party is entitled to the relief they are entitled to based upon the evidence at trial.[87] Defendants' attempt to strike Plaintiffs' *remedies* before their claims are tried or evidence presented at trial is therefore premature and should be rejected by the Court.

## D.  The Hawaii Right to Farm Act Does Not Preclude Strict Liability.

Pioneer's claim that the Hawaii Right to Farm Act bars Plaintiffs' strict liability claims for Pioneer's use of pesticides is also wrong. The essence of Pioneer's argument is the Hawaii Right to Farm Act protects its use of dangerous pesticides even when such pesticides drift offsite and cause

---

[84] Motion at 24

[85] *Bartleson v. United States*, 96 F.3d 1270, 1274-75 (9th Cir. 1996)(emphasis added).

[86] *Id.* at 1276.

[87] FED. R. CIV. P. 54(c)("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Page 24

harm. Pioneer claims "the Hawaii Right to Farm Act recognizes [that] some level of off-site impacts on neighbors (dust, odors, etc.) is often unavoidable."[88] In other words, Pioneer asserts Hawaii law allows it to use its pesticides even if off-site impacts are "unavoidable." So long as Pioneer follows GAAMP, it believes it is okay if its pesticides drift off-site.

This explains why the drift of pesticides is happening from Pioneer's fields – Pioneer thinks it is okay. Unfortunately, Pioneer's argument ignores Hawaii law. If the Hawaii Right to Farm Act actually allowed the off-site drift of pesticides – which it does not – it would be preempted under federal law because off-site drift is prohibited under the Federal Insecticide Fungicide Rodenticide Act (FIFRA), which regulates the use, sale, and labeling of pesticides.[89] Under FIFRA, a State "may regulate the sale or use of any federally registered pesticide or device in the State, **but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA]**."[90] Thus, FIFRA preempts any state regulation that does not follow the federal requirements.

FIFRA mandates that every pesticide applicator <u>must follow the label.</u> This is not discretionary. Every pesticide label therefore clearly states "[i]t is a violation of Federal law to use this product in a manner inconsistent with its labeling."[91] Similarly, Hawaii law adopts federal law and states "[n]o person shall: (1) [u]se any pesticide in a manner inconsistent with its label."[92] There is absolutely no question that violation of a pesticide label is a violation of both federal and

---

[88] Motion at 20.

[89] Federal Insecticide Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §136 *et seq.*

[90] FIFRA, 7 U.S.C. §136(v)(emphasis added).

[91] *See*, e.g., Lorsban 4E Label, attached hereto as **Exhibit 3.** Note that Lorsban 4E is one of the 90+ pesticides used by Pioneer at the Waimea Research Center.

[92] HAW. R. STAT. §149A-31.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

state law. Importantly, virtually every pesticide label expressly prohibits offsite drift of pesticides.

For example, Pioneer's Lorsban 4E pesticide label directs the applicator:

> **Do not apply this product in a way that will contact workers or other persons, either directly or through drift**.
>
> …
>
> **Do not allow spray to drift from the application site and contact people, structures people occupy at any time and the associated property, parks and recreation areas, non-target crops, aquatic and wetland sites, woodlands, pastures, rangelands, or animals.**

Avoiding spray drift at the application site is the responsibility of the applicator.[93]

Pesticide labels are that simple when it comes to drift. Drift is a violation of the label. Any drift. It does not matter how careful an applicator is. It does not matter what their practices are. It does not matter if they intend to avoid drift. Pioneer's claim that "under Plaintiffs' strict liability claim, the farmer could be strictly liable despite using generally accepted practices,"[94] is <u>exactly</u> what the label, federal law, and state law require. Again, the label is crystal clear: **Do not allow spray to drift from the application site and contact people or structures people occupy at any time.** Of course, the reason for this outright prohibition of drift is clear. Pesticides are dangerous for humans and the environment. Because of these "Inherent Risks for Use," the pesticides used by Pioneer make clear it is "impossible to eliminate all risks associated with use of this product.[95]

There is therefore no basis for Pioneer's claim that the Hawaii Right to Farm Act allows it to violate federal and state law. The Hawaii Right to Farm Act *requires* agricultural operations to follow GAAMP and it is irrational to argue that following "generally acceptable agricultural practices" means one does not have to follow state and federal pesticide laws. Indeed, the Hawaii

---

[93] Ex. 3, Lorsban 4E Label (emphasis added).
[94] Motion at 20.
[95] Ex 3. Lorsban 4E Label.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

Right to Farm Act makes clear that "nothing in this chapter shall in any way restrict or impede the authority of the State to protect the public health, safety, and welfare."[96] Thus, even the Hawaii Right to Farm Act makes clear that a "farmer" cannot use the Act to violate state and federal law.

Accordingly, because "Hawaii law recognizes the doctrine of strict liability for ultra-hazardous activities,[97] Plaintiffs' TAC alleges a valid claim for strict liability, and the Hawaii Right to Farm Act does not sanction the misuse of pesticides in violation of state and federal law, Plaintiffs respectfully request this Court to deny Pioneer's motion to dismiss.

### E. Under the Hawaii Discovery Rule, the Statute of Limitations for Fraud Runs From Discovery of the Fraud.

Finally, Pioneer challenges Plaintiffs' claim for fraud arguing that its misrepresentations fall outside the 6-year statute of limitations and that Plaintiffs have failed to allege a prima facie claim for fraud because they have not alleged that Pioneer possessed an "intent to defraud" at the time it made representations to the community.[98] Specifically, Pioneer argues "the sole 'representation' identified in the TAC that is not time-barred under the Court's previous order is a December 2011 letter from Pioneer to 'Neighbors,'"[99] which is based on this Court's order that "the portions of Plaintiffs' misrepresentation claims based on the October 2000 Response Letter and 2002 Conservation Plan are time-barred."[100]

---

[96] HAW. R. STAT. §165-2.

[97] Order at 53, citing *Akee v. Dow Chem. Co.*, 293 F. Supp. 2d 1140, 1143 (D. Hawaii 2002)k

[98] Motion at 18.

[99] *Id.*

[100] Order at 56.

Lynch Hopper Salzano & Smith
Law Offices of Gerard Jervis

This argument fails, however, because the statute of limitations for misrepresentation and fraud, like negligence, runs from when a plaintiff knows or should have known of the fraud. As the Supreme Court of Hawaii explained in *Thomas v. Kidani*:

> Under Hawaii's **discovery** rule, the **statute** of **limitations** begins to **run** when the plaintiff "discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." Our courts have employed this rule in several contexts. The cases Thomas cites do not prove that cases involving **fraud** disregard this rule.[101]

Here, Plaintiffs did not discover Pioneer's fraud until 2011.[102] Under Rule 12(b)(6), these allegations must be taken as true. While this Court's prior order held Paragraph 40-41 of the Second Amended Complaint "clearly indicates Plaintiffs' knowledge that Defendants' conduct, which caused the persistent drift of fugitive dust and dangerous pesticides into the Waimea community, has been a daily, ongoing issue for the last decade," these paragraphs do not stand for that finding.[103] To the contrary, these paragraphs only establish that dust and pesticides continued to migrate into the community and that various Waimea residents, small "r," attempted to bring their concerns about dust and pesticides to Pioneer's attention. Concerns about dust and pesticides, do <u>not</u> establish that all 200 Plaintiffs knew or should have known Pioneer was not implementing its promises or carrying out its 2002 Conservation Plan. Plaintiffs are entitled to their factual allegations to be taken as true and to be construed in the light most favorable to their claims. Whether Plaintiffs "should have discovered" Pioneer's misrepresentation because they continued to be impacted by dust and pesticides is a question of fact for the jury.

---

[101] *Thomas v. Kidani*, 126 Haw. 125, 132, 267 P.3d 1230 (Haw. 2011).

[102] TAC ¶187

[103] Order at 58.

Page 28

## IV.

## CONCLUSION

Pages of negative color commentary and arguments that invite plain error are no basis for dismissal under Rule 12(b)(6). Contrary to Defendants' motion, the TAC alleges facts that establish the Robinson Entities knew or should have known of the nuisance created by Pioneer and Waimea complaints about Pioneer's fields. The TAC also plainly alleges that despite ongoing dust problems, Plaintiffs were not aware of Defendants' negligent conduct or misrepresentations until after the 2011 Notice of Violation. Under Rule 12(b)(6), these allegations must be taken as true and placed in the light most favorable for Plaintiffs. Finally, because Plaintiffs are entitled to all remedies they are entitled to under FRCP 54(b) and no evidence yet establishes whether the harm from Defendants' tortious conduct is abatable, Defendants attack on "prospective damages" is premature. Accordingly, Defendants' motion to dismiss: a) negligence, nuisance, and trespass claims against the Robinson Entities; b) fraud and strict liability claims against Pioneer; and c) "prospective damages" against all Defendants, must be denied.

DATED: Kailua, Hawaii, October 25, 2013.

LYNCH, HOPPER, SALZANO & SMITH
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734