IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA, et al., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>PIONEER HI-BRED INTERNATIONAL, INC., a DuPont Business and Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10,<br><br>          Defendants.<br>_____<br>JEFFREY CASEY, et al., on behalf themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>PIONEER HI-BRED INTERNATIONAL, INC., et al.,<br><br>          Defendants.<br>_____ | CIVIL NO. 12-00231 LEK-BMK<br>CIVIL NO. 12-00665 LEK-BMK |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS THIRD AMENDED COMPLAINT (RULE 12(B)(6))**

On September, 23, 2013, Defendants Pioneer Hi-Bred

International, Inc. ("Pioneer"), Gay & Robinson, Inc., and

Robinson Family Partners[1] (all collectively "Defendants") filed their Motion to Dismiss Third Amended Complaint (Rule 12(b)(6)) ("Motion").  [Dkt. no. 339.]  Plaintiffs Jim Aana, et al., on behalf of themselves and all others similarly situated (collectively, "Plaintiffs")[2] filed their memorandum in opposition on October 25, 2013, and Defendants filed their reply on November 1, 2013.  [Dkt. nos. 351, 354.]  On November 8, 2013, this Court issued an entering order finding this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  [Dkt. no. 356.] After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

The relevant factual and procedural background of this case is set forth in this Court's August 9, 2013 Order Granting in Part and Denying in Part Defendants Gay & Robinson, Inc. and

---

[1] This Court will refer to Gay & Robinson, Inc. and Robinson Family Partners collectively as "the Robinson Defendants."

[2] Insofar as the instant case and Casey v. Pioneer Hi-Bred International, Inc., CV 12-00655 LEK-BMK, have been consolidated, this Court will refer to the plaintiffs in both cases collectively as "Plaintiffs."  When necessary, this Court will distinguish between "the Aana Plaintiffs" and "the Casey Plaintiffs."  The defendants are the same in both cases.

Robinson Family Partners' Motion to Dismiss Plaintiffs' Second Amended Complaint under Fed. R. Civ. P. 12(b)(6); and Granting in Part and Denying Part Defendants Gay & Robinson, Inc., Robinson Family Partners, and Pioneer Hi-Bred International, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("8/9/13 Order"). [Dkt. no. 224.[3]]

The Aana Plaintiffs filed their Second Amended Complaint (Property Related Claims) ("Second Amended Complaint") on February 6, 2013.  [Dkt. no. 128.]  The Second Amended Complaint alleged the following claims: (1) negligence against all Defendants for failure to use due care (Count I); (2) negligence against all Defendants for failure to investigate and warn (Count II); (3) negligence per se against all Defendants (Count III); (4) strict liability against Pioneer (Count IV); (5) trespass against all Defendants (Count V); (6) nuisance against all Defendants (Count VI); (7) negligent and intentional misrepresentation against all Defendants (Count VII); and (8) landlord liability for the acts of a tenant against the Robinson Defendants (Count VIII).[4]

---

[3] The 8/9/13 Order is available at 2013 WL 4047110.

[4] The Casey Amended Complaint alleged the same claims as the Aana Second Amended Complaint.  [Casey, Notice of Removal of Action (28 U.S.C. Section 1441), filed 12/7/12 (dkt. no. 1), Exh. C (Amended Complaint).]

3

In the 8/9/13 Order, this Court:

•dismissed Counts III and VIII with prejudice;

•dismissed Counts I, II, V, VI, and VII without prejudice as to the Robinson Defendants;

•dismissed the portions of Counts I, II, IV, V, and VI accruing prior to December 13, 2009 without prejudice;

•dismissed the portions of Count VII based upon Pioneer's October 31, 2000 letter, in which Pioneer, in response to a petition by Waimea residents, affirmed its commitment to protecting the environment and the Waimea community ("October 2000 Response Letter") and the conservation plan that Pioneer submitted with its application for an agricultural exemption under Kauai Ordinance 808 ("2002 Conservation Plan" and "Ordinance 808"); and

•denied Defendants' motion to dismiss the Second Amended Complaint as to the portion of Count VII based upon the letter dated December 2011 that Pioneer issued in response to complaints from the Waimea community ("December 2011 Letter").

2013 WL 4047110, at *25.

Plaintiffs filed their Third Amended Complaint (Property Related Claims) ("Third Amended Complaint") on September 6, 2013. [Dkt. no. 331.] Plaintiffs added factual allegations regarding the history of the Robinson Defendants' lease with Pioneer. [Id. at ¶¶ 12-16.] Plaintiffs also expanded the allegations about: the Robinson Defendants' historical sugar farming on the property they later leased to Pioneer;[5] how the

_____

[5] According to the Third Amended Complaint, "[i]n August 1998, Pioneer leased approximately 175 acres of former sugar cane fields from the Robinson [Defendants]," and Pioneer used the fields "to conduct open air testing of genetically modified ('GMO') crops as part of Pioneer's Waimea Research Center."
(continued...)

4

location of the fields should make the risks of drift and run-off readily apparent; [id. at ¶¶ 18-24;] the Robinson Defendants' knowledge about the risk of erosion and drift based upon their historical farming on the property; [id. at ¶¶ 30-32;] the extension of additional leases in spite of the Robinson Defendants' knowledge about the erosion and drift problems on the property; [id. at ¶¶ 33-34;] the recognition of the dangers of pesticides and dust drift from the property; [id. at ¶¶ 35-46;] Defendants' knowledge of the concerns from the Waimea community and Defendants' reaction to those concerns; [id. at ¶¶ 47-58;] Defendants' failure to implement best management practices and other conservation measures, in violation of Ordinance 808; [id. at ¶¶ 73-74;] Plaintiffs' discovery in 2011 of Defendants' failure to implement best management practices and other conservation measures, including the grubbing of additional acreage without a permit or exemption; [id. at ¶¶ 83-94;] Plaintiffs' discovery, after they filed these actions, of "repeated air quality complaints against Pioneer from the inception of Pioneer's Waimea operations to the present[;]" [id.

---

[5](...continued)
[Third Amended Complaint at ¶¶ 12-13.]  Pioneer subsequently leased additional fields from the Robinson Defendants for the Waimea Research Center, culminating in the 2010 lease of an additional 1100 acres, including fields previously subject to temporary leases.  [Id. at ¶¶ 14-15.]  Plaintiffs refer to "[a]ll fields leased by Pioneer from the Robinson [Defendants] related to the Waimea Research Center" as "the GMO Test Fields."  [Id. at ¶ 16.]

at ¶ 107;] and Defendants' alleged violation of the Hawai`i Air Pollution Control Act because their conduct "has resulted in the intentional generation of fugitive dust without consideration of the impact to Waimea Residents" [id. at ¶ 109].

The Third Amended Complaint alleges the following claims: (1) negligence against all Defendants for failure to use due care (Amended Count I); (2) negligence against all Defendants for failure to investigate and warn (Amended Count II); (3) strict liability against Pioneer (Amended Count III); (4) trespass against all Defendants (Amended Count IV); (5) nuisance against all Defendants (Amended Count V); and (6) negligent and intentional misrepresentation against Pioneer (Amended Count VI).

Plaintiffs pray for the following relief: general, special, and consequential damages; diminution of value of the residents' property due to the fugitive dust and the effects of dangerous pesticides; the cost to remediate the properties; preliminary and permanent injunctive relief; punitive damages; attorneys' fees; prejudgment interest; the tolling of the statute of limitations; and any other appropriate relief. [Id. at pgs. 38-39.]

In the instant Motion, Defendants seek: dismissal of Amended Counts I, II, IV, and V with prejudice against the Robinson Defendants; dismissal of Amended Counts III and VI with

prejudice against Pioneer; limitation of Plaintiffs' potential recoveries for the remaining portions of Amended Counts I, II, and IV to the two-year-period before the filing of these actions; and the dismissal of Plaintiffs' claim for "diminution in value" damages. [Motion at 1-2.]

## DISCUSSION

## I.   Claims Against the Robinson Defendants

Defendants argue that Plaintiffs have merely shuffled their factual allegations regarding the Robinson Defendants, and that the basis of Plaintiffs' claims against the Robinson Defendants remains the same as the allegations which this Court rejected in the 8/9/13 Order.  In the 8/9/13 Order, this Court ruled that the Second Amended Complaint did not contain sufficient factual allegations to support Plaintiffs' claims of negligence, failure to warn, trespass, and nuisance against the Robinson Defendants.  Specifically, this Court stated:

> in order to establish their negligence, trespass, or common law nuisance claims, Plaintiffs will have to prove that Pioneer failed to operate the GMO Test Fields "in a manner consistent with generally accepted agricultural and management practices."  In order to establish the Robinson Defendants' liability for those claims, Plaintiffs will have to prove that, when they entered into the lease with Pioneer, the Robinson Defendants: (1) consented to Pioneer's unlawful farming practices or knew, or had reason to know, Pioneer would carry on unlawful practices; and (2) knew or should have known that Pioneer's activities would necessarily involve or were already causing a nuisance as defined under the Hawai`i Right to Farm Act.

7

Plaintiffs argue that, even if the Court finds that, at the time of letting, the Robinson Defendants did not know Pioneer would use the property in an unlawful manner, landlord liability may still arise if the Robinson Defendants learned of the unlawful conduct after entering into the lease with Pioneer, and the Robinson Defendants had the ability to stop the conduct but did nothing.  Even assuming, *arguendo*, that such a claim is actionable, the Court finds that Plaintiffs have failed to allege facts that, if proven, would demonstrate that the Robinson Defendants were aware, or should have been aware, of the complaints regarding Pioneer's farming operations.

2013 WL 4047110, at *18 (footnote and citation omitted).

In the 8/9/13 Order, this Court ruled that Plaintiffs' allegations in the Second Amended Complaint were insufficient to plead plausible claims against the Robinson Defendants based on landlord-tenant liability.  The Second Amended Complaint alleged that the Robinson Defendants consented to Pioneer's allegedly unlawful farming practices because they knew, or had reason to know, that Pioneer's farming practices would result in a nuisance, as the term is defined in the Hawai`i Right to Farm Act ("Right to Farm Act"), Haw. Rev. Stat. § 165-1 *et seq*.  The Second Amended Complaint alleged that the Robinson Defendants had, or should have had, such knowledge in light of "the Robinson Entities' historic farming of sugar cane near Waimea," [Second Amended Complaint at ¶ 13,] and in light of the geography and weather conditions in the area [id. at ¶¶ 14-15].  In the Third Amended Complaint, Plaintiffs have expanded upon the allegations

8

regarding the Robinson Defendants' historical farming and about

the inherent conditions of the area.  [Third Amended Complaint at

¶¶ 18-22, 28.]  Plaintiffs also added the following allegations:

> 31)  For example, before leasing to Pioneer, the
> Robinson [Defendants] possessed actual
> knowledge of complaints from the town of
> Waimea related to agricultural dust drifting
> into Waimea and paid cleaning costs for homes
> in Waimea on more than one occasion because
> of dust from the GMO Test Fields later leased
> to Pioneer.

> 32)  Despite actual knowledge of the risk of
> erosion and drift of pollutants into the
> Waimea community from the GMO Test Fields
> before their lease to Pioneer in 1998, the
> Robinson [Defendants] entered the 1998 Lease
> with Pioneer and allowed Pioneer to commence
> operations without obtaining necessary
> grubbing permits or an agricultural exemption
> by actively implementing a Conservation Plan
> in violation of Kauai law.

> 33)  After the 1998 Lease, the Robinson
> [Defendants] were specifically made aware of
> ongoing erosion and dust problems associated
> with the GMO Test Fields and related roads as
> early as 2002 through lease discussions with
> Pioneer and through the complaint of at least
> one resident from Waimea.  Indeed, after
> learning of the ongoing erosion and dust
> problems on the GMO Test Fields, the Robinson
> [Defendants] leased personnel and equipment
> to Pioneer for the specific purpose of
> erosion control on the GMO Test Fields.

> 34)  Despite actual knowledge of the erosion
> problems on the GMO Test Fields after the
> 1998 Lease to Pioneer, the Robinson
> [Defendants] entered into additional leases
> with Pioneer for acreage in 2002, 2005, and
> ultimately entered the 2010 Lease for 1100
> acres and again allowed Pioneer to commence
> grubbing operations without obtaining
> grubbing permits or an agricultural exemption

in blatant violation of Kauai law.

[Id. at pgs. 8-9 (footnote omitted) (emphases in original).]  In support of their allegation that the Robinson Defendants knew, or should have known, about complaints about drift from the GMO Test Fields, Plaintiffs added the allegation that "Waimea Resident Klayton Kubo complained about dust from the GMO Test Fields to Wes Sahara of Gay & Robinson, Inc., in 2000." [Id. at ¶ 48.] Plaintiffs also added the allegation that, when Pioneer "belatedly started implementing insufficient dust and erosion mitigation measures to control dust and pesticides in 2010[,]" it acted "with the Robinson [Defendants'] advice, help, and knowledge[.]" [Id. at ¶ 80.]

Even construing the allegations in the Third Amended Complaint in the light most favorable to Plaintiffs, see Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996), none of the additional allegations, if proven, would establish that, before the Robinson Defendants entered into the lease with Pioneer in 1998, they: (1) consented to Pioneer's unlawful farming practices on the property or knew, or had reason to know, Pioneer would carry on unlawful practices on the property; and (2) knew or should have known that Pioneer's activities would necessarily create a nuisance, as defined under the Right to Farm Act.  The only new factual allegations supporting Plaintiffs' claim for landowner liability from the

10

original lease are: the Robinson Defendants' historical farming

in the area; the geographic and weather conditions in the area;

the Robinson Defendants' knowledge that there was some drift into

the Waimea community; and the Robinson Defendants' payment of

clean-up costs for Waimea homes.  This does not rise to the level

of knowledge that Pioneer would conduct unlawful operations on

the property and that those unlawful operations would cause drift

which would necessarily rise to the level of a nuisance, as that

term is defined in the Right to Farm Act.  This Court concludes

that Plaintiffs' claims against the Robinson Defendants in

Amended Counts I, II, IV, and V based on the 1998 lease between

the Robinson Defendants and Pioneer do not state plausible claims

for relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  Further, this Court has previously given Plaintiffs the

opportunity to correct this defect in Plaintiffs' claims, and

Plaintiffs failed to do so.  This Court therefore finds that

further amendment as to the Robinson Defendants' pre-lease

consent and/or knowledge would be futile.  See Johnson v.

American Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987) ("But

courts have discretion to deny leave to amend a complaint for

futility[.]" (citation and quotation marks omitted)).

The Third Amended Complaint also alleges that, after

the Robinson Defendants entered into the initial lease with

Pioneer, they entered into lease extensions for additional terms

and for more acreage.  Plaintiffs allege that the Robinson Defendants are liable for Pioneer's unlawful acts during the terms of those extensions because, when they entered into those agreements, the Robinson Defendants: knew about the erosion and drift problems and knew about complaints from Waimea residents; participated in Pioneer's insufficient attempts to address erosion and drift; and allowed Pioneer to operate even though they knew that Pioneer had not obtained the required permits and exemptions.

As this Court has noted in its previous orders, the applicable landlord-liability rule has its origins in the Restatement (Second) of Torts § 837(1).  8/9/13 Order, 2013 WL 4047110, at *17 (quoting Casey v. Pioneer Hi Bred Int'l, Inc., Civil No. 12-00655 LEK-BMK, 2013 WL 1701873 at *6 (D. Hawai`i Apr. 17, 2013)).  The comments to § 837(1)(a)[6] state, in pertinent part:

> g.  *Lease renewed*.  If at the time that the lessor renews the lease he knows that activities are being carried on or that physical conditions have been created upon the leased land that are causing an unreasonable interference with the use and enjoyment of another's land, he is liable for the continuance of the interference after the renewal.
>
> h.  *Lessor's consent or knowledge*.  The lessor's

---

[6] Restatement (Second) of Torts § 837(1)(a) is the requirement that, "at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on[.]"

consent may be manifested by specific words or by all the circumstances.  By the mere letting, the lessor consents to such activities as are normally incidental to the ordinary or usual use of the premises.  Thus, if he lets land with a brick kiln upon it, he authorizes activities normally incidental to use as a brick kiln; or if he lets land with a dwelling house upon it, he consents to such activities as are normally incidental to use as a dwelling house.  Likewise, if the lessor by the terms of the lease lets the premises for a certain purpose, he consents to activities normally incidental to their use for that purpose. . . .

If the lessor has reason to believe at the time when the lease is made or renewed that the lessee intends to use the land or intends to allow others to use it for a harmful activity, his act of furnishing the place for the activity is sufficient to subject him to liability for harm caused by the activity.  It is not enough that the lessor knows that the land is suitable for the activity or that it may be used for harmful purposes.  The lessor's liability does not extend to activities of the lessee that he neither consents to nor has reason to know are intended at the time he makes the lease.  In respect to other activities of the lessee, the lessor has no duty to stop them, nor is he bound to terminate the lease even though he has a power to do so.

Restatement (Second) of Torts § 837(1)(a) cmts. g, h.

Thus, it is not enough for Plaintiffs to allege that the Robinson Defendants knew there was, or would be, **some** erosion and drift from the GMO Test Fields.  Nor is it enough to allege that the Robinson Defendants knew the erosion and drift **may** rise to the level of a nuisance, as defined in the Right to Farm Act. In order to state plausible claims against the Robinson Defendants, Plaintiffs must allege facts that, if proven, will

13

establish that the Robinson Defendants knew or should have known
that the erosion and drift would necessarily rise to the level of
a nuisance.  For purposes of the instant Motion, this Court takes
as true Plaintiffs' allegation that, when they entered into the
lease extensions, the Robinson Defendants knew that Pioneer was
operating without the required permits and exemptions.
Plaintiffs must also allege facts that, if proven, would
establish that, at the time of the lease extensions, Pioneer's
unpermitted operations were causing or would necessarily cause a
nuisance.

On a motion to dismiss, this Court need only determine
if there are sufficient factual allegations to support a
reasonable inference of liability.  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009).  It is a close question whether the allegations
in the Third Amended Complaint support a reasonable inference
that the Robinson Defendants are liable for Pioneer's allegedly
unlawful farming operations because of the Robinson Defendants'
consent and/or knowledge at the time of the lease extensions.
Plaintiffs allege that, at the time of the lease extensions, the
Robinson Defendants knew and consented to Pioneer's operating
without the required permits and exemptions and that Waimea
residents had already presented complaints to Pioneer and the
Robinson Defendants about erosion and drift from the GMO Test
Fields.  Viewing the allegations in the light most favorable to

14

Plaintiffs, this Court can reasonably infer that, at the time of the lease extensions in 2002, 2005, and 2010, the Robinson Defendants knew that Pioneer's unlawful farming operations were causing, or would necessarily cause, a nuisance.  Thus, Plaintiffs' claims against the Robinson Defendants based upon the lease extensions survive dismissal, to the extent that Plaintiffs' underlying claims against Pioneer are timely.  <u>See</u> <u>infra</u> Section III.B.

This Court GRANTS the Motion as to Plaintiffs' claims against the Robinson Defendants in Amended Counts I, II, IV, and V that allege liability prior to the 2002 lease extension.  Those portions of Amended Counts I, II, IV, and V are DISMISSED WITH PREJUDICE.

## II.  <u>Whether Amended Count III States a Claim</u>

The Motion also asks this Court to dismiss Amended Count III, Plaintiffs' strict liability claim against Pioneer, with prejudice.  As this Court stated in the 8/9/13 Order, "Hawai`i law recognizes the doctrine of strict liability for ultra-hazardous activities."  2013 WL 4047110, at *22 (D. Hawai`i Aug. 9, 2013) (citing <u>Akee v. Dow Chem. Co.</u>, 293 F. Supp. 2d 1140, 1143 (D. Hawai`i 2002) (citing <u>Beckstrom v. Hawaiian Dredging Co.</u>, 42 Haw. 353 (1958)).  The alleged ultra-hazardous activity in Plaintiffs' strict liability claim is "Pioneer's use of inherently dangerous pesticides[.]"  [Third Amended Complaint

at ¶ 155.]  Plaintiffs allege that this is "an abnormally

dangerous activity because Pioneer cannot eliminate the risks

even when it exercises the utmost care." [Id. at ¶ 153.]

Defendants argue that this claim fails as a matter of law because

of the Right to Farm Act.  This Court agrees.

>   The Right to Farm Act states, in pertinent part:

>   No court, official, public servant, or public
>   employee shall declare any farming operation a
>   nuisance for any reason if the farming operation
>   has been conducted in a manner consistent with
>   generally accepted agricultural and management
>   practices.  There shall be a rebuttable
>   presumption that a farming operation does not
>   constitute a nuisance.

Haw. Rev. Stat. § 165-4.  Further, a "farming operation"

includes, but is not limited to, "[t]he application of chemical

fertilizers, conditioners, insecticides, pesticides, and

herbicides[.]"  Haw. Rev. Stat. § 165-2(5).

>   Pursuant to the Right to Farm Act, this Court cannot

find Pioneer's use of pesticides in its farming operations to be

a nuisance unless Plaintiffs prove that Pioneer failed to apply

the pesticides "in a manner consistent with generally accepted

agricultural and management practices."  Amended Count III,

however, essentially alleges that Pioneer's use of pesticides is

a nuisance,[7] even when Pioneer "exercises the utmost care."

---

[7] Under the Right to Farm Act, "'[n]uisance' means any
interference with reasonable use and enjoyment of land, including
but not limited to smoke, odors, dust, noise, or vibration;
(continued...)

Plaintiffs argue that this Court should reject Defendants' argument that the Right to Farm Act precludes the strict liability claim because to rule otherwise would constitute a ruling that the Right to Farm Act allows farms to violate state and federal law by disregarding the labels on pesticide products, resulting in off-site-drift of pesticides. [Mem. in Opp. at 25-26 (citing Federal Insecticide Fungicide and Rodenticide Act, 7 U.S.C. § 136, *et seq.*; Haw. Rev. Stat. § 149A-31).] Plaintiffs' argument is misplaced. The Right to Farm Act does not allow farmers to violate pesticide laws and standards with impunity, nor does it interfere with any enforcement mechanisms within applicable pesticide laws. The Right to Farm Act does, however, preclude a plaintiff from arguing that a farmer's use of pesticides is *per se* an ultra-hazardous activity. The alleged failure to comply with pesticide product labels and the alleged violation of state and federal pesticide laws are relevant to Plaintiffs' failure to exercise due care claims. Amended Count III, however, alleges that Pioneer's use of pesticides is *per se* ultra-hazardous, and therefore is *per se* a nuisance. This Court

---

[7](...continued)
provided that nothing in this chapter shall in any way restrict or impede the authority of the State to protect the public health, safety, and welfare." Haw. Rev. Stat. § 165-2. Plaintiffs' Amended Count III meets the requirements of this definition, and is therefore a nuisance claim under the Right to Farm Act, even though Plaintiffs have not titled Amended Count III as a nuisance claim. See id.

therefore finds that Amended Count III fails to state a plausible claim for relief because it is precluded by the Right to Farm Act.  See Twombly, 550 U.S. at 570.  Further, this Court finds that Plaintiffs cannot cure the defects in this claim by amendment.  See Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) ("Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (citation and quotation marks omitted)).  This Court GRANTS Defendants' Motion as to Amended Count III, which is DISMISSED WITH PREJUDICE.

## III. Limitations Periods for Remaining Claims

### A.   Fraudulent Concealment

In response to the motions to dismiss the Second Amended Complaint, Plaintiffs argued that the statute of limitations as to each of their claims should be tolled because of fraudulent concealment.  This Court, however, found that the Second Amended Complaint did not contain factual allegations that, if proven, would establish a basis to toll the applicable statutes of limitations based on fraudulent concealment.  8/9/13 Order, 2013 WL 4047110, at *24.

In the Second Amended Complaint, the failure to use due care claim, the failure to warn claim, the trespass claim, and the nuisance claim each contained a paragraph alleging that "Pioneer has intentionally and fraudulently concealed its conduct

18

from Waimea Residents and the County of Kauai . . . ." [Second Amended Complaint at ¶¶ 107, 116, 158, 169.] The corresponding claims in the Third Amended Complaint (Amended Counts I, II, IV, and V), however, do not contain this allegation. It therefore appears that Plaintiffs have abandoned their fraudulent concealment argument. Assuming, *arguendo*, that Plaintiffs have not abandoned the fraudulent concealment argument, Plaintiffs' base their position on allegations such as:

> when Waimea residents raised complaints about dust and pesticides in 2000, Pioneer claimed it was doing everything possible to keep dust to a minimum, that it was following reasonable agricultural practices, and that the dust was also because of sources of wind-borne dust to the north and east of Pioneer's fields, which Waimea residents relied upon.

[Third Amended Complaint at ¶ 91.] This Court finds that, even if this allegation, and other similar allegations in the Third Amended Complaint, are proven, they are insufficient to establish a basis for tolling the applicable statutes of limitations based on fraudulent concealment. Insofar as Plaintiffs had the opportunity to amend the allegations supporting their fraudulent concealment argument and Plaintiffs failed to plead additional allegations, this Court finds that further amendment on this issue would be futile. See Johnson, 834 F.2d at 724. This Court therefore GRANTS Defendants' Motion insofar as this Court DISMISSES WITH PREJUDICE the portions of Plaintiffs' Third Amended Complaint alleging that the applicable statutes of

19

limitations are tolled based on fraudulent concealment.

**B.  Claims Subject to Haw. Rev. Stat. § 657-7**

Amended Counts I, II, and IV are subject to the two-year statute of limitations set forth in Haw. Rev. Stat. § 657-7. See 8/9/13 Order, 2013 WL 4047110, at *19 ("Negligence claims in Hawai`i are subject to the two-year statute of limitations set forth in Haw. Rev. Stat. § 657-7." (citation omitted)); id. at *22 ("Section 657-7 also applies to Plaintiffs' trespass claim[.]").  This Court also ruled in the 8/9/13 Order that Plaintiffs' nuisance claim (now Amended Count V) is subject to § 657-7.  Id.

This Court also ruled in the 8/9/13 Order that Plaintiffs' negligence claims accrued in 2000, but the continuing tort doctrine applied to, inter alia, Plaintiffs' failure to use due care claim, failure to investigate and warn claim, trespass claim, and nuisance claim.  Id. at *22-23.  Thus, "the actionable time period for these counts is limited to two years before the original complaint was filed on December 13, 2011 for the Aana plaintiffs and May 23, 2012 for the Casey plaintiffs."  Id. at *23.  This Court, however, granted Plaintiffs leave to amend these claims, and Plaintiffs argue that the Third Amended Complaint raises factual issues regarding the running of the statute of limitations as to the 200 Plaintiffs.  Plaintiffs point to paragraphs 83-94 of the Third Amended Complaint, which

allege that they did not discover Defendants' negligence until the March 3, 2011 Notice of Grubbing Violation – Sedimentation & Erosion Control Ordinance 808 TMK: (4) 1-7-005:004 issued to Defendants by the County of Kauai Department of Public Works ("Notice of Violation").  [Third Amended Complaint, Exh. 10 (Notice of Violation).]  Plaintiffs argue that, based on these allegations, this Court cannot limit the recovery period to two years before the filings of the complaints.  [Mem. in Opp. at 19.]

The Third Amended Complaint, however, also alleges that, "in June 2000, numerous Waimea residents petitioned local agricultural growers near Waimea to address the impact of fugitive dust and chemicals from the GMO Test Fields on their community (the 'Waimea Petition')."  [Third Amended Complaint at ¶ 49; id., Exh. 5 (Waimea Petition).]  The Waimea Petition states:

> We, the undersigned, wish to urgently request that local growers of the Waimea, Kauai region . . . immediately implement steps to reduce dust pollution caused by vehicular traffic on the dirt roads used in the planting and harvesting of their crops . . . .
>
> We further wish to express our growing concerns about other air pollution generated by agricultural enterprises in the vicinity of Waimea.  The use of vehicles on dirt roads which have not been wet down prior to use raises clouds of red dust, which are subsequently carried by the wind into our community.  This dust is then deposited on our homes, our cars, our streets and buildings, and, most alarmingly, our children, who

are forced to breathe dust laden air as a part of
living.

We are concerned that this dust may contain other
pollutants, such as fertilizers and/or pesticides
that are used in commercial agriculture, and that
the long-term health consequences of continuing
present behavior may be severe.

We believe that current provisions for reducing
dust pollution are not being adequately
implemented, and that local agricultural
businesses are not complying with existing
regulations intended to restrict dust pollution.
The result is clearly visible in the film of dust
that blankets our community.  Please help to
reduce and ultimately eliminate this very serious
problem.

[Id., Exh. 5 at 1.]  The Waimea Petition was presented to Pioneer

in June 2000.  [Third Amended Complaint at ¶ 52.]  Thus, by

incorporating the Waimea Petition into the Third Amended

Complaint, Plaintiffs admit that, as early as 2000, at least some

of them suspected that, 1) Pioneer's actions were causing dust

and chemicals to drift into the community, and 2) Pioneer was not

adequately implementing dust-reducing measures and/or was not

complying with dust pollution regulations.  These are the core

allegations which Plaintiffs base their current claims upon, and

at least some of Plaintiffs were aware of the basis for these

claims in 2000.

Plaintiffs contend that the issue of when the statute

of limitations began to run is not appropriate for determination

in a motion to dismiss.  This Court acknowledges that the Hawai`i

Supreme Court has stated: "When there has been a belated

22

discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide." <u>Thomas v. Kidani</u>, 126 Hawai`i 125, 133, 267 P.3d 1230, 1238 (2011) (citation and quotation marks omitted).  In light of Plaintiffs' allegations based on the Waimea Petition, however, Plaintiffs' conclusory allegation that they did not discover the basis of their claims until 2011 is not enough to save Amended Counts I, II, IV, and V from a motion to dismiss.

Plaintiffs also argue that the Waimea Petition cannot be the basis of a statute limitations ruling as to all Plaintiffs because "[n]ot every Plaintiff lived in Waimea when the 2000 Petition was signed.  Not every Plaintiff signed the 2000 Petition.  Not every Plaintiff was even aware of the 2000 Petition." [Mem. in Opp. at 21.]  It is apparent from the Third Amended Complaint that not all Plaintiffs signed the Waimea Petition.  The Third Amended Complaint, however, does not identify which Plaintiffs, if any, were not residing in Waimea at the time of the Waimea Petition, nor does it allege that some of the Plaintiffs who were residing in Waimea at the time of the Waimea Petition were unaware of the petition.  Even assuming, *arguendo*, that the Third Amended Complaint included those allegations, the Plaintiffs who were residing in Waimea at the time of the Waimea Petition could have, through the use of

reasonable diligence, discovered the basis for the allegations in the petition.  Similarly, even as to any Plaintiffs who were not residing in the Waimea area at the time of the Waimea Petition, those Plaintiffs could have reasonably discovered the basis for their claims prior to the Notice of Violation.  Insofar as the Waimea residents at the time of the petition could have discovered the basis for the claims through the exercise of due diligence, any new residents to the area could have discovered the basis for the claims when they moved to the area.

Although their may be some Plaintiffs whose claims accrued after 2000 because they moved to the Waimea area at some later point, this Court need not determine exactly when each of those Plaintiffs moved to the area in order to rule on the actionable damages period.  Based on the factual allegations in the Third Amended Complaint, Amended Counts I, II, IV, and V allege continuing torts by Pioneer, and the continuing tort doctrine tolls the applicable statute of limitations.  See 8/9/13 Order, 2013 WL 4047110, at *22-23 (discussing the continuing tort doctrine).  This Court concludes that the actionable period for Amended Counts I, II, IV, and V begins, at the latest, two years before the Aana plaintiffs filed the original complaint on December 13, 2011 and two years before May 23, 2012 for the Casey

plaintiffs.[8]  This Court also finds that Plaintiffs cannot cure this defect by amendment.  See Harris, 573 F.3d at 737.  This Court therefore GRANTS Defendants' Motion to the extent that the portions of Amended Counts I, II, IV, and V seeking damages against Pioneer prior to the two-year period before the filing of the complaints are DISMISSED WITH PREJUDICE.

As to the Robinson Defendants, the only lease extension that occurred during the actionable period is the 2010 lease. This Court therefore DENIES Defendants' Motion as to Plaintiffs' claims against the Robinson Defendants in Amended Counts I, II, IV, and V based on the 2010 lease extension.  This Court GRANTS Defendants' Motion to the extent that Plaintiffs' claims against the Robinson Defendants in Amended Counts I, II, IV, and V based on the 2002 and 2005 lease extension are DISMISSED WITH PREJUDICE.

### C.  Misrepresentation Claims

Amended Count VI is subject to the six-year limitations period in Haw. Rev. Stat. § 657-1(4).  8/9/13 Order, 2013 WL 4047110, at *23 ("Both negligent misrepresentation claims and

---

[8] It is possible that some of Plaintiffs' claims may not have accrued until after December 13, 2009 for the Aana Plaintiffs or May 23, 2010 for the Casey Plaintiffs.  For example, one of the Aana Plaintiffs may have moved to the Waimea area less than two years before December 13, 2009.  That Plaintiff would only have damages beginning from the date of his or her move, and would still fall within the actionable period described in this Order.

intentional/fraudulent misrepresentation claims, however, are
subject to the six-year limitations period in Haw. Rev. Stat.
§ 657-1(4)." (citation omitted)).  This Court also found in the
8/9/13 Order that, because of the nature of Plaintiffs'
misrepresentation claims, the continuing tort doctrine did not
apply.  This Court therefore ruled that Plaintiffs'
misrepresentation claims based on the October 2000 Response
Letter and the 2002 Conservation Plan were time-barred, but
Plaintiffs' misrepresentation claims based on the December 2011
Letter were timely.  Id.  This Court allowed Plaintiffs to amend
their misrepresentation claims as to the October 2000 Response
Letter and the 2002 Conservation Plan.  Plaintiffs argue that,
based upon the allegations in the Third Amended Complaint, this
Court should rule that Plaintiffs timely filed their
misrepresentation claims based on the October 2000 Response
Letter and the 2002 Conservation Plan.

        Hawai`i courts also apply the discovery rule to fraud-
based claims.  See, e.g., Thomas, 126 Hawai`i at 132, 267 P.3d at
1237.  Plaintiffs argue that their misrepresentation claims did
not accrue until the County issued the Notice of Violation in
March 2011.  Plaintiffs rely on the following allegation, which
they added in the Third Amended Complaint:

                While Waimea Residents were aware of dust impacts
                to the Waimea community, there [sic] were not
                aware that the dust impacting their community was
                caused by Pioneer's failure to follow its 2002

26

Conservation Plan and implement best management practices and Pioneer's failure to implement the measures promised in its 2000 Response letter and 2002 Conservation Plan was not discovered until after the County of Kauai issued its Notice of Violation of Ordinance 808 in March 2011.

[Third Amended Complaint at ¶ 187 (emphasis in original).]  These allegations are similar to the allegations Plaintiffs rely on in support of their argument that the discovery rule applies to their negligence, trespass, and nuisance claims.  For the reasons stated *supra* Section III.B., this Court concludes that the discovery rule does not apply to Plaintiffs' misrepresentation claims based on Pioneer's 2000 Response Letter and Pioneer's 2002 Conservation Plan.  Insofar as Plaintiffs had the opportunity to amend their allegations supporting the application of the discovery rule to their misrepresentation claims, and Plaintiffs failed to plead sufficient allegations, this Court finds that further amendment regarding this issue would be futile.  See Johnson, 834 F.2d at 724.  This Court therefore GRANTS Defendants' Motion insofar as this Court DISMISSES WITH PREJUDICE the portions of Amended Count VI based on the 2000 Response Letter and the 2002 Conservation Plan.

IV.  **Whether Amended Count VI States a Claim**

Defendants also argue that the remaining portion of Amended Count VI, which is based on Pioneer's alleged misrepresentations in the December 2011 Letter, fails to state a plausible claim.  As this Court stated in the 8/9/13 Order:

>            This Court has identified the following
>       elements of an intentional or fraudulent
>       misrepresentation claim: "'(1) false
>       representations made by the defendant; (2) with
>       knowledge of their falsity (or without knowledge
>       of their truth or falsity); (3) in contemplation
>       of plaintiff's reliance upon them; and (4)
>       plaintiff's detrimental reliance.'"  Strojny v.
>       PermaDri, Inc., CIV. 11-00131 LEK-KSC, 2012 WL
>       4718099, at *18 (D. Haw. Sept. 30, 2012) (quoting
>       Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122
>       Hawai`i 461, 482-83, 228 P.3d 341, 362-63 (Ct.
>       App. 2010) (citing Hawaii's Thousand Friends v.
>       Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301
>       (1989))).
>
>            The elements of a negligent
>       misrepresentation claim are: "'(1) false
>       information [is] supplied as a result of the
>       failure to exercise reasonable care or
>       competence in communicating the information;
>       (2) the person for whose benefit the
>       information is supplied suffered the loss;
>       and (3) the recipient relies upon the
>       misrepresentation.'"
>
>       Id. at *19 (some citations omitted) (quoting
>       Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai`i
>       309, 321, 47 P.3d 1222, 1234 (2002)).

2013 WL 4047110, at *18-19 (alteration in 8/9/13 Order).

     Viewing Amended Count VI in the light most favorable to

Plaintiffs, this Court finds that it contains sufficient factual

allegations to state a plausible claim for relief.  See Twombly,

550 U.S. at 570.  This Court acknowledges that it is a close

question whether Amended Count VI sufficiently pleads the

reliance required for both an intentional misrepresentation claim

and a negligent misrepresentation claim because the Aana

Plaintiffs filed this action in state court on December 13, 2011

- the same month that Pioneer issued the December 2011 Letter. Whether the alleged reliance is sufficient to support misrepresentation claims, however, is an issue for summary judgment and is not appropriate at this stage of the case. This Court therefore DENIES the Motion as to the portions of Amended Count VI regarding the December 2011 Letter.

## V.  Diminution Damages

Finally, Defendants argue that this Court must dismiss Plaintiffs' claims for diminution of value damages for the claims that rely on the continuing tort doctrine. Defendants argue that, as a matter of law, a continuing nuisance or trespass can be abated at any time, and therefore the plaintiff would receive a double recovery if he was allowed to recover the depreciation in the value of his property in addition to the removal of the cause of the depreciation. [Mem. in Supp. of Motion at 23-25 (some citations omitted) (citing Bartleson v. United States, 96 F.3d 1270, 1274-75 (9th Cir. 1996); Federal Deposit Ins. Corp. v. Jackson-Shaw Partners No. 46, Ltd., 850 F. Supp. 839, 842 (N.D. Cal. 1994); Mangini v. Aerojet-General Corp., 912 P.2d 1220 (Cal. 1996); Spaulding v. Cameron, 239 P.2d 625, 629 (Cal. 1952); Santa Fe P'ship v. ARCO Products Co., 54 Cal. Rptr. 2d 214, 224 (Cal. Ct. App. 1996)).] Plaintiffs respond that Defendants' challenge is premature because what remedies Plaintiffs are entitled to will depend on the evidence presented at trial regarding the

29

nature of the harm that Pioneer caused and whether Pioneer can abate the harm.  [Mem. in Opp. at 24.]

This Court has diversity jurisdiction over the instant case pursuant to the Class Action Fairness Act ("CAFA").  [Notice of Removal, filed 5/4/12 (dkt. no. 1), at ¶ 12 (some citations omitted) (citing 28 U.S.C. § 1332(d)).]  The Ninth Circuit has recognized that:

> In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court.  Harvey's Wagon Wheel, Inc. v. Van Blitter, 959 F.2d 153, 154 (9th Cir. 1992).  If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it."  Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted). . . .

Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011).

The parties have not cited, nor has this Court found, any Hawai`i case law addressing whether diminution damages are available for continuing torts.  The Motion relies primarily on California case law.  "Under California law, damages for diminution in value may only be recovered for permanent, not continuing, nuisances."  Gehr v. Baker Hughes Oil Field Operations, Inc., 81 Cal. Rptr. 3d 219, 221 (Dist. Ct. App. 2008) (citing Santa Fe Partnership v. ARCO Products Co. (1996) 46 Cal. App. 4th 967, 977-978, 54 Cal. Rptr. 2d 214).  This Court must

therefore predict whether the Hawai`i Supreme Court would follow this legal principle, which is well-settled in California law.

This district court has noted that Hawai`i courts look to California case law for guidance regarding tort law issues. See Wailua Assocs. v. Aetna Cas. & Sur. Co., 183 F.R.D. 550, 563-64 (D. Hawai`i 1998) (recognizing that the "Hawaii Supreme Court has, in the past, looked to California for guidance" on tort law); see also Stanton v. Bank of Am., N.A., Cv. No. 09-00404 DAE-LEK, 2010 WL 4176375, at *14 (D. Hawai`i Oct. 19, 2010); Kapunakea Partners v. Equilon Enters. LLC, 679 F. Supp. 2d 1203, 1217-18 (D. Hawai`i 2009).  Based on the current record and based on the parties' arguments, this Court cannot conclude that the Hawai`i Supreme Court would follow California's rule prohibiting diminution damages for continuing torts. California's rule is based, at least in part, on a California statute which does not appear to have a counterpart in the Hawai`i Revised Statutes.  See Starrh & Starrh Cotton Growers v. Aera Energy LLC, 63 Cal. Rptr. 3d 165, 171 (Dist. Ct. App. 2007) ("Pursuant to Civil Code section 3334, damages allowed for continuing trespass include the value of the use of the property, reasonable cost of repair or restoration to the property's original condition, and the costs of recovering possession.").[9]

---

[9] Cal. Civ. Code § 3334(a) states:

(continued...)

31

At this stage of the case, this Court cannot conclude, as a matter of law, that diminution damages are unavailable for the continuing torts alleged in the Third Amended Complaint.[10] The Motion is DENIED WITHOUT PREJUDICE as to Defendants' request for dismissal of Plaintiffs' prayer for diminution damages for Amended Counts I, II, IV, and V.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion to Dismiss Third Amended Complaint (Rule 12(b)(6)), filed September 23, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically, this Court rules as follows:

-the Motion is GRANTED as to Amended Count III, which is DISMISSED WITH PREJUDICE;

-the Motion is GRANTED insofar as any portion of the Third

---

[9](...continued)
The detriment caused by the wrongful occupation of real property, in cases not embraced in Section 3335 of this code, the Eminent Domain Law (Title 7 (commencing with Section 1230.010) of Part 3 of the Code of Civil Procedure), or Section 1174 of the Code of Civil Procedure, is deemed to include the value of the use of the property for the time of that wrongful occupation, not exceeding five years next preceding the commencement of the action or proceeding to enforce the right to damages, the reasonable cost of repair or restoration of the property to its original condition, and the costs, if any, of recovering the possession.

[10] This Court notes that, in addition to remediation damages, Plaintiffs also seek to recover the cost to cure or mitigate the harm to their properties. [Third Amended Complaint at pg. 38.]

Amended Complaint alleging that the applicable statute of limitations is tolled based on fraudulent concealment is DISMISSED WITH PREJUDICE;

-the Motion is DENIED as to Plaintiffs' claims in Amended Counts I, II, IV, and V against the Robinson Defendants based on the 2010 lease;

-the Motion is GRANTED as to all other portions of Amended Counts I, II, IV, and V against the Robinson Defendants, and those claims are DISMISSED WITH PREJUDICE;

-the Motion is GRANTED insofar as the portions of Amended Counts I, II, IV, and V seeking damages against Pioneer prior to December 13, 2009 for the <u>Aana</u> Plaintiffs and prior to May 23, 2010 for the <u>Casey</u> Plaintiffs are DISMISSED WITH PREJUDICE;

-the Motion is GRANTED insofar as the portions of Amended Count VI based on the 2000 Response Letter and the 2002 Conservation Plan are DISMISSED WITH PREJUDICE;

-the Motion is DENIED as to the portions of Amended Count VI regarding the December 2011 Letter; and

-the Motion is DENIED WITHOUT PREJUDICE as to Defendants' request for dismissal of Plaintiffs' prayer for diminution damages for Amended Counts I, II, IV, and V.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 27, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JIM AANA, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CV 12-00231 LEK-BMK; JEFFREY CASEY, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CV 12-00655 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (RULE 12(B)(6))**