IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JIM AANA, et al., on behalf ) CIVIL NO. 12-00231 LEK-BMK
of themselves and all others ) CIVIL NO. 12-00665 LEK-BMK
similarly situated, )
)
           Plaintiffs, )
)
     vs. )
)
PIONEER HI-BRED )
INTERNATIONAL, INC., a DuPont )
Business and Iowa )
Corporation, GAY & ROBINSON, )
INC., a Hawaii corporation; )
ROBINSON FAMILY PARTNERS, a )
general partnership )
registered in Hawaii; and DOE )
DEFENDANTS 1-10, )
)
           Defendants. )
_____ )
JEFFREY CASEY, et al., on )
behalf themselves and all )
others similarly situated, )
)
           Plaintiffs, )
)
     vs. )
)
PIONEER HI-BRED )
INTERNATIONAL, INC., et al., )
)
           Defendants. )
_____ )


**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL SUMMARY JUDGMENT
FOR DUPONT PIONEER'S MISUSE OF BEE-TOXIC PESTICIDES**

            On April 8, 2014, Plaintiffs Jim Aana, et al., on

behalf of themselves and all others similarly situated

(collectively, "Plaintiffs"),[1] filed their Motion for Preliminary
Injunction and Partial Summary Judgment for DuPont Pioneer's
Misuse of Bee-Toxic Pesticides ("Motion").  [Dkt. no. 701.]
Defendants Pioneer Hi-Bred International, Inc. ("Pioneer"), Gay &
Robinson, Inc., and Robinson Family Partners[2] (all collectively
"Defendants") filed their memorandum in opposition on June 2,
2014, and Plaintiffs filed their reply on June 9, 2014.  [Dkt.
nos. 752, 757.]  This matter came on for hearing on June 23,
2014.  After careful consideration of the Motion, supporting and
opposing memoranda, and the arguments of counsel, Plaintiffs'
Motion is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

        The relevant factual and procedural background of this
case is set forth in this Court's: August 9, 2013 Order Granting
in Part and Denying in Part Defendants Gay & Robinson, Inc. and
Robinson Family Partners' Motion to Dismiss Plaintiffs' Second
Amended Complaint Under Fed. R. Civ. P. 12(b)(6); and Granting in
Part and Denying Part Defendants Gay & Robinson, Inc., Robinson
Family Partners, and Pioneer Hi-Bred International, Inc.'s Motion

---

        [1] Insofar as the two cases have been consolidated, this
Court will refer to the plaintiffs in both cases collectively as
"Plaintiffs."  When necessary, this Court will distinguish
between "the Aana Plaintiffs" and "the Casey Plaintiffs."  The
defendants are the same in both cases.

        [2] This Court will refer to Gay & Robinson, Inc. and Robinson
Family Partners collectively as "the Robinson Defendants."

to Dismiss Plaintiffs' Second Amended Complaint ("8/9/13 Order");

and February 27, 2014 order Granting in Part and Denying in Part

Defendants' Motion to Dismiss Third Amended Complaint (Rule

12(b)(6)) ("2/27/14 Order"). [Dkt. nos. 224, 608.[3]]

In the instant Motion, Plaintiffs seek

a preliminary injunction: a) to enjoin Pioneer's
use of [bee-toxic pesticides ("BTPs")] when fields
are blooming; b) to require Pioneer to provide
independent proof that its fields are bee-free
before using BTPs as required by the label; and
c) mandate Pioneer to provide warnings to
beekeepers before using BTPs in the future as
required by Hawaii law.

[Mem. in Supp. of Motion at 2.] In addition, they seek summary

judgment as to Count I (negligence against all Defendants for

failure to use due care) and Count II (negligence against all

Defendants for failure to investigate and warn)[4] "because of

Pioneer's systemic misuse of bee-toxic pesticides in flagrant

violation of the pesticide label and common sense farming

practices." [Id.]

---

[3] The 8/9/13 Order is also available at 2013 WL 4047110, and
the 2/27/14 Order is also available at 2014 WL 806224.

[4] The current pleading in these consolidated cases is
Plaintiffs' Third Amended Complaint (Property Related Claims)
("Third Amended Complaint"). [Filed 9/6/13 (dkt. no. 331).]
This Court has already ruled that Counts I and II, as well as
Counts IV and V (which are not at issue in the instant Motion),
are limited to the two-year period prior to the filing of the
complaints. The Aana Plaintiffs filed their original complaint
on December 13, 2011, and the Casey Plaintiffs filed their
original complaint on May 23, 2012. 2/27/14 Order, 2014 WL
806224, at *8, *10.

**DISCUSSION**

**I.   Scope of the Third Amended Complaint**

At the outset, this Court must address Defendants'
argument that the Third Amended Complaint does not allege any
claim for injury to bees.  As Defendants argue, [Mem. in Opp. at
16,] there is no mention of bees in Plaintiffs' statement of
their claims, [Third Amended Complaint at ¶¶ 129-93,] and there
is only one reference to bees in Plaintiffs' general factual
allegations.

> Finally, excessive fugitive dust and dangerous
> pesticides from the GMO Test Fields[5] allowed by
> Pioneer and the Robinson Entities negatively
> impact the local environment of Waimea, including
> local corn and taro farms, **local honey bee**
> **populations**, the adjacent Waimea River, and the
> ocean and coral reef, which have all long predated
> Pioneer's testing of GMO crops adjacent to Waimea
> on land leased from the Robinson Entities.

[Id. at ¶ 120 (emphasis added).]  Plaintiffs did not identify any
other specific references to bees.  Instead, Plaintiffs respond
that, throughout this case, they have always sought injunctive
relief to address Pioneer's misuse of pesticides.  The Third
Amended Complaint alleges:

> 110)  Hawaii Revised Statute 149A-31 prohibits the
>       use of pesticides in any manner that presents
>       an unreasonable adverse effect on the
>       environment, which includes any unreasonable
>       risk to humans or the environment with

---

⁵ Plaintiffs refer to "[a]ll fields leased by Pioneer from
the Robinson [Defendants] related to the Waimea Research Center"
as "the GMO Test Fields."  [Third Amended Complaint at ¶ 16.]

consideration for the economic, social and
environmental costs and benefits of the
pesticide's use.

111) Waimea Residents belong to the class of
persons intended to be protected by HRS 149A-
31.

112) Pioneer's intentional use of inherently
dangerous pesticides without consideration of
the risks to Waimea Residents and in
violation of State law and Pioneer's own
stated practices and policies violates HRS
149A-2.

[Id. at ¶¶ 110-12 (footnote omitted).] Plaintiffs emphasize that

this Court has recognized that "Plaintiffs may use evidence of

the alleged violations of the Hawai`i Pesticides Law, the Hawai`i

Air Pollution Control Act, and Ordinance 808 to support their

remaining negligence claims." 8/9/13 Order, 2013 WL 4047110, at

*16. Plaintiffs therefore argue that the Motion's request for

injunctive relief is of the same character as the claims

expressly asserted in the Third Amended Complaint.

Plaintiffs clearly seek injunctive relief regarding the

allegedly improper use of pesticides:

Preliminary and permanent injunctive relief to
require Pioneer to: a) investigate the actual
risks posed by its use of inherently dangerous
pesticides for the Waimea community; b) give
warning to the Waimea Community of the risks posed
by Pioneer's pesticides; c) enjoin Pioneer's use
of inherently dangerous pesticides until the full
potential for harm to the Waimea community is
disclosed; and d) immediately cease all
agricultural operations at the GMO Test Fields
until and unless Pioneer complies with applicable
laws, ordinances, and policies and procedures to
cease the creation and migration of excessive

> fugitive dust and pesticides in the Waimea
> community and environment[.]

[Third Amended Complaint at pg. 38.]  The issue is whether the

Third Amended Complaint "satisfies the requirements of [Fed. R.

Civ. P.] 8(a) because it gives [Defendants] fair notice of the

basis for" Plaintiffs' claims for bee-related damages.  <u>See</u>

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002); <u>see also</u>

<u>Little v. Washington</u>, 517 F. App'x 552 ("Rule 8 'is a basis for

dismissal independent of [Fed. R. Civ. P.] 12(b)(6)'" (quoting

<u>McHenry v. Renne</u>, 84 F.3d 1172, 1179 (9th Cir. 1996))).

In the instant Motion, Plaintiffs argue that Pioneer's

misuse of BTPs endangers bees that forage and/or visit the GMO

Test Fields, and they assert that Counts I and II include claims

for bee-related damages.  Counts I and II do include allegations

about Pioneer's pesticide use, but the allegations concern

pesticide **drift** to Plaintiffs' homes, **not** harm to bees in

Pioneer's fields during pesticide application or during post-

application periods of continued toxicity.  Count I alleges:

> 130) Pioneer and the Robinson Entities owe Waimea
> Residents a duty to use due care to prevent
> the **migration of** excessive fugitive dust and
> **dangerous pesticides** into the Waimea
> community and environment.
>
> . . . .
>
> 132) Despite these duties, both Pioneer and the
> Robinson Entities negligently failed to
> prevent the **migration of** excessive fugitive
> dust, erosion, and **dangerous pesticides** into

6

the Waimea community and environment.

133) Although Pioneer: a) received community
complaints about dust and **pesticide drift**;
b) had knowledge of ongoing erosion and dust
problems on the GMO Test Fields; and c) knew
of the risk posed from erosion, fugitive
dust, and dangerous pesticides to the Waimea
community and environment, Pioneer failed to
prevent the **migration of pesticides** and
excessive fugitive dust into the Waimea
community and environment.

. . . .

138) Pioneer and the Robinson Entities' negligent
failure to use due care caused the routine
**migration of** excessive fugitive dust and
**pesticides into Waimea Residents' homes**,
which has resulted in substantial impact to
the real and personal property of Waimea
Residents, regular chemical odors in the
community, an increase in health risks for
the Waimea community, and a substantial
reduction in the value and beneficial use and
enjoyment of Waimea Residents' homes and
property.

. . . .

140) Because of the **invasion of** excessive fugitive
dust and **pesticides into Waimea homes** because
of Pioneer and the Robinson Entities'
negligence, it has been necessary for Waimea
Residents to incur expenses and other special
damages in an amount to be proven at trial.

[Third Amended Complaint at ¶¶ 130-40 (emphases added).]

Similarly, Count II alleges:

144) Despite knowledge of the hazard created by
its use of dangerous pesticides, Pioneer has
failed to investigate or warn of the risks to
the Waimea community for **pesticide migration**.

. . . .

146) Pioneer's negligent failure to investigate, select, warn, and use pesticides appropriately on the GMO Test Fields, along with the Robinson Entities' failure to investigate and prevent the discharge of pollutants from the GMO Test Fields, has caused the routine **migration of pesticides into Waimea Residents' homes**, which has resulted in regular chemical odors in the community, an increase in health risks for the Waimea community, and a substantial reduction in the value and beneficial use and enjoyment of Waimea Residents' homes and property.

. . . .

149) Because of the **invasion of** excessive fugitive dust and **pesticides into Waimea homes** because of Pioneer and the Robinson Entities' negligence, it has been necessary for Waimea Residents to incur expenses and other special damages in an amount to be proven at trial.

[Id. at ¶¶ 144-49 (emphases added).]

Both Count I and Count II incorporate the previous paragraphs of the Third Amended Complaint. [Id. at ¶¶ 129, 142.] As previously noted, however, there is only one reference to bees in the Third Amended Complaint. Plaintiffs allege Pioneer's misuse of pesticides "negatively impact[s] the local environment of Waimea, including local corn and taro farms, local honey bee populations, the adjacent Waimea River, and the ocean and coral reef." [Id. at ¶ 120.] Even reading Counts I and II together with paragraph 120, Plaintiffs do not give Defendants fair notice that Counts I and II seek relief for injury to bees maintained on any Plaintiff's property. It is not clear from paragraph 120

that any Plaintiff alleges "specific, localized injuries" related to bees that "are fairly traceable to" Pioneer's use of pesticides on the GMO Test Fields, as opposed to merely alleging general injury to the environment, which is not enough to confer standing on Plaintiffs.  See, e.g., Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1144 (9th Cir. 2013) ("[T]he critical inquiry for standing purposes is whether the [defendants'] alleged misconduct causes injury to Plaintiffs.  Injury to the environment alone is not enough to satisfy the causation prong for standing." (citation omitted)).

This Court therefore finds that the Third Amended Complaint does not allege a claim specifically for injury to bees maintained on any Plaintiff's property.  Thus, Plaintiffs are not entitled to summary judgment on any issues regarding bee-related injuries, nor can this Court issue a preliminary injunction as to claims that are not alleged in the Third Amended Complaint.  Cf. Davis v. Abercrombie, 903 F. Supp. 2d 975, 995 (D. Hawai`i 2012) ("A preliminary injunction may be granted only when the 'intermediate relief [is] of the same character as that which may be granted finally.'" (alteration in Davis) (some citations and quotation marks omitted) (quoting De Beers Consol. Mines v. U.S., 325 U.S. 212, 220, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945))).  This Court therefore DENIES Plaintiffs' Motion.  This Court, however, will address the merits of the Motion for the sake of

completeness.

## II.  **Merits of the Motion**

Even if this Court found that the Third Amended Complaint does allege claims for bee-related injuries, this Court would still deny Plaintiffs' Motion.

### A.  **Standing**

First, this Court would find that only Plaintiff Allen Arquette ("A. Arquette") and Plaintiffs Wolfgang Langlois ("W. Langlois") and Lisette Langlois ("the Langloises") have standing to pursue the claims for bee-related injuries.

> Article III of the United States Constitution limits the power of the courts to the resolution of actual "Cases" and "Controversies." U.S. Const., art. III, § 2; Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). "[T]he irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Thus, the party seeking to establish standing must show the "actual or imminent" "invasion of a legally protected interest" that is "fairly traceable to the challenged action" and is "likely . . . to be redressed by a favorable decision." Id. at 560–61, 112 S. Ct. 2130 (emphasis added) (alterations, citations, and quotation marks omitted). The party seeking to establish jurisdiction . . . bears the burden of demonstrating standing. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006); Lujan, 504 U.S. at 561, 112 S. Ct. 2130. . . .

Ass'n of Pub. Agency Customers v. Bonneville Power Admin., 733

F.3d 939, 969-70 (9th Cir. 2013) (some alterations in <u>Bonneville</u> <u>Power</u>).

Plaintiffs have only presented evidence that A. Arquette and the Langloises arguably have legally protected interests in bees maintained on their respective properties. A. Arquette states that he has fifteen bee hives on a property adjacent to his residence, which is approximately 200 yards away from Pioneer's fields. [Motion, Decl. of Kyle Smith ("Smith Decl."), Exh. 4[6] (Aff. of Allen J. Arquette ("A. Arquette Aff.")) at ¶¶ 4-5.[7]] W. Langlois states that he and his wife "assist with the maintenance of a bee hive on [their] property which is located about 400 yards from the [sic] Pioneer's Waimea test fields." [Smith Decl., Exh. 4 (Aff. of Wolfgang Langlois ("Langlois Aff.")) at ¶ 5.] Plaintiffs contend that the alleged

---

[6] Plaintiffs did not file the Smith Declaration and their Concise Statement of Undisputed Facts ("Plaintiffs' CSOF") as a separate document. Those two documents appear as part of the Motion, immediately following the memorandum in support. Exhibit 4 to the Smith Declaration consists of both the Affidavit of Allen J. Arquette and the Affidavit of Wolfgang Langlois.

[7] A. Arquette's wife, Susan Arquette ("S. Arquette"), is also among the <u>Aana</u> Plaintiffs, but Plaintiffs did not present evidence that she has a legally protected interest in her husband's beekeeping activities. <u>See</u> A. Arquette Aff. at ¶ 4 ("I raise bees"); <u>id.</u> at ¶ 5 ("I currently have 15 hives"); Smith Decl., Exh. 18 (Excerpts of Trans. of 1/24/13 Depo. of Susan Arquette) at 76-78 (discussing decrease in bees and fewer pollinating insects for their trees). Exhibit 18 does not indicate that S. Arquette is a beekeeper or has any ownership interest in the hives that A. Arquette discusses in his affidavit.

injuries to A. Arquette's and the Langloises's bees are fairly traceable to Pioneer's use of pesticides and that the alleged injuries are likely to be redressed by a decision in Plaintiffs' favor in this action.

The Motion states that Plaintiff John Aana ("J. Aana") is also a beekeeper, [Mem. in Supp. of Motion at 22-23,] but the supporting documentation states that J. Aana is a taro farmer, and does not state that he is a beekeeper. [Smith Decl., Exh. 20 (Pltf. J. Aana's Suppl. Damages Response to Defs.' First Request for Answers to Interrogs. & First Request for Production of Docs Dated 6/1/12) at 2.] Thus, even if this Court found that the Third Amended Complaint alleged claims for bee-related injuries, this Court would find that only A. Arquette and the Langloises have standing to pursue those claims.

### B. Summary Judgment

The two counts which Plaintiffs address in the Motion are both negligence claims. [Mem. in Supp. of Motion at 28 (requesting "partial summary judgment that: a) a duty to use due care and duty to warn exist in Hawaii for the use of pesticides; and b) that Pioneer has breached its duty to use due care and duty to warn.").] Plaintiffs' counsel acknowledged at the hearing on the Motion that Plaintiffs have not addressed causation and damages. Plaintiffs' Reply also effectively conceded that there are genuine issues of material fact as to

causation and damages.  [Reply at 13 (asking this Court to: defer ruling on the Motion, pending Defendants' production of pollenation records; grant partial summary judgment on the existence of a duty to warn; and grant partial summary judgment on duty and breach of duty as to the use of the pesticide Sevin).]

Causation and damages are essential elements of a negligence claim under Hawai`i law.  See Cho v. Hawai`i, 115 Hawai`i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").  Plaintiffs' only evidence of bee-related injury is A. Arquette's statement that he lost three bee hives to colony collapse over a seven-year period. [A. Arquette Decl. at ¶ 7.]  The only evidence to establish a causal link between his losses and Pioneer's use of pesticides is his declaration stating that: "In addition to the colony collapse I experienced at my hives, I have personally noticed over the past 7 years a general, and to me an alarming decline, in foraging bees in Waimea, a large part of which, I attribute to the application of toxic pesticides used by Pioneer."  [Id. at ¶ 14.]  The Langloises do not allege damages to the bees they maintain, but W. Langlois also asserts that there has been a

decrease in the number of foraging bees in Waimea over the past seven years, which he attributes to Pioneer's pesticide use. [W. Langlois Decl. at ¶ 13.] Plaintiffs submitted declarations by two of their retained experts, Michael J. DiBartolomeis, Jr., Ph.D., DABT, and Hector Valenzuela, Ph.D., [Smith Decl., Exhs. 10, 15,] but the declarations do not address the effect of pesticides on A. Arquette's or the Langloises's hives.

Defendants presented the declaration of one of their expert witnesses, Mark Wright, Ph.D., stating that "[h]oneybee colony collapse disorder (CCD) is a worldwide phenomenon," but whether insecticides play a role in CCD is still an open question. [Defs.' CSOF, Decl. of Mark Wright ("Wright Decl.") at ¶ 14.[8]] His department at the University of Hawai`i is actively studying this issue. [Id.]

> 14. . . . CCD does not occur in Hawaii. Honeybees in Hawaii are currently severely impacted by small hive beetles and *Nosema*. These bee pests can severely reduce the viability of, or destroy hives, but do not cause CCD in Hawaii.
>
> 15. The small hive beetle feeds on anything inside the hive, causing damage to the honeycomb and contaminating the honey, and ultimately completely destroying the colony. The small hive beetle has been known to be present on Kauai since 2012. See Exhibit C (attached hereto) (Press Release from Hawaii Department of Agriculture) and Exhibit D (attached hereto) (New Pest Advisory).

---

[8] Dr. Wright is the Chair of the Department of Plant and Environmental Protection Science, which includes entomology (the study of insects), at the University of Hawai`i. [Wright Decl. at ¶ 1, Exh. A (Curriculum Vitae - Mark Gerald Wright).]

> *Nosema*, a fungal parasite that hinders honeybee
> digestion and shortens lifespan, may also
> contribute to any decline in local bee
> populations. *Nosema* has been identified in hives
> on Kauai.

[<u>Id.</u> at ¶¶ 14-15.] Dr. Wright also states that failure to
inspect hives for infestations and failure to respond
appropriately to any infestation discovered will cause pests and
disease to spread rapidly. [<u>Id.</u> at ¶ 16.]

The Hawai`i State Legislature, recognizing the threat
to the local beekeeping industry, passed Act 200 in 2011. Act
200 created a beekeepers' registry with, and established an
apiary program within, the Department of Agriculture. 2011 Haw.
Sess. Laws Act 200, §§ 2-3 at 661-62. Section 1 of Act 200
states, in pertinent part:

> The legislature finds that Hawaii's beekeepers are
> experiencing devastating losses in their industry
> due to a combination of bad weather and the
> infestation of varroa mites, nosema spores, and
> small hive beetles. Unofficial counts indicate
> that thousands of bee colonies in Hawaii have died
> off, but the exact numbers remain unknown. . . .

<u>Id.</u>, § 1 at 661. Act 200 neither finds nor suggests that
agricultural pesticides, or any other chemicals, are a cause of
the decline in the local bee population. Defendants also offer
Dr. Wright's declaration, stating that, "in 2013 pollen samples
were taken from bee hives across Hawaii and tested for 172
different pesticides. The samples from hives in Kauai were found
to be completely pesticide free." [Wright Decl. at ¶ 18 (citing

Wright Decl., Exh. F (Hawai`i Apiary Program Hawai`i Bee newsletter, Summer 2013)).]

This Court therefore finds that there are genuine issues of material fact as to the causation and damages elements of Count I and Count II, particularly in light of the fact this Court must view the current record in the light most favorable to Defendants. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) ("We review a grant of summary judgment de novo and must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." (citations and quotation marks omitted)). Insofar as these are required elements of Plaintiffs' negligence claims, this Court concludes that Plaintiffs are not entitled to summary judgment as to either Count I or Count II. See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

As previously noted, Plaintiffs' Reply amends the request for summary judgment in the Motion and asks this Court to grant summary judgment as to only the issues of: whether Pioneer had a duty to warn about their pesticide use in general; whether Pioneer had a duty to warn about their use of Sevin; and whether

Pioneer breached its duty to warn as to its use of Sevin.  This
Court would find that there are genuine issues of material fact
as to these issues as well, including whether it was reasonably
foreseeable to Pioneer that there were bee hives being maintained
on A. Arquette's and the Langloises's properties.  Cf. Kajiya v.
Dep't of Water Supply, 2 Haw. App. 221, 226, 629 P.2d 635, 640
(1981) ("When one is in control of what he knows or should know
is a dangerous agency, which creates a foreseeable peril to
persons or property that is not readily apparent to those
endangered, to the extent that it is reasonably possible, one
owes a duty to warn them of such potential danger.").  Plaintiffs
have not presented evidence that either A. Arquette or the
Langloises informed Pioneer of their beekeeping activities, and
Defendants presented testimony that they did not do so.  [Defs.'
Separate and Concise Statement of Facts in Supp. of Defs.' Mem.
in Opp., filed 6/2/14 (dkt. no. 753) ("Defs.' CSOF"), Decl. of
Joao Kopytowski Filho ("Kopytowski Decl.") at ¶ 21.]  Joao
Kopytowski Filho, Ph.D.,[9] states: "the Hawaii Beekeepers'
Association maintains an online membership . . . .  Neither
Mr. Arquette nor Mr. Langlois is listed as a member.  In fact,
there are no members from Waimea as of 2012."  [Id. at ¶ 23.]
The State did not have a beekeepers' registry until Act 200

---

[9] Dr. Kopytowski is a research scientist at the Waimea
Research Center, and he oversees the Agronomy Department.
[Kopytowski Decl. at ¶ 3.]

established one.

Thus, even if this Court found that the Third Amended Complaint alleged claims for bee-related injuries, this Court would find that there are genuine issues of material fact as to all elements of Plaintiffs' negligence claims in Count I and Count II, and this Court would DENY the Motion's request for summary judgment as to Count I and Count II.

## C. **Preliminary Injunction**

As to Plaintiffs' request for a preliminary injunction regarding Pioneer's use of BTPs, the applicable standard is:

> "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 376 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. <u>See</u> <u>Haw. Cnty. Green Party v. Clinton</u>, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.

> <u>Sakala v. BAC Home Loans Servicing, LP</u>, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. <u>Am. Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, --- U.S. ----, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o

18

the extent that [the Ninth Circuit's] cases
have suggested a lesser standard, they are no
longer controlling, or even viable" (footnote
omitted)); see also Winter, 129 S. Ct. at
374-76 (holding that, even where a likelihood
of success on the merits is established, a
mere "possibility" of irreparable injury is
insufficient to warrant preliminary
injunctive relief, because "[i]ssuing a
preliminary injunction based only on a
possibility of irreparable harm is
inconsistent with [the Supreme Court's]
characterization of injunctive relief as an
extraordinary remedy that may only be awarded
upon a clear showing that the plaintiff is
entitled to such relief").

Painsolvers, Inc. v. State Farm Mut. Auto. Ins.
Co., 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i
2010) (footnote and some citations omitted)
(alterations in original). The Ninth Circuit has
held that its "serious questions" version of the
sliding scale test for preliminary injunctions
survives Winter to the extent that, a court may
grant a preliminary injunction where the plaintiff
(1) "demonstrates . . . that serious questions
going to the merits were raised and the balance of
hardships tips sharply in the plaintiff's
favor[,]" and (2) satisfies the other Winter
factors, likelihood of irreparable injury and that
the injunction is in the public interest.
Alliance for the Wild Rockies v. Cottrell, 632
F.3d 1127, 1134-35 (9th Cir. 2011) (citation and
block quote format omitted) (some alterations in
original).

Hunger v. Univ. of Hawai`i, 927 F. Supp. 2d 1007, 1015-16 (D.

Hawai`i 2013) (some citations omitted).[10]

_____

[10] The Ninth Circuit has stated the sliding scale test as
follows:

"A preliminary injunction is appropriate when
a plaintiff demonstrates 'either: (1) a likelihood
of success on the merits and the possibility of
(continued...)

For the same reasons set forth *supra* in Discussion section II.B., this Court would also find that Plaintiffs have not established either a likelihood of success on the merits of their claims for bee-related injuries or that there are serious questions going to the merits of those claims. This Court therefore need not address the remaining factors. Even if this Court found that the Third Amended Complaint alleged claims for bee-related injuries, this Court would find that Plaintiffs have not established that they are entitled to a preliminary injunction.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for Preliminary Injunction and Partial Summary Judgment for DuPont

---

[10](...continued)
      irreparable injury; or (2) that serious questions
      going to the merits were raised and the balance of
      hardships tips sharply in [the plaintiff's]
      favor.'" Lands Council v. Martin (Lands Council
      II), 479 F.3d 636, 639 (9th Cir. 2007) (quoting
      Clear Channel Outdoor Inc. v. City of Los Angeles,
      340 F.3d 810, 813 (9th Cir. 2003)). These two
      options represent extremes on a single continuum:
      "the less certain the district court is of the
      likelihood of success on the merits, the more
      plaintiffs must convince the district court that
      the public interest and balance of hardships tip
      in their favor." Id.

Lands Council v. McNair, 537 F.3d 981, 987 (9th. Cir. 2008) (en banc) (some citations and internal quotation marks omitted) (alteration in Lands Council).

Pioneer's Misuse of Bee-Toxic Pesticides, filed April 8, 2014, is HEREBY DENIED.

　　　　　IT IS SO ORDERED.

　　　　　DATED AT HONOLULU, HAWAII, June 30, 2014.



　　　　　　　　　　　　　　　/s/ Leslie E. Kobayashi
　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　United States District Judge

**JIM AANA, ET AL. ETC. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00231 LEK-BMK; JEFFREY CASEY, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00655 LEK-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT FOR DUPONT PIONEER'S MISUSE OF BEE-TOXIC PESTICIDES**