IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>PIONEER HI-BRED INTERNATIONAL, INC., a DuPont Business and Iowa Corporation, GAY & ROBINSON, INC., a Hawaii corporation; ROBINSON FAMILY PARTNERS, a general partnership registered in Hawaii; and DOE DEFENDANTS 1-10,<br><br>        Defendants.<br>_____<br>JEFFREY CASEY, et al., on behalf themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>PIONEER HI-BRED INTERNATIONAL, INC., et al.,<br><br>        Defendants.<br>_____ | CIVIL NO. 12-00231 LEK-BMK<br>CIVIL NO. 12-00665 LEK-BMK |

**ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT TO DISMISS DEFENDANT
DUPONT PIONEER'S THIRD AFFIRMATIVE DEFENSE BASED ON THE
<u>HAWAII RIGHT TO FARM ACT, HAWAII REVISED STATUTES, CHAPTER 165</u>**

On May 23, 2014, Plaintiffs Jim Aana, et al., on behalf

of themselves and all others similarly situated (collectively,

"Plaintiffs"),[1] filed their Motion for Partial Summary Judgment to Dismiss Defendant DuPont Pioneer's Third Affirmative Defense Based on the Hawaii Right to Farm Act, Hawaii Revised Statutes, Chapter 165 ("Motion"). [Dkt. no. 745.] Defendants Pioneer Hi-Bred International, Inc. ("Pioneer"), Gay & Robinson, Inc., and Robinson Family Partners[2] (all collectively "Defendants") filed their memorandum in opposition on August 12, 2014, and Plaintiffs filed their reply on August 19, 2014. [Dkt. nos. 789, 795.] This matter came on for hearing on September 2, 2014.[3] After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiffs' Motion is HEREBY DENIED for the reasons set forth below.

## **BACKGROUND**

The relevant factual and procedural background of this case is set forth in this Court's: 1) August 9, 2013 Order

---

[1] Insofar as the two cases have been consolidated, the Court will refer to the plaintiffs in both cases collectively as "Plaintiffs." The defendants are the same in both cases.

[2] The Court will refer to Gay & Robinson, Inc. and Robinson Family Partners collectively as "the Robinson Defendants."

[3] At the hearing, the Court also heard arguments regarding Defendants' Motion for Partial Summary Judgment as to Counts I, II, IV, V, and VI of the Third Amended Complaint ("Defendants' Motion"), filed April 29, 2014. [Dkt. no. 718.] On September 3, 2014, however, this Court issued its Order Granting in Part and Denying in Part Plaintiffs' Request for Fed. R. Civ. P. 56(d) Continuance, which allowed the parties to file supplemental memoranda addressing Defendants' Motion. [Dkt. no. 808.] This Court will issue a separate order addressing Defendants' Motion.

Granting in Part and Denying in Part Defendants Gay & Robinson, Inc. and Robinson Family Partners' Motion to Dismiss Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6); and Granting in Part and Denying in Part Defendants Gay & Robinson, Inc., Robinson Family Partners, and Pioneer Hi-Bred International, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("8/9/13 Order"); and 2) February 27, 2014 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Third Amended Complaint (Rule 12(b)(6)) ("2/27/14 Order"). [Dkt. nos. 224, 608.[4]]

The crux of Plaintiffs' Third Amended Complaint (Property Related Claims) ("Third Amended Complaint," [filed 9/6/13 (dkt. no. 331),] is that Plaintiffs have allegedly suffered various forms of property damage as a result of Pioneer's commercial farming operation on property it leases from the Robinson Defendants ("the GMO Test Fields"). One of the affirmative defenses that Defendants have asserted is that the Hawaii Right to Farm Act, Haw. Rev. Stat. Chapter 165 ("the Farm Act"), "bars or precludes Plaintiffs' claims." [Pioneer's Answer to Third Amended Complaint [Dkt. 331], filed 3/21/14 (dkt. no. 679), at pg. 23; Robinson Defendants' Answer to Third Amended Complaint [Dkt. No. 331], filed 3/21/14 (dkt. no. 680), at pg.

---

[4] The 8/9/13 Order is available at 965 F. Supp. 2d 1157, and the 2/27/14 Order is available at 2014 WL 806224.

3

25.]

In the instant Motion, Plaintiffs seek summary judgment as to Defendants affirmative defense under the Farm Act. Plaintiffs assert that the plain language of the Farm Act, the act's legislative history, and the case law applying similar laws make it clear that the Farm Act applies to "residential encroachment upon existing agricultural operations," and it does not "grant immunity for new agricultural projects that bring a nuisance to a pre-existing community." [Mem. in Supp. of Motion at 1.] Plaintiffs argue that Defendants cannot assert a defense based on the Farm Act because the Waimea residential community predated both Pioneer's farming of the GMO Test Fields and the Robinson Defendants' historic sugar cane farming on the property. [Id.]

### DISCUSSION

Defendants' Farm Act defense relies upon Haw. Rev. Stat. § 165-4, which provides that:

> No court, official, public servant, or public employee shall declare any farming operation a nuisance for any reason if the farming operation has been conducted in a manner consistent with generally accepted agricultural and management practices. There shall be a rebuttable presumption that a farming operation does not constitute a nuisance.

The key terms are defined as follows:

> "Farming operation" means a commercial agricultural . . . facility or pursuit conducted, in whole or in part, including the care and

4

production of livestock and livestock products, poultry and poultry products, apiary products, and plant and animal production for nonfood uses; the planting, cultivating, harvesting, and processing of crops; and the farming or ranching of any plant or animal species in a controlled salt, brackish, or freshwater environment. "Farming operation" includes but shall not be limited to:

>     (1) Agricultural-based commercial operations as described in section [205-2(d)(15)];
> 
>     (2) **Noises, odors, dust, and fumes emanating from a commercial agricultural or an aquacultural facility or pursuit**;
> 
>     (3) Operation of machinery and irrigation pumps;
> 
>     (4) Ground and aerial seeding and spraying;
> 
>     **(5) The application of chemical fertilizers, conditioners, insecticides, pesticides, and herbicides;** and
> 
>     (6) The employment and use of labor.
> 
> . . . .
> 
> "Nuisance" means any interference with reasonable use and enjoyment of land, including but not limited to smoke, odors, dust, noise, or vibration; provided that nothing in this chapter shall in any way restrict or impede the authority of the State to protect the public health, safety, and welfare. "Nuisance" as used in this chapter, includes all claims that meet the requirements of this definition regardless of whether a complainant designates such claims as brought in nuisance, negligence, trespass, or any other area of law or equity; provided that nuisance as used in this chapter does not include an alleged nuisance that involves water pollution or flooding.

Haw. Rev. Stat. § 165-2 (emphases added).

Plaintiffs argue that all fifty states have enacted some form of right to farm legislation, and "[t]hese laws, as the Supreme Courts of Idaho, Indiana, Vermont, and others have noted, are essentially a codification of the common law defense of 'coming to a nuisance.'" [Mem. in Opp. at 6 & n.15 (citing cases).] Plaintiffs argue that such laws only apply to pre-existing farming operations; those laws do not apply to farms that come to an existing community, or to existing farms that change their operation to a completely different method of production. Plaintiffs contend that the Farm Act does not apply to the GMO Test Fields because the Waimea community was in existence long before either Pioneer's operation or the Robinson Defendants' previous sugar cane operation. According to Plaintiffs, the Farm Act's statement of purpose in Haw. Rev. Stat. § 165-1 confirms this interpretation.

Section 165-1, titled "Findings and purpose," states:

> The legislature finds that **when nonagricultural land uses extend into agricultural areas**, farming operations often become the subject of nuisance lawsuits that may result in the premature removal of lands from agricultural use and may discourage future investments in agriculture. The legislature also finds that under the Hawaii State Planning Act, it is a declared policy of this State to "foster attitudes and activities conducive to maintaining agriculture as a major sector of Hawaii's economy." Accordingly, it is the purpose of this chapter to reduce the loss to the State of its agricultural resources by limiting the circumstances under which farming operations may be deemed to be a nuisance.

(Emphasis added.)  Further, the Farm Act's "Declaration of public purpose" states: "The preservation and promotion of farming is declared to be in the public purpose and deserving of public support."  Haw. Rev. Stat. § 165-3.  Plaintiffs emphasize that the Farm Act was enacted in 1982, and neither § 165-1 nor § 165-3 has ever been amended.[5]  [Mem. in Supp. of Motion at 17.]

To the extent that the instant Motion asks this Court to interpret the provisions of the Farm Act, this Court will apply the rules of statutory interpretation that the Hawai`i Supreme Court follows.  2/27/14 Order, 2014 WL 806224, at *13 (noting that this Court has diversity jurisdiction over the instant case and "is bound by the decisions of the highest state court" (some citations omitted) (quoting Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011))).

> First, the fundamental starting point for statutory interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

---

[5] Section 165-1 was amended in 1986, but the amendments were not substantive.  Compare Haw. Rev. Stat. § 165-1 (Supp. 1984) with Haw. Rev. Stat. § 165-1 (Supp. 1987).

7

> Peterson v. Hawaii Elec. Light Co., Inc., 85
> Hawai`i 322, 327-28, 944 P.2d 1265, 1270-71
> (1997), *superseded on other grounds by* HRS
> § 269-15.5 (Supp. 1999) (block quotation format,
> brackets, citations, and quotation marks omitted).
>
> In the event of ambiguity in a statute, "the
> meaning of the ambiguous words may be sought by
> examining the context, with which the ambiguous
> words, phrases, and sentences may be compared, in
> order to ascertain their true meaning." Id.
> (quoting HRS § 1-15(1) (1993)).  Moreover, the
> courts may resort to extrinsic aids in determining
> legislative intent, such as legislative history,
> or the reason and spirit of the law.  See HRS
> § 1-15(2) (1993).

State v. Bayly, 118 Hawai`i 1, 6-7, 185 P.3d 186, 191-92 (2008).

Nothing in the plain language of either § 165-4 or § 165-2 limit the Farm Act's protections to farming operations that existed in the affected area before the persons or entities making the nuisance complaint.  Section 165-4 expressly applies to "**any** farming operation" that "has been conducted in a manner consistent with generally accepted agricultural and management practices" ("GAMP").  (Emphasis added.)

Plaintiffs' position is that §§ 165-1 and 165-3 indicate that the impetus of the Farm Act was the "coming to the nuisance doctrine," and therefore that limitation must be read into all portions of the Farm Act.  First, this Court disagrees with Plaintiffs' interpretation of §§ 165-1 and 165-3.  Although the first sentence of § 165-1 observes that nuisance actions often result "when nonagricultural land uses extend into agricultural areas," the second sentence observes that it is part

8

of State policy to preserve "agriculture as a major sector of Hawaii's economy." In light of those observations, the third sentence of § 165-1 states that the purpose of Chapter 165 "to reduce the loss to the State of its agricultural resources by limiting the circumstances under which farming operations may be deemed to be a nuisance." There is nothing in either the third sentence of § 165-1 or § 165-3 that supports limiting the protections of the Farm Act to farming operations that existed before the development of nearby non-agricultural land uses. Interpreting the Farm Act in the manner that Plaintiffs suggest would violate the legislature's admonition that Chapter 165 "is remedial in nature and shall be liberally construed to effectuate its purposes." Haw. Rev. Stat. § 165-6.[6]

Further, an examination of the prior versions § 165-4 precludes the limited reading of the Farm Act that Plaintiffs advocate in the Motion. The current version of § 165-4 is drastically different from the original version, which was adopted in 1982:

> No court, official, public servant, or public employee shall declare any farming operation a nuisance for any reason if the following have been proven:

---

[6] In 1993, the legislature adopted § 165-6 and Haw. Rev. Stat. § 165-5. 1993 Haw. Sess. Laws Act 162, § 1 at 246. Section 165-5 allows a court to award attorneys' fees and costs, pursuant to Haw. Rev. Stat. § 607-14.5, if it finds that an action which alleges that a farming operation is a nuisance is frivolous.

9

>     (1) That the farming operation was not in violation of this section at its established date of operation;
>
>     (2) That the stated or implied basis for the nuisance complaint is that conditions have changed in the vicinity of the farming operations since its established date of operation;
>
>     (3) That the farm operation was lawfully in operation for at least one year prior to the nuisance complaint;
>
>     (4) That the alleged nuisance did not result from the negligent conduct or improper operation of the farming operation; or from any aspect of said operation which is determined to be injurious to public health or safety; and
>
>     (5) That the alleged nuisance does not involve water pollution or flooding.

Haw. Rev. Stat. § 165-4 (Supp. 1984). The concept of the "established date of operation" (which no longer exists in the Farm Act) was defined as:

> the date on which the farming operation commenced operation. If the physical facilities of the farming operation are subsequently expanded, the established date of operation for each expansion is deemed to be a separate and independent established date of operation established as of the date of commencement of the expanded operation, and the commencement of the expanded operation shall not divest the farming operation of a previously established date of operation.

Haw. Rev. Stat. § 165-2(3) (Supp. 1984).

Thus, the original version of § 165-4 implemented the "coming to the nuisance" principle that Plaintiffs now advocate. In 1986, however, the legislature amended § 165-4 to read, in

pertinent part:

>> (a) No court, official, public servant, or public employee shall declare any farming operation a nuisance for any reason if all of the following have been proven:
>>
>> (1) That during the twelve-month period preceding the filing of the nuisance complaint with a court or other adjudicative public body, the farming operation complied with statutes, ordinances, regulations, or rules relevant to the nuisance complaint; and
>>
>> (2) That the farming operation has used reasonable care in conducting its operation.

Haw. Rev. Stat. § 165-4(a) (Supp. 1987). Based on its plain language, the post-1986 version of § 165-4 clearly departs from the "coming to the nuisance" doctrine. The post-1986 version abandoned the "established date of operation" analysis in favor of a twelve-month compliance analysis. The legislature adopted the current version of § 165-4 in 2001. 2001 Haw. Sess. Laws Act 26, § 2 at 48-49. The current version of § 165-4 has even more expansive protections; it applies to any farming operation that "has been conducted in a manner consistent with" GAMP.

Having reviewed the plain language of the current version of § 165-4, in comparison to the plain language of the prior versions, this Court CONCLUDES that the statute unambiguously applies to all farming operations which comply with GAMP, regardless of when the farm began its operations.

This Court therefore rejects Plaintiffs' argument that the protections of the Farm Act only apply to farming operations that pre-existed the nearby non-agricultural land user who alleges that the farming operation is causing a nuisance. Although Plaintiffs argue that committee reports regarding the adoption of, and amendments to, the Farm Act support their position, [Mem. in Supp. of Motion at 17-20,] this Court has concluded that the plain language of § 165-4 is unambiguous. Thus, this Court's sole duty is to give effect to the plain meaning of the statute. See Bayly, 118 Hawai`i at 6, 185 P.3d at 191. Courts only "resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law" when the statute is ambiguous. See id. at 7, 185 P.3d at 192 (citing HRS § 1-15(2) (1993)).

The parties dispute various factual representations that Plaintiffs made regarding historic nature of the Waimea community. However, these disputes are not material because, in light of this Court's rulings regarding the Farm Act, these disputes will not affect the outcome of the case. See Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) ("A fact is material if it could affect the outcome of the suit under the governing substantive law."). This Court therefore finds that there are no genuine disputes of material fact, and it concludes that Plaintiffs have failed to establish that they are

entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a) (stating that a movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

This Court emphasizes that, at this time, it makes no findings or conclusions regarding the merits of Defendants' defense under the Farm Act.  In order for the Farm Act to apply, Defendants must prove, *inter alia*, that "the farming operation has been conducted in a manner consistent with" GAMP.  See § 165-4.  That issue was not before this Court in the instant Motion.

## **CONCLUSION**

On the basis of the foregoing, Plaintiffs' Motion for Partial Summary Judgment to Dismiss Defendant DuPont Pioneer's Third Affirmative Defense Based on the Hawaii Right to Farm Act, Hawaii Revised Statutes, Chapter 165, filed May 23, 2014, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 30, 2014.



      /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JIM AANA, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00231 LEK-BMK; JEFFREY CASEY, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00655 LEK-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS DEFENDANT DUPONT PIONEER'S THIRD AFFIRMATIVE DEFENSE BASED ON THE HAWAII RIGHT TO FARM ACT, HAWAII REVISED STATUTES, CHAPTER 165**