IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JIM AANA, et al., on behalf of themselves and all others similarly situated, | CIVIL NO. 12-00231 LEK-BMK<br>CIVIL NO. 12-00665 LEK-BMK |

JIM AANA, et al., on behalf )
of themselves and all others )   CIVIL NO. 12-00231 LEK-BMK
similarly situated, )   CIVIL NO. 12-00665 LEK-BMK
 )
      Plaintiffs, )
 )
    vs. )
 )
PIONEER HI-BRED )
INTERNATIONAL, INC., a DuPont )
Business and Iowa )
Corporation, GAY & ROBINSON, )
INC., a Hawaii corporation; )
ROBINSON FAMILY PARTNERS, a )
general partnership )
registered in Hawaii; and DOE )
DEFENDANTS 1-10, )
 )
      Defendants. )
_____ )
JEFFREY CASEY, et al., on )
behalf themselves and all )
others similarly situated, )
 )
      Plaintiffs, )
 )
    vs. )
 )
PIONEER HI-BRED )
INTERNATIONAL, INC., et al., )
 )
      Defendants. )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
<u>COUNTS I, II, IV, V, AND VI OF THE THIRD AMENDED COMPLAINT</u>**

On April 29, 2014, Defendants Pioneer Hi-Bred

International, Inc.,[1] Gay & Robinson, Inc. ("Gay & Robinson" or

_____

   [1] Pioneer Hi-Bred International, Inc., is now known as
(continued...)

"G&R"), and Robinson Family Partners[2] (all collectively

"Defendants") filed their Motion for Partial Summary Judgment as

to Counts I, II, IV, V, and VI of the Third Amended Complaint

("Motion"). [Dkt. no. 718.] Plaintiffs Jim Aana, et al., on

behalf of themselves and all others similarly situated

(collectively, "Plaintiffs"),[3] filed a "limited opposition" to

the Motion on August 12, 2014,[4] and Defendants filed their reply

on August 19, 2014. [Dkt. nos. 791, 794.] This matter came on

---

[1](...continued)
DuPont Pioneer. [Third Amended Complaint (Property Related
Claims) ("Third Amended Complaint"), filed 9/6/13 (dkt. no. 331),
at ¶ 5; Pioneer's Answer to Third Amended Complaint ("Pioneer's
Answer"), filed 3/21/14 (dkt. no. 679), at ¶ 5.] The Court will
refer to both entities as "Pioneer."

[2] The Court will refer to Gay & Robinson and Robinson Family
Partners collectively as "the Robinson Defendants."

[3] Insofar as the two cases have been consolidated, the Court
will refer to the plaintiffs in both cases collectively as
"Plaintiffs." When necessary, this Court will distinguish
between "the Aana Plaintiffs" and "the Casey Plaintiffs." The
defendants are the same in both cases.

[4] Plaintiffs initially filed an opposition to the instant
Motion on June 2, 2014. [Dkt. no. 751.] At the time, it was set
for hearing on June 23, 2014. Plaintiffs stated, *inter alia*,
that the parties agreed to continue the hearing on the Motion as
to Counts I, II, IV, and V until after the parties conducted
depositions related to what the Robinson Defendants knew or
should have known about Pioneer's farming operations. This Court
continued the hearing on the instant Motion, in its entirety, to
September 2, 2014. [Order Granting in Part and Denying in Part
the Parties' Request to Continue the Hearing on a Portion of
Defendants' Motion for Partial Summary Judgment as to Counts I,
II, IV, V, and VI of the Third Amended Complaint, filed 6/9/14
(dkt. no. 756).]

for hearing on September 2, 2014.[5]

On September 3, 2014, this Court issued its Order Granting in Part and Denying in Part Plaintiffs' Request for Fed. R. Civ. P. 56(d) Continuance, which allowed the parties to file supplemental memoranda. [Dkt. no. 808.] Plaintiffs filed their supplemental memorandum in opposition to the Motion ("Plaintiffs' Supplemental Memorandum") on September 17, 2014, and Defendants filed their response ("Defendants' Supplemental Memorandum") on September 24, 2014. [Dkt. nos. 818, 822.]

On October 31, 2014, this Court issued an entering order ruling on the Motion ("10/31/14 EO Ruling"). [Dkt. no. 846.] The instant Order supersedes the 10/31/14 EO Ruling. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below. Specifically, this Court: GRANTS summary judgment in favor of the Robinson Defendants as to all claims against them; GRANTS summary judgment in favor of Pioneer as to the remaining portion of Count VI; and DENIES the Motion to

---

[5] At the hearing, the Court also heard arguments regarding Plaintiffs' Motion for Partial Summary Judgment to Dismiss Defendant DuPont Pioneer's Third Affirmative Defense Based on the Hawaii Right to Farm Act, Hawaii Revised Statutes, Chapter 165, filed May 23, 2014. [Dkt. no. 745.] The Court issued an order denying that motion on September 30, 2014 ("9/30/14 Summary Judgment Order"). [Dkt. no. 825.] The 9/30/14 Summary Judgment Order is also available at 2014 WL 4956489.

the extent that it seeks summary judgment in favor of Pioneer as
to Count II.

<h2 style="text-align:center">BACKGROUND</h2>

The relevant factual and procedural background of this
case is set forth in this Court's: 1) August 9, 2013 Order
Granting in Part and Denying in Part Defendants Gay & Robinson,
Inc. and Robinson Family Partners' Motion to Dismiss Plaintiffs'
Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6); and
Granting in Part and Denying in Part Defendants Gay & Robinson,
Inc., Robinson Family Partners, and Pioneer Hi-Bred
International, Inc.'s Motion to Dismiss Plaintiffs' Second
Amended Complaint ("8/9/13 Dismissal Order"); and 2) February 27,
2014 Order Granting in Part and Denying in Part Defendants'
Motion to Dismiss Third Amended Complaint (Rule 12(b)(6))
("2/27/14 Dismissal Order").  [Dkt. nos. 224, 608.[6]]

The crux of Plaintiffs' Third Amended Complaint is that
Plaintiffs have allegedly suffered various forms of property
damage as a result of Pioneer's commercial farming operation at
the Waimea Research Center.  [Third Amended Complaint at ¶ 16.]
The Third Amended Complaint alleges the following claims: (1)
negligence against all Defendants for failure to use due care
(Count I); (2) negligence against all Defendants for failure to

---

[6] The 8/9/13 Dismissal Order is available at 965 F. Supp. 2d
1157, and the 2/27/14 Dismissal Order is available at 2014 WL
806224.

investigate and warn (Count II); (3) strict liability against

Pioneer (Count III); (4) trespass against all Defendants

(Count IV); (5) nuisance against all Defendants (Count V); and

(6) negligent and intentional misrepresentation against Pioneer

(Count VI).

After the 2/27/14 Dismissal Order, the remaining claims

are: 1) the claims in Counts I, II, IV, and V against the

Robinson Defendants based on the sublease dated April 1, 2010

between Pioneer and Gay & Robinson ("the 2010 Sublease"); 2) the

claims in Counts I, II, IV, and V against Pioneer for damages

from December 13, 2009 forward for the Aana Plaintiffs and from

May 23, 2010 forward for the Casey Plaintiffs; and the portion of

Count VI regarding the letter dated December 2011 that Pioneer

issued in response to complaints from the Waimea community

("December 2011 Letter").  2014 WL 806224, at *14.

In the instant Motion, Defendants seek summary judgment

as to:

-the portion of Count II "based on Plaintiffs' assertion that
     Pioneer had a duty to warn nearby landowners of 'latent
     defects' in the property farmed by Pioneer[;]" [Mem. in
     Supp. of Motion at 1;]

-the portion of Count VI "based on Pioneer's alleged
     misrepresentation that it 'had been following reasonable
     agricultural practices in 2010[;]'" [id. at 2;] and

-Plaintiffs' claims in Counts I, II, IV, and V against the
     Robinson Defendants [id.].

## DISCUSSION

## I.  **Plaintiffs' Supplemental Concise Statement of Facts**

At the outset, the Court notes that Plaintiffs' concise statement of facts in support of their Supplemental Memorandum ("Plaintiffs' Supplemental CSOF"), [filed 9/17/14 (dkt. no. 819),] does not include a declaration of counsel attesting to the authenticity of the exhibits, nor do the exhibits which are excerpts of deposition transcripts contain court reporter's certifications.  See Local Rule LR56.1(h) ("Affidavits or declarations setting forth facts and/or authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement."); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 774 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.").

In spite of the lack of proper authentication of exhibits, this Court declines to strike Plaintiffs' exhibits because, even if this Court considers the exhibits, Plaintiffs still fail to raise a triable issue of fact as to the Robinson Defendants' liability, for the reasons set forth *infra*.  This Court, however, CAUTIONS the parties that all exhibits filed in connection with future motions must be properly authenticated or

6

this Court will not consider them.

## II.  Count VI - Negligent and Intentional Misrepresentation

In the instant Motion, Defendants argue that they are entitled to summary judgment as to Count VI because: Plaintiffs have not identified any evidence of detrimental reliance on the December 2011 Letter;[7] and Plaintiffs' alleged damages could not have been caused by the alleged misrepresentation in the December 2011 Letter because their damages precede December 2011. [Mem. in Supp. of Motion at 7-15.]

Plaintiffs respond that they "agree to voluntarily withdraw Count VI" in light of this Court's ruling limiting "Plaintiffs' claim under a six-year limitations period to only include representations made with Pioneer's December 2011 letter." [Mem. in Opp. at 4.]  This Court construes Plaintiffs' offer to withdraw Count VI as an admission that there are no genuine issues of material fact for trial as to their misrepresentation claims.  See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  Based on Plaintiffs' admission, and for the reasons set forth in the

---

[7] In the 8/9/13 Dismissal Order, this Court listed the elements of an intentional or fraudulent misrepresentation claim and a negligent misrepresentation claim.  Reliance is a required element of both claims.  965 F. Supp. 2d at 1178.

2/27/14 Dismissal Order, 2014 WL 806224, at *12, and the 8/9/13

Dismissal Order, 965 F. Supp. 2d at 1182, this Court CONCLUDES

that Defendants are entitled to summary judgment as to Count VI.

Defendants' Motion is GRANTED as to Count VI.

## III. **Plaintiffs' Claims Against the Robinson Defendants**

The Motion also argues that the Robinson Defendants are

entitled to summary judgment as to all of the remaining claims

against them.  Defendants emphasize that Plaintiffs' theory of

the Robinson Defendants' liability is that they are vicariously

liable for the acts of their lessee, Pioneer.  [Mem. in Supp. of

Motion at 15.]

In the 8/9/13 Dismissal Order, this Court stated:

> In order to establish the Robinson Defendants'
> liability for [their negligence, trespass, and
> common law nuisance] claims, Plaintiffs will have
> to prove that, when they entered into the lease
> with Pioneer, the Robinson Defendants:
> (1) consented to Pioneer's unlawful farming
> practices or knew, or had reason to know, Pioneer
> would carry on unlawful practices; and (2) knew or
> should have known that Pioneer's activities would
> necessarily involve or were already causing a
> nuisance as defined under the Hawai`i Right to
> Farm Act.

965 F. Supp. 2d at 1177.  As to the remaining claims against the

Robinson Defendants, Plaintiffs allege that, at the time of the

2010 Sublease, "the Robinson Defendants knew and consented to

Pioneer's operating without the required permits and exemptions

and that Waimea residents had already presented complaints to

Pioneer and the Robinson Defendants about erosion and drift from

8

the GMO Test Fields." See 2/27/14 Dismissal Order, 2014 WL
806224, at *6. In the instant Motion, Defendants contend that
Plaintiffs have not identified evidence to support these
allegations.

### A. <u>Failure to Maintain Required Permits or Exemptions</u>

The Court first turns to Defendants' assertion that:
"The Robinson Defendants did not have notice of or consent to
Pioneer farming without a permit or exemption." [Defs.' Separate
Concise Statement of Facts in Supp. of Motion, filed 4/29/14
(dkt. no. 719) ("Defs.' CSOF"), at ¶ 7 (citing Defs.' CSOF, Decl.
of Charles Okamoto ("Okamoto Decl.") at ¶¶ 4-5,[8] Decl. of Adam
Friedenberg ("Friedenberg Decl."), Exh. F[9] at 22-23).]
Defendants note that the 2010 Sublease required Pioneer to
"maintain in effect all permits, approvals, licenses, consents or
other entitlements required" under the applicable laws. [Okamoto
Decl., Exh. 1 (2010 Sublease), Exh. B (General Terms and
Conditions of Sublease) at § 9.6.] Defendants emphasize that the
2010 Sublease does not require Pioneer to obtain prior approval
from the Robinson Defendants for any permit application. [Mem.
in Supp. of Motion at 17.]

---

[8] Charles Okamoto is the president of Gay & Robinson.
[Okamoto Decl. at ¶ 1.]

[9] Exhibit F is an excerpt from the transcript of Plaintiff
Klayton K. Kubo's February 7, 2013 deposition. [Dkt. no. 719-
21.]

Plaintiffs respond that: "The relevant issue is not
whether the Robinsons had notice or consented to farming without
a permit, but whether the Robinsons knew or should have known
Pioneer's activities in Waimea would necessarily result in a
nuisance."  [Pltfs.' Suppl. CSOF at ¶ 1.]  Plaintiffs also call
the issue of whether the Robinson Defendants "reviewed Pioneer's
permits" a "red herring."  [Pltfs.' Suppl. Mem. at 1.]

Although Plaintiffs' arguments suggest that the issue
of whether the Robinson Defendants had notice of or consented to
Pioneer's unpermitted operations is irrelevant to Plaintiffs'
claims, the Third Amended Complaint contains specific allegations
about Pioneer's failure to obtain required permits or exemptions.
Plaintiffs include these allegations as part of their argument
that Pioneer and the Robinson Defendants failed to follow
generally accepted agricultural and management practices
("GAAMP") in 2011.  See, e.g., Third Amended Complaint at ¶¶ 83-
94.[10]  Reading the Third Amended Complaint in conjunction with
the 8/9/13 Dismissal Order, Plaintiffs' claims against the
Robinson Defendants are based - at least in part - on the

---

[10] For example, Plaintiffs allege that the Kauai County
Engineer's March 2011 Notice of Violation "specifically cite[d]
Pioneer and the Robinson [Defendants] for Pioneer's grubbing of
the GMO Test Fields without a permit" and, until the Notice of
Violation, Plaintiffs "[d]id not know that Pioneer failed to
obtain grubbing permits or an Agricultural Exemption for
Pioneer's 1100 acres until after the March 2011 Notice of
Violation[.]"  [Third Amended Complaint at ¶¶ 86-87 (emphasis
omitted).]

allegation that, at the time of the 2010 Sublease, the Robinson Defendants: knew or should have known that Pioneer would operate without the required permits or agricultural exemptions; or otherwise consented to Pioneer's operation without the required permits or exemptions.

Plaintiffs' response to paragraph 7 of Defendants' CSOF does not directly contradict Defendants' assertion that the Robinson Defendants neither had notice of nor consented to Pioneer's operation without required permits or exemptions. See Pltfs.' Suppl. CSOF at ¶ 1. Further, Plaintiffs' response does not identify any evidence which indicates that the Robinson Defendants did have such notice or did give such consent. This Court can therefore construe Defendants' CSOF paragraph 7 as being admitted. See Local Rule LR56.1(b), (g). However, even if this Court does not deem paragraph 7 as admitted, Plaintiffs have not raised a triable issue of fact as to the issue of whether the Robinson Defendants had notice of, or consented to, Pioneer's operation without required permits or exemptions.

Plaintiffs' Supplemental Memorandum argues that this Court should not consider the statements in the Okamoto Declaration regarding the Robinson Defendants' knowledge or consent regarding Pioneer's permits and exemptions because other statements in the declaration contradict Mr. Okamoto's deposition

testimony.[11]  Plaintiffs argue that, at a minimum, the
contradictions create a genuine issue of material fact as to
Mr. Okamoto's credibility and as to whether the Robinson
Defendants knew or should have known that Pioneer did not have
the permits required by Kauai Ordinance 808.  [Pltfs.' Suppl.
Mem. at 7-9.]

          Mr. Okamoto has been employed with Gay & Robinson since
1998.  As its current president, he is responsible for, *inter*
*alia*, "oversight of property leasing and management issues."
[Okamoto Decl. at ¶¶ 1-2.]  The Okamoto Declaration states that
"[i]n 2002, 2005 and 2010, [he] was the principal negotiator for
G&R with respect to lease negotiations with" Pioneer.  [Id. at
¶ 2.]  In his deposition, Mr. Okamoto testified that he was **not**
involved with the negotiations of the 2002 amendment or the 2005
amendment.  Instead, after the negotiations, but before the
execution, he was asked to give his input on the draft.  [Pltfs.'
Excerpts of Okamoto Depo. at 23-25, 98-99.]  In considering
Defendants' Motion, this Court must view the record in the light
most favorable to Plaintiffs.  See Crowley v. Bannister, 734 F.3d
967, 976 (9th Cir. 2013).  This Court will therefore assume that
the Okamoto Declaration is mistaken about his involvement in the

---

[11] Exhibit 5 to Plaintiffs' Supplemental CSOF is Plaintiffs'
excerpts of the transcript of Mr. Okamoto's July 9, 2014
deposition ("Plaintiffs' Excerpts of Okamoto Deposition").  [Dkt.
no. 819-5.]

2002 and 2005 lease negotiations.  Even with that assumption,
however, Plaintiffs have not identified any evidence
contradicting Mr. Okamoto's involvement in the negotiations of
the 2010 Sublease, which is the document at issue in Plaintiffs'
remaining claims against the Robinson Defendants.  What the
Robinson Defendants had knowledge of, or consented to, at the
time of the 2002 and 2005 negotiations is only relevant as
evidence of what they knew or should have known about at the time
of the 2010 negotiations.  Plaintiffs have not identified any
evidence indicating that, at the time of the 2010 negotiations,
the Robinson Defendants consented to, knew about, or should have
known about, Pioneer's operation without required permits or
exemptions.

      Even assuming a genuine issue of fact as to who was the
Robinson Defendants' principal negotiator for the 2002 and 2005
negotiations, the dispute is not material.  "A fact is material
if it could affect the outcome of the suit under the governing
substantive law."  <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d
975, 987 (9th Cir. 2006).  Any dispute about who was involved in
the 2002 and 2005 negotiations  does not affect the outcome of
Plaintiffs' claims against the Robinson Defendants, which turn
upon what the Robinson Defendants consented to, knew about, or
should have known about, at the time of the 2010 negotiations.

This Court finds that Plaintiffs have not raised a genuine issue of material fact as to whether, at the time they entered into the 2010 Sublease, the Robinson Defendants: knew or should have known that Pioneer would operate without the required permits or agricultural exemptions; or otherwise consented to such operation. This Court therefore CONCLUDES that the Robinson Defendants are entitled to judgment as a matter of law as to the portions of Plaintiffs' claims against them regarding Pioneer's operation without required permits or agricultural exemptions. This Court GRANTS Defendants' Motion as to those portions of Counts I, II, IV, and V.

**B.    Notice of Nuisance**

Plaintiffs contend that there is at least a triable issue of fact as to the question of whether, at the time they entered into the 2010 Sublease, the Robinson Defendants: knew or should have known that Pioneer's farming operations would necessarily result in a nuisance or was already resulting in a nuisance; or consented to the operation of a nuisance.

Plaintiffs point out that Pioneer's 1998 lease, in which Gay & Robinson is identified as the lessor and Robinson Family Partners as the owner ("the 1998 Lease"), recognizes that each entity "in its agricultural operation works twenty-four (24) hours of each day and, therefore, will have noise, smoke, soot, dust, lights, noxious vapors and odors twenty-four (24) hours of

the day." [Errata to Pltfs.' Suppl. CSOF, Exh. 1 at Land Lease Agreement, dated 8/1/98, ¶ 8.] Further, they agreed that each party would "not be responsible or liable . . . for the consequences resulting from the creation and discharge of such noise, smoke, soot, dust, lights, noxious vapors and odors in the normal course of operations, unless such adverse effects are caused by the gross negligence or willful conduct of the other Party." [Id.] Mark Miller, Pioneer's Fed. R. Civ. P. 30(b)(6) designee regarding lease negotiations with the Robinson Defendants, testified that the purpose of this provision was to ensure that both Pioneer and the Robinson Defendants would be able to conduct their normal farming operations because this was the first time they would be operating adjacent to one another. [Pltfs.' Suppl. CSOF, Exh. 2 (Excerpts of Trans. of 8/26/14 Depo. of Mark Miller) at 56-57.] Plaintiffs argue that this is evidence that the Robinson Defendants knew, at the time they entered into the 2010 Sublease, that Pioneer's farming operations would necessarily create "dust, lights, noxious vapors, and odors." [Pltfs.' Suppl. Mem. at 5.]

Plaintiffs also argue that the record indicates that, at the time of the 2002 lease negotiations: "Pioneer's agricultural research was already causing an unreasonable interference for Waimea[;]" Pioneer planned to raise issues related to that interference during the negotiations; and Pioneer

did raise those concerns to Gay & Robinson.  [Id. at 5-7.]
Plaintiffs present an email, dated June 13, 2002, in which
Mark Miller circulated a document titled "Robinson Lease
Negotiations Plan - Confidential - Draft for Comment" ("2002
Negotiation Plan").  [Pltfs.' Suppl. CSOF, Exh. 3.]  The 2002
Negotiation Plan set forth a list of "Key Lease Negotiation
Points," which included:

> 1.   We appreciate the Robinson's.
>
>> a.   Cooperation and commitment to
>>      agriculture.
>> . . . .
>> c.   Their concern for the environment is to
>>      be admired.
>> . . . .
>
> 2.   We share their values.
>
>> a.   Land stewardship - DuPont most socially
>>      responsible company.
>> b.   This generation does not own the land,
>>      we are borrowing it from the future.
>> . . . .
>
> . . . .
>
> 4.   We have had some problems that we hope can be
>      fixed.
>
>> a.   Dust control - community relations.
>> b.   Wash-outs.
>> . . . .
>
> 5.   We would like to expand our presence on your
>      ground, but we need your help in the spirit
>      of our long-term relationship.
>> . . . .
>> f.   Air/water quality community concerns.
>> . . . .
>
> . . . .

16

```
7.    What we need to do is jointly develop a plan
      to make it happen.

      a.    Develop joint plan to improve the
            existing farm.
            i.    Better roads for dust control.
            ii.   Better erosion control
                  1.    Terraces
                  2.    Risers
      . . . .
. . . .
```

[Id. at 2-3.]  As evidence that Pioneer actually raised these

concerns with Gay & Robinson during the 2002 negotiations,

Plaintiffs point to the Master Farm Improvement Plan ("2002

Improvement Plan") that Pioneer and Gay & Robinson entered into

following the negotiations.  [Pltfs.' Suppl. CSOF, Exh. 4.]  In

the 2002 Improvement Plan, Pioneer and Gay & Robinson "agree[d]

to make improvements to the Premises as defined in the [1998

Lease].  The purpose of the work is to increase the overall

utilization of the Premises."  [Id. at 1.]

        In response to Plaintiffs' Supplemental CSOF,

Defendants argue that Plaintiffs have presented no evidence that

Pioneer actually discussed the points in the 2002 Negotiation

Plan with the Robinson Defendants.  [Defs.' Response to Pltfs.'

Suppl. CSOF, filed 9/24/14 (dkt. no. 823), at ¶ 3.]  In fact,

Mr. Miller testified that he did not recall raising the Waimea

community's concerns about dust and the air and water quality

with the Robinson Defendants as part of the 2002 negotiations.

[Defs.' Suppl. Mem., Decl. of Clement L. Glynn ("Glynn Decl."),

Exh. B (Excerpts of Trans. of 8/26/14 Depo. of Mark Miller) at 88.[12]]  Construing the record in the light most favorable to Plaintiffs, this Court will assume - for purposes of the instant Motion only - that Pioneer discussed the 2002 Negotiation Plan with the Robinson Defendants during the 2002 lease negotiations. However, Plaintiffs' evidence, at best, only establishes that, at the time of the 2010 negotiations, the Robinson Defendants knew that: 1) Pioneer's farming operations created "noise, smoke, soot, dust, lights, noxious vapors and odors[;]" and 2) the Waimea community had concerns about dust control and air quality. That alone is not enough to raise a genuine issue of material fact as to the Robinson Defendants' liability.

> Under the Hawai`i Right to Farm Act ("the Farm Act"):
>
> No court, official, public servant, or public employee shall declare any farming operation a nuisance for any reason if the farming operation has been conducted in a manner consistent with generally accepted agricultural and management practices.  There shall be a rebuttable presumption that a farming operation does not constitute a nuisance.

Haw. Rev. Stat. § 165-4.  The key terms are defined as follows:

> "Farming operation" means a commercial agricultural . . . facility or pursuit conducted, in whole or in part, including the care and production of livestock and livestock products, poultry and poultry products, apiary products, and

---

[12] This Court notes that Defendants attached the Glynn Declaration, and its exhibits, to Defendants' Supplemental Memorandum instead of to Defendants' Supplemental CSOF as required by Local Rule LR56.1(h).

plant and animal production for nonfood uses; the
planting, cultivating, harvesting, and processing
of crops; and the farming or ranching of any plant
or animal species in a controlled salt, brackish,
or freshwater environment. "Farming operation"
includes but shall not be limited to:

> (1) Agricultural-based commercial operations
> as described in section [205-2(d)(15)];
>
> (2) **Noises, odors, dust, and fumes emanating
> from a commercial agricultural or an
> aquacultural facility or pursuit;**
>
> (3) Operation of machinery and irrigation
> pumps;
>
> (4) Ground and aerial seeding and spraying;
>
> (5) **The application of chemical fertilizers,
> conditioners, insecticides, pesticides, and
> herbicides;** and
>
> (6) The employment and use of labor.

. . . .

"Nuisance" means any interference with reasonable
use and enjoyment of land, including but not
limited to smoke, odors, dust, noise, or
vibration; provided that nothing in this chapter
shall in any way restrict or impede the authority
of the State to protect the public health, safety,
and welfare. "Nuisance" as used in this chapter,
includes all claims that meet the requirements of
this definition regardless of whether a
complainant designates such claims as brought in
nuisance, negligence, trespass, or any other area
of law or equity; provided that nuisance as used
in this chapter does not include an alleged
nuisance that involves water pollution or
flooding.

Haw. Rev. Stat. § 165-2 (brackets in original) (emphases added).

Plaintiffs previously argued that the Farm Act does not apply in

this case because the Waimea residential community predated both

19

Pioneer's farming of the GMO Test Fields and the Robinson Defendants' historic sugar cane farming on the property, but this Court rejected that argument.  9/30/14 Summary Judgment Order, 2014 WL 4956489.

Plaintiffs have presented some evidence that, at the time of the 2010 negotiations, the Robinson Defendants knew about "noise, smoke, soot, dust, lights, noxious vapors and odors" from Pioneer's farming operations, and they knew about community concerns regarding dust control and air quality.  However, all of these are elements of Pioneer's "farming operation," as that term is defined in the Farm Act.  See § 165-2.  They cannot support a nuisance, negligence, or trespass claim if Pioneer was conducting its operations "in a manner consistent with" GAAMP.  See § 165-4. Thus, Plaintiffs' prima facie case for their claims against the Robinson Defendants requires them to prove that, at the time of the 2010 Sublease negotiations, the Robinson Defendants consented to, knew about, or should have known about Pioneer's failure to follow GAAMP at the Waimea Research Center.  In order for Plaintiffs' claims against the Robinson Defendants to survive summary judgment, Plaintiffs must identify evidence which creates a genuine dispute of material fact as to the issue of the Robinson Defendants' consent and/or knowledge.

Even viewing the record in the light most favorable to Plaintiffs, this Court finds that Plaintiffs have not identified

any evidence which indicates that the Robinson Defendants consented to, knew about, or should have known about Pioneer's failure to comply with GAAMP.[13]  This Court therefore FINDS that there is no genuine dispute of material fact as to the Robinson Defendants' liability for Pioneer's farming operations at the Waimea Research Center, and this Court CONCLUDES that the Robinson Defendants are entitled to judgment as a matter of law. This Court GRANTS summary judgment in favor of the Robinson Defendants as to all of the remaining claims against them.

III. **Count II - Negligent Failure to Investigate and Warn**

Defendants also seek summary judgment as to the portion of Count II "based on Plaintiffs' assertion that Pioneer had a duty to warn nearby landowners of 'latent defects' in the property farmed by Pioneer."  [Mem. in Supp. of Motion at 1.] Defendants contend that, under Hawai`i law, "'failure to warn' is cognizable primarily in the product liability context."  [Id. at 4-5 (citing Acoba v. General Tire, Inc., 92 Hawai`i 1, 18, 986 P.2d 288, 305 (Haw. 1999) (discussing failure to warn theory in context of a manufacturer's duty to warn of "any known dangers

_____

[13] This Court emphasizes that nothing in this Order should be construed as either a finding on or an inclination regarding the merits of Plaintiffs' claim that Pioneer's farming operation at the Waimea Research Center violates GAAMP.  This Order merely finds that, even assuming that Plaintiffs can establish Pioneer's violation of GAAMP, Plaintiffs have not identified sufficient evidence to survive summary judgment as to their claims asserting that the Robinson Defendants are liable for Pioneer's violation.

which the user of **its product** would not ordinarily discover")
(emphasis Defendants')).]  Plaintiffs respond that a failure to
warn claim is a cognizable negligence claim under Kajiya v.
Department of Water Supply, 629 P.2d 635, 639 (Haw. 1981).  [Mem.
in Opp. at 2 & n.2.]

First, the mere fact that the failure to warn claim is
well-defined in Hawai`i case law regarding products liability
does not necessarily mean that the claim is only cognizable in
that context.  Nothing in Acoba expressly precludes a plaintiff
from bringing a failure to warn claim in another type of case.
This Court agrees with Plaintiffs that, in light of Kajiya, a
failure to warn claim is not limited to the products liability
context.

This Court has cited Kajiya in analyzing whether
Pioneer had a duty to warn regrading its pesticide use.  [Order
Denying Plaintiffs' Motion for Preliminary Injunction and Partial
Summary Judgment for DuPont Pioneer's Misuse of Bee-Toxic
Pesticides, filed 6/30/14 (dkt. no. 770) ("6/30/14 Summary
Judgment Order"), at 16-17.]  Kajiya recognizes that duties arise
from foreseeable harm to property, not only from foreseeable harm
to persons.  2 Haw. App. at 224, 629 P.2d at 639 ("While we agree
that the Board of Water Supply's duty to humans is primary, we
hold that it has a secondary duty to a human's property, which
may include his pet fish.").

In addition, this district court has cited <u>Kajiya</u> for the proposition that "the duty to warn against unusual hazards has long been recognized as a source of tort liability." <u>Barber v. Ohana Military Communities, LLC</u>, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *9 (D. Hawai`i July 15, 2014). In <u>Barber</u>, this district court denied the defendants' motion to dismiss, *inter alia*, the plaintiffs' claim alleging negligent failure to warn. That claim alleged that the defendants "were in control of the housing at Marine Corp Base Hawaii and failed to disclose that the soil was contaminated with pesticides and presented health risks." <u>Id.</u> (citation omitted). The district judge ruled that the plaintiffs "stated a claim for negligence based on [the d]efendants' alleged failure to warn [the p]laintiffs about the pesticide-contaminated soil." <u>Id.</u>

This Court agrees with the district court in <u>Barber</u> that, pursuant to <u>Kajiya</u>, a plaintiff states a cognizable negligence claim when he alleges that the defendant controlled an unusual hazard and failed to warn the plaintiff when it was foreseeable that he would be harmed by the hazard. Further, as previously noted, <u>Kajiya</u> recognizes that the foreseeable harm to the plaintiff can include harm to his property. This Court therefore rejects Defendants' argument that a failure to warn claim is only cognizable in the products liability context.

Having reviewed the record in this case in the light most favorable to Plaintiffs, this Court FINDS that there are genuine issues of material fact as to whether Pioneer violated its duty to warn persons whose properties could be subjected to foreseeable harm as a result of unusual hazards within Pioneer's control. This Court therefore DENIES Defendants' Motion to the extent that the Motion seeks summary judgment in favor of Pioneer as to Count II.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion for Partial Summary Judgment as to Counts I, II, IV, V, and VI of the Third Amended Complaint, filed April 29, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as this Court: grants summary judgment in favor of the Robinson Defendants as to all remaining claims against them; and grants summary judgment in favor of Pioneer as to the remaining portion of Count VI. The Motion is DENIED to the extent that it seeks summary judgment in favor of Pioneer as to Count II.

Insofar as there are no remaining claims against Defendants Gay & Robinson, Inc. and Robinson Family Partners, this Court DIRECTS the Clerk's Office to terminate them as parties. The only remaining claims in this case are Counts I, II, IV, and V against Pioneer for damages from December 13, 2009 forward for the Aana Plaintiffs and from May 23, 2010 forward for

the Casey Plaintiffs.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, November 26, 2014.



           /s/ Leslie E. Kobayashi
          Leslie E. Kobayashi
          United States District Judge

**JIM AANA, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00231 LEK-BMK; JEFFREY CASEY, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00655 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS I, II, IV, V, AND VI OF THE THIRD AMENDED COMPLAINT**