IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JIM AANA, et al., on behalf ) CIVIL NO. 12-00231 LEK-BMK
of themselves and all others ) CIVIL NO. 12-00665 LEK-BMK
similarly situated, )
)
      Plaintiffs, )
)
   vs. )
)
PIONEER HI-BRED )
INTERNATIONAL, INC., a DuPont )
Business and Iowa )
Corporation, GAY & ROBINSON, )
INC., a Hawaii corporation; )
ROBINSON FAMILY PARTNERS, a )
general partnership )
registered in Hawaii; and DOE )
DEFENDANTS 1-10, )
)
      Defendants. )
_____ )
JEFFREY CASEY, et al., on )
behalf themselves and all )
others similarly situated, )
)
      Plaintiffs, )
)
   vs. )
)
PIONEER HI-BRED )
INTERNATIONAL, INC., et al., )
)
      Defendants. )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION IN LIMINE NO. 2; AND DENYING PLAINTIFFS'
MOTION IN LIMINE NO. 1 AND MOTION IN LIMINE NO. 2**

On October 15, 2014: Defendant Pioneer Hi-Bred

International, Inc. ("Pioneer") filed its Motion in Limine No. 2

to Exclude Opinion Testimony of Hector Valenzuela Related to Alleged Failure to Follow GAAMP with Respect to Pioneer's Use of Agricultural Chemicals ("Valenzuela Motion");[1] [dkt. no. 831;] Plaintiffs Jim Aana, et al., on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"),[2] filed their Motion in Limine No. 1 to Exclude Expert Testimony of Thomas Loudat ("Loudat Motion"); [dkt. no. 839;] and Plaintiffs filed their Motion in Limine No. 2 to Exclude Certain Expert Testimony of James Reinhardt ("Reinhardt Motion") [dkt. no. 840]. On December 15, 2014: Plaintiffs filed their memorandum in opposition to the Valenzuela Motion ("Valenzuela Opposition"); [dkt. no. 862;] and Pioneer filed its memoranda in opposition to the Loudat Motion ("Loudat Opposition") and the Reinhardt Motion ("Reinhardt Opposition") [dkt. nos. 859, 861].  On December 21, 2014: Pioneer filed its reply in support of the Valenzuela Motion

---

[1] Defendants Gay & Robinson, Inc., and Robinson Family Partners (collectively, "the Robinson Defendants") and Pioneer (all collectively, "Defendants") filed the Valenzuela Motion, but this Court has granted summary judgment in favor of the Robinson Defendants as to all of the remaining claims against them, and they are no longer parties in this case.  See Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment as to Counts I, II, IV, V and VI of the Third Amended Complaint, filed 11/26/14 (dkt. no. 856) ("11/26/14 Summary Judgment Order"), at 21, available at 2014 WL 6685628.  This Court therefore treats all motions pending after November 26, 2014 as relating only to Pioneer.

[2] Insofar as the two cases have been consolidated, the Court will refer to the plaintiffs in both cases collectively as "Plaintiffs."

("Valenzuela Reply"); [dkt. no. 867;] and Plaintiffs filed their replies in support of the Loudat Motion ("Loudat Reply") and the Reinhardt Motion ("Reinhardt Reply") [dkt. nos. 869, 868].

These matters came on for hearing on January 5, 2015. After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, Pioneer's Valenzuela Motion is HEREBY GRANTED IN PART AND DENIED IN PART, Plaintiffs' Loudat Motion is HEREBY DENIED, and Plaintiffs' Reinhardt Motion is HEREBY DENIED for the reasons set forth below.

## BACKGROUND

The parties and the Court are familiar with the factual and procedural background of this case, which is set forth in the many orders that the Court has issued, and does not need to be repeated here. In particular, the Court refers to its Order Granting Defendants' Motion in Limine No. 1 re Health Effects ("Health Effects Order"). [Filed 8/26/14 (dkt. no. 803).[3]] This Order will only discuss the background that is relevant to the instant motions.

## I. Valenzuela Motion

Hector Valenzuela, Ph.D., is a Professor and Vegetable Crops State Extension Specialist at the University of Hawai`i at

_____

[3] The Health Effects Order is also available at 2014 WL 4244221.

Mānoa.  [Valenzuela Motion, Decl. of Clement L. Glynn in Supp. of

Motion in Limine No. 2 ("Glynn Valenzuela Decl."), Exh. A (Hector

R. Valenzuela Curriculum Vitae) at 1.]  Plaintiffs state that he

"is a widely recognized expert concerning appropriate farming

practices and the application of pesticides through Integrated

Pest Management in Hawaii."  [Valenzuela Opp. at 9.]  Plaintiffs

retained him

> to review the production and soil conservation
> practices followed by [Pioneer] at the Waimea
> Agricultural Research Center from the period of
> 1998 to 2011.  Basic questions that [he] was asked
> to review include:
>
> > a.   Whether Pioneer followed "Generally
> >      Accepted Agricultural and Management
> >      Practices (GAAMP);"
> >
> > b.   Whether Pioneer followed "Best
> >      Management Practices" as required by
> >      Kauai County Law; and
> >
> > c.   Whether Pioneer followed appropriate
> >      Integrated Pest Management (IPM)
> >      Practices, as part of their overall
> >      farming and research operations at the
> >      Waimea Agricultural Research Center.

[Glynn Valenzuela Decl., Exh. B (Expert Report by Hector

Valenzuela, Ph.D., dated 3/12/14 ("Valenzuela Report")) at 3.]

In the Valenzuela Motion, Pioneer asks this Court to

exclude Dr. Valenzuela's opinion testimony regarding Pioneer's

alleged failure to follow GAAMP "with respect to its use of

agricultural chemicals because such testimony is irrelevant, and

because allowing the jury to hear it would result in unfair

4

prejudice, undue consumption of time, and confusion of the issues." [Valenzuela Motion at 2.] Pioneer acknowledges that the issue of whether it "takes adequate measures to reduce dust emissions from the property it farms is fair game," and Pioneer does not seek to exclude Dr. Valenzuela's opinion testimony regarding dust. [Mem. in Supp. of Valenzuela Motion at 2.]

## II. **Loudat Motion**

Thomas Loudat has a Ph.D. in Economics. [Loudat Opp., Decl. of Clement L. Glynn in Supp. of Loudat Opp. ("Glynn Loudat Decl."), Exh. A (Thomas Anthony Loudat curriculum vitae) at 1.] Dr. Loudat is a private consultant who has provided economic analysis in "1000+ separate projects conducted between 1983 and present related to the estimation of economic damages in wrongful death, personal injury, wrongful termination, divorce and business litigation cases." [Id. at 4.] He has been qualified as an expert in economics in this district court, as well as in "each of Hawaii's Circuit courts [sic] and Family Courts, arbitration hearings and various public/legislative hearings." [Id.] Dr. Loudat's report states:

> Pioneer Seed Company is part of the Hawaii seed crop industry. Pioneer operates on Oahu and most significantly West Kauai. Pioneer's West Kauai operations lead to economic and fiscal impacts not only to West Kauai but Kauai County as well. This report presents results of analyzing these contributions focusing on the Kauai and West Kauai economies.

[Pioneer Seed Co.'s Economic Contributions to the Kauai & West Kauai Economies by Thomas Loudat, PhD, dated June 2014 ("Loudat Report"), filed under seal 1/6/15 (dkt. no. 874), at i.]

In the Loudat Motion, Plaintiffs ask this Court to exclude Dr. Loudat's testimony at trial because: Dr. Loudat's testimony about the economic benefit of Pioneer's operations is irrelevant; and, even if Dr. Loudat's testimony is otherwise admissible, it would be unduly prejudicial because Defendants did not provide Plaintiffs with sufficient financial information to evaluate his opinions. [Loudat Motion at 2.]

## III. __Reinhardt Motion__

James N. Reinhardt, AIA, CSI, is the President of Architectural Diagnostics, Ltd. [Reinhardt Motion, Decl. of P. Kyle Smith ("Smith Reinhardt Decl."), Exh. 2 (Architectural Diagnostics, Ltd. Report in Response to 2/24/14 Report by KHA, dated 6/19/14 ("Reinhardt Report")) at 18.[4]] He is licensed in Hawai`i and Washington and has been practicing continuously in Hawai`i since 1968. He has done work on Kauai, including work in the Kekaha/Waimea area. [Id. at 11, ¶¶ 6.1-6.2.] He has been qualified as an expert in various Hawai`i state courts in the areas of "[a]rchitectural design, practice, and ethics,

_____

[4] Mr. Reinhardt's Resume is part of his report. [Reinhardt Report at 18-20.] The Court notes that the version of the Reinhardt Report which Plaintiff filed as Exhibit 2 appears to be missing page 12.

construction and construction industry practices, repair &
maintenance of buildings, waterproofing, window systems,
selection & evaluation of flooring materials, design & evaluation
of steps & stairways, interpretation of construction contracts &
documents, interpretation of property restrictions & restrictive
covenants." [Id. at 18.] Mr. Reinhardt is the defense expert
"concerning the absence of property damage and economic loss to
Plaintiffs from Pioneer's farming operations," and Pioneer states
that he may testify "to rebut the testimony of certain of
Plaintiffs' experts." [Reinhardt Opp., Decl. of Michael J.
Scanlon ("Scanlon Reinhardt Decl."), Exh. D (Defs.' Disclosure of
Expert Witnesses, dated 6/20/14) at 4-5.] The Reinhardt Report
responds to the February 24, 2014 report prepared by David Knox
of Knox-Hoversland Architects, Ltd.[5] [Reinhardt Report at 1.]

In the Reinhardt Motion, Plaintiffs seek an order
precluding Mr. Reinhardt from testifying regarding: "a) potential
sources of dust in Waimea; or b) an alternative cost of repair to
remediate Waimea homes." [Reinhardt Motion at 2.] Plaintiffs
assert that Mr. Reinhardt's opinions are not proper rebuttal
because he agrees with Mr. Knox that there is property damage in

---

[5] Plaintiffs have designated Mr. Knox as their expert
regarding "the effect, investigation, mitigation, costs and
protocols associated with fugitive dust for Waimea, Kauai."
[Scanlon Reinhardt Decl., Exh. A (Pltfs' Designation of Expert
Witnesses Pursuant to Fed. R. Civ. P. 26(a)(2), dated 3/12/14) at
2-3.]

Waimea from dust and that Pioneer's operations are one of the potential causes of the dust.  Plaintiffs argue that this Court should exclude Mr. Reinhardt's opinions regarding other potential sources and alternate remediation costs because he did not "perform any testing, investigation, or research to determine the actual source of the dust or to quantify the actual impact," [id. at 4,] and he "did not perform any estimation of costs to remedy, repair or rectify any of the conditions that afflict Plaintiffs' homes" [id. at 10].

## DISCUSSION

### I.  Valenzuela Motion

The Valenzuela Report summarizes Dr. Valenzuela's opinions as follows:

> **a)  Did DuPont Pioneer follow GAAMP?**  Based on my review of the production management program followed by DuPont Pioneer ("Pioneer") over the 1998-2011 period I conclude that Pioneer did not follow Generally Accepted Agricultural Management Practices (GAAMP). Pioneer failed to conduct an <u>environmental and human-impact assessment of the site-specific pre-existing conditions</u> at the Waimea Agricultural Research Center, given the close proximity of Waimea Town, which is located downwind from the research station, and <u>given the close proximity of sensitive wildlife and aquatic habitats</u>.  Furthermore, over extended periods of time, Pioneer failed to obtain grubbing and grading permits, agricultural exemptions, and to prepare or follow Soil Conservation Plans as required by County Law.

**b)  Did Pioneer follow Best Management Practices?**
Based on my review of the production
management program followed by Pioneer over
the 1998-2011 period I conclude that Pioneer
did not follow Best Management Practices, at
the Waimea Agricultural Research Center.
<u>Pioneer failed to consider the site-specific
environmental conditions that existed in
Waimea</u>, and to design management programs
that would help to mitigate pesticide drift
and fugitive dust escapes into the <u>nearby
community and aquatic habitats</u>; and prevent
run-off and erosion into <u>sensitive aquatic
habitats</u>.  Pioneer also failed to adopt and
to follow through with the best management
soil conservation practices that were
outlined in plans that Pioneer had prepared
for Kauai County.

**c)  Did Pioneer follow an Integrated Pest
Management program (IPM)?**  Based on my review
of the pest management programs followed by
Pioneer over the 1998-2011 period I conclude
that Pioneer did not follow Integrated Pest
Management Practices (IPM), at the Waimea
Agricultural Research Center.  Pioneer did
not prepare an internal IPM manual that would
outline their pest management program with
clear guidelines as to pesticide thresholds,
and alternative management practices, which
could be used as a training manual for staff,
given the high staff turn-over rate at the
Waimea Research Center.  Also, Pioneer's pest
management programs were centered around the
use of pesticides, with less priority given
to alternative management programs, which is
counter to the generally accepted IPM
approach.  Over the years, Pioneer was cited
numerous times by regulatory agencies with
complaints over pesticide drift and/or
improper pesticide use.  Furthermore, an
internal pesticide safety use audit conducted
by Pioneer outlined a number of deficiencies
with respect to improper staff training and
inadequate pesticide use and handling at the
Waimea Agricultural Research Center.

[Valenzuela Report at 1 (bold emphasis in original, underline emphasis added).]  Plaintiffs argue that Dr. Valenzuela's opinions regarding Pioneer's use of pesticides and/or agricultural chemicals are relevant to: 1) Plaintiffs' claims regarding pesticide drift into the Waimea community; and 2) their burden to prove, as to all of their claims, that the Hawaii Right to Farm Act, Haw. Rev. Stat. Chapter 165, does not apply because Pioneer failed to operate the Waimea Research Center in a manner consistent with GAAMP.[6]

---

[6] Haw. Rev. Stat. § 165-4 which provides that:

> No court, official, public servant, or public employee shall declare any farming operation a nuisance for any reason if the farming operation has been conducted in a manner consistent with generally accepted agricultural and management practices.  There shall be a rebuttable presumption that a farming operation does not constitute a nuisance.

Plaintiffs' negligence and trespass claims are also considered with the class of "nuisance" claims governed by the Farm Act. See Haw. Rev. Stat. § 165-2; see also Order Denying Pltfs.' Motion for Partial Summary Judgment to Dismiss Def. Dupont Pioneer's Third Affirmative Defense Based on the Hawaii Right to Farm Act, Hawaii Revised Statutes, Chapter 165, filed 9/30/14 (dkt. no. 825), *available at* 2014 WL 4956489.  In light of the rebuttable presumption in § 165-4, "in order to establish their negligence, trespass, or common law nuisance claims, Plaintiffs will have to prove that Pioneer failed to operate the [Waimea Research Center] in a manner consistent with generally accepted agricultural and management practices."  See Order Granting in Part and Denying in Part Defs.' Motion to Dismiss Third Amended Complaint (Rule 12(b)(6)), filed 2/27/14 (dkt. no. 608), at 7 (citation omitted), *available at* 2014 WL 806224.

## A.    Claims Regarding Pesticide Drift

Without waiving their right to contest the issue on appeal, Plaintiffs acknowledge that this Court has ruled their Third Amended Complaint (Property Related Claims) ("Third Amended Complaint"), [filed 9/6/13 (dkt. no. 331),] only alleges claims for property damages.  They argue that one component of their property damage claims is their claim that they have lost the use and enjoyment of their property because they have observed the pesticide drift and they are concerned about the effect that it may have on their health and the environment.  This Court, however, has ruled that the Third Amended Complaint does not contain such claims.  See Health Effects Order, 2014 WL 4244221, at *3 (concluding that "the Third Amended Complaint does not allege **any** substantive claim based on environmental effects" (emphasis added)), *4 (concluding that "the Third Amended Complaint does not allege **any** substantive claim based on health effects" (emphasis added)).  Similarly, there are no claims in this case alleging harm to "wildlife and aquatic habitats" as a result of pesticide drift from Pioneer's operations.

Dr. Valenzuela's testimony regarding Pioneer's use of pesticides and/or agricultural chemicals is irrelevant to Plaintiffs' claims for property damages, unless his testimony specifically addresses the effect on relevant **property**.  For

example, testimony that pesticide drift from Pioneer's operations caused increased corrosion of vehicles in the Waimea area would be relevant.  Further, this Court finds that Dr. Valenzuela's testimony regarding Pioneer's use of pesticides and their effects on relevant **property** would not: be unfairly prejudicial, confuse the jury, or result in undue delay.  See Fed. R. Evid. 403.

### B.   Whether Pioneer Complied with GAAMP

Plaintiffs also argue that Dr. Valenzuela's testimony regarding Pioneer's use of pesticides and/or agricultural chemicals is relevant to Plaintiffs' burden to prove, as to all of their remaining claims, that Pioneer failed to comply with GAAMP.  If Pioneer failed to comply with GAAMP regarding harm unrelated to the claims in this case, such as harm to coral reefs and marine life, it arguably makes it more probable that Pioneer failed to comply with GAAMP regarding harm to Plaintiffs' property.  See Fed. R. Evid. 401(a) ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

This Court, however, finds that such relevance is outweighed by the risk of undue prejudice and jury confusion. Even if those risks could be addressed through jury instructions about the limited purpose of that testimony, the limited relevance is outweighed by the undue delay which would result.

Allowing such evidence would lengthen Dr. Valenzuela's testimony, and this Court would also have to allow Pioneer to respond with its own expert witness testimony regarding those unrelated harms. This would exponentially increase the length of the trial. This Court therefore concludes that Dr. Valenzuela's testimony about the effects of Pioneer's use of pesticides that are unrelated to Plaintiffs' property claims should be excluded pursuant to Rule 403.

### C.    Ruling

To the extent that the Valenzuela Report addresses the effects of Pioneer's use of pesticides and/or agricultural chemicals on relevant **property,** Pioneer's Valenzuela Motion is DENIED. At trial, Dr. Valenzuela may testify regarding those effects and whether Pioneer complied with GAAMP to prevent and/or mitigate such effects. The Valenzuela Motion is GRANTED in all other respects.

## II. Loudat Motion

### A.    Relevance

Plaintiffs first argue that Dr. Loudat's opinion testimony is not relevant because any public, economic benefit of Pioneer's operations is not a defense to Plaintiffs' claims. Specifically, Plaintiffs argue that Hawai`i law does not recognize a public benefit or economic value defense to a

nuisance claim.  [Loudat Motion at 6 & nn.14-16 (citing <u>Fernandez</u>

<u>v. People's Ice & Refrigerating Co.</u>, 5 Haw. 532, 534 (Hawai`i

Kingdom 1886)).]  In <u>Fernandez</u>, a nuisance action, the Supreme

Court of the Kingdom of Hawai`i held that: "It can be no defense

in this case that ice may be a necessity, or that the price of it

may have been reduced by the operation of defendants' factory."

5 Haw. at 534.  Although Plaintiffs acknowledge the age of

<u>Fernandez</u>, they argue that this Court must follow it because it

is the only Hawai`i state court case addressing the issue.

This Court has diversity jurisdiction over the instant

case pursuant to the Class Action Fairness Act.  [Notice of

Removal, filed 5/4/12 (dkt. no. 1), at ¶ 12 (some citations

omitted) (citing 28 U.S.C. § 1332(d)).]  The Ninth Circuit has

recognized that:

> In determining the law of the state for purposes
> of diversity, a federal court is bound by the
> decisions of the highest state court.  <u>Harvey's
> Wagon Wheel, Inc. v. Van Blitter</u>, 959 F.2d 153,
> 154 (9th Cir. 1992).  If the state's highest court
> has not decided an issue, it is the responsibility
> of the federal courts sitting in diversity to
> predict "how the state high court would resolve
> it."  <u>Air-Sea Forwarders, Inc. v. Air Asia Co.,
> Ltd.</u>, 880 F.2d 176, 186 (9th Cir. 1989) (internal
> quotation marks omitted). . . .

<u>Albano v. Shea Homes Ltd. P'ship</u>, 634 F.3d 524, 530 (9th Cir.

2011).

The Hawai`i state courts consider case law from the

Supreme Court of the Kingdom of Hawai`i as Hawai`i Supreme Court

precedent.  See, e.g., Maunalua Bay Beach Ohana 28 v. State, 122

Hawai`i 34, 38-39, 222 P.3d 441, 445-46 (Ct. App. 2009)

(discussing Halstead v. Gay, 7 Haw. 587 (1889)).  However, it is

unclear whether Hawai`i law currently embraces the public benefit

holding in Fernandez because no Hawai`i state court case has

cited Fernandez for that proposition, or any other proposition.

Further, neither the parties nor this Court is aware of any other

Hawai`i state court case addressing the same issue.

        Pioneer argues that the law of nuisance has evolved

significantly since the time of Fernandez, and the Hawai`i

Supreme Court would follow the modern approach, which is

described in Restatement (Second) of Torts § 822 ("Restatement

§ 822") and its comments.  Section 822 states:

>    One is subject to liability for a private nuisance
>    if, but only if, his conduct is a legal cause of
>    an invasion of another's interest in the private
>    use and enjoyment of land, and the invasion is
>    either
>
>        (a) intentional and unreasonable, or
>
>        (b) unintentional and otherwise actionable
>        under the rules controlling liability for
>        negligent or reckless conduct, or for
>        abnormally dangerous conditions or
>        activities.

Comment b to Restatement § 822 acknowledges the historical change

in nuisance law:

>    In early tort law the rule of strict liability
>    prevailed.  An actor was liable for the harm
>    caused by his acts whether that harm was done

> intentionally, negligently or accidentally. In
> course of time the law came to take into
> consideration not only the harm inflicted but also
> the type of conduct that caused it, in determining
> liability. This change came later in the law of
> private nuisance than in other fields. Private
> nuisance was remediable by an action on the case
> irrespective of the type of conduct involved.
> Thus the form of action did not call attention to
> the change from strict liability to liability
> based on conduct. But the change has occurred,
> and an actor is no longer liable for accidental
> interferences with the use and enjoyment of land
> but only for such interferences as are intentional
> and unreasonable or result from negligent,
> reckless or abnormally dangerous conduct.

In addition, comment k to Restatement § 822(b) notes, in

pertinent part: "The standards for negligent or reckless conduct

. . . involve a balancing process . . . — that of **balancing the**

**gravity of the harm against the utility of the conduct.**"

(Emphasis added.)

When appropriate, this district court can predict that

the Hawai`i Supreme Court would abandon out-dated precedent in

favor of the modern trend in the applicable law. See, e.g.,

Elliot Megdal & Assocs. v. Hawaii Planing Mill, Ltd., 814 F.

Supp. 898, 903-04 (D. Hawai`i 1993) (predicting the abandonment

of Kyles v. Lantis, 39 Haw. 440 (1952), in favor of the

principles in Restatement (Second) of Torts § 525). In Elliot

Megdal, this district court noted that: "Hawaii courts have

increasingly relied upon the Restatement for guidance in tort

principles[;]" many of the state courts cited in Kyles

16

subsequently abandoned the rule that <u>Kyles</u> embraced; and Prosser's Law of Torts recognized the modern trend. <u>Id.</u> at 904.

The same rationale applies in the instant case. Hawai`i courts continue to look to the Restatement on issues of tort law. <u>See, e.g.</u>, <u>Adams v. Dole Food Co.</u>, 132 Hawai`i 478, 491-92, 323 P.3d 122, 135-36 (Ct. App. 2014) (discussing Restatement (Second) of Torts § 18). In listing examples of cases holding that the utility of the conduct causing the alleged nuisance is not a defense, <u>Fernandez</u> cited case law from, *inter alia*, New York, New Jersey, and Massachusetts. 5 Haw. at 533 (citing <u>Hutchins vs. Smith</u>, 63 Barb. 251 (N.Y. App. Div. 1872); <u>Ross vs. Butler</u>, 19 N. J. Eq., 294 (N.J. Ch. 1968); <u>Wesson vs. Washburne Iron Co.</u>, 13 Allen 95 (Mass. 1866)). Those states now follow Restatement § 822 and consider, as part of the analysis of a nuisance claim, the balance of the harm to the plaintiff against the benefit of the defendant's conduct. <u>See, e.g.</u>, <u>Rattigan v. Wile</u>, 841 N.E.2d 680, 686-87 (Mass. 2006); <u>Smith v. Jersey Cent. Power & Light Co.</u>, 24 A.3d 300, 309-10 (N.J. Super. Ct. App. Div. 2011); <u>Baumler v. Town of Newstead</u>, 668 N.Y.S.2d 814, 815 (App. Div. 1998). Further, a leading tort treatise describes Restatement § 822 as the "contemporary thought" regarding nuisance. 2 Dan B. Dobbs et al., The Law of Torts (2d ed. 2011) 622 § 400. It also recognizes that "courts as well as the Restatement do attempt to consider the usefulness of the

defendant's activity." Id. at 631 § 401.

For these reasons, this Court predicts that the Hawai`i Supreme Court would abandon the rule stated in Fernandez in favor of Restatement § 822, and would hold that the utility of the defendant's conduct is relevant to the plaintiff's nuisance claim. This Court therefore concludes that Dr. Loudat's opinions and testimony regarding the economic benefits of Pioneer's operations are relevant to Plaintiff's nuisance claim.

In addition, this Court notes that Plaintiffs are seeking a permanent injunction against Pioneer. [Third Amended Complaint at pg. 38, ¶ 4.] This district court has stated that:

> The standard for granting a permanent injunction is essentially the same as for granting a preliminary injunction, except that a party seeking a permanent injunction must demonstrate actual success on the merits as opposed to a mere likelihood of success on the merits. See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987). A plaintiff seeking a permanent injunction must demonstrate:
>
> > (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Hawaii Pac. Health v. Takamine, Civil No. 11-00706 SOM/KSC, 2013 WL 1858554, at *3 (D. Hawai`i May 1, 2013) (quoting eBay Inc. v. MercExhange, LLC, 547 U.S. 388, 391 (2006)). This Court also

concludes that the utility and economic benefit of Pioneer's operations is relevant to the balancing of the hardships between the parties and the public interest.

B. **Failure to Produce Supporting Information**

Plaintiffs next argue that allowing Dr. Loudat to testify would be unfairly prejudicial to them because, throughout the litigation, Defendants failed to produce financial evidence in discovery. As a result, Plaintiffs did not have sufficient information to properly evaluate Dr. Loudat's opinions. To the extent that this portion of the Loudat Motion addresses discovery disputes, those issues were, or should have been, raised before the magistrate judge through the normal discovery process. Plaintiffs cannot use a motion in limine as a substitute for a timely appeal from the magistrate judge's orders, and this Court will not revisit his rulings here.

This Court, however, also construes the Loudat Motion as arguing that Pioneer failed to make the Fed. R. Civ. P. 26(a)(2)(B) disclosures regarding the Loudat Report. Pursuant to Rule 26(a)(2)(B), the Loudat Report must include, *inter alia*:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them; [and]
>
> (iii) any exhibits that will be used to summarize or support them[.]

At the hearing on the Loudat Motion, Plaintiffs acknowledged that their counsel were able to review the materials provided to Dr. Loudat for the preparation of his report. Based upon Plaintiffs' representation and this Court's review of the Loudat Report, this Court finds that Pioneer's disclosures regarding the Loudat Report complied with Rule 26(a)(2)(B).

### C.   **Ruling**

Insofar as this Court has ruled that Dr. Loudat's opinion testimony is relevant, and Pioneer's disclosures complied with the applicable rules, Plaintiffs' Loudat Motion is DENIED.

## III. **Reinhardt Motion**

Plaintiffs seek to exclude Mr. Reinhardt's opinion testimony regarding: 1) alternate sources of Plaintiffs' claimed dust damages; and 2) the costs to repair, remediate, and clean the dust damage. As to these areas, Pioneer has offered Mr. Reinhardt as a rebuttal expert in response to Plaintiffs' expert, Mr. Knox. See Reinhardt Opp. at 1-2.

Rule 26(a)(2)(D)(ii) "defines rebuttal experts as presenting evidence that is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 635-36 (D. Hawai`i 2008) (alterations, citations, and internal quotation marks omitted). The fact that Mr. Reinhardt only responds to Mr. Knox's report and analysis -

instead of preparing his own analysis regarding alternate sources and costs of repair and remediation - is not sufficient grounds to exclude those portions of Mr. Reinhardt's testimony. Cf. id. at 636 ("The mere fact that Plaintiff designated only rebuttal experts on these issues is not sufficient grounds to strike . . . [their r]eports and exclude their testimony." (citation omitted)). However, to the extent that Pioneer has designated Mr. Reinhardt as a rebuttal expert in these areas, his testimony is limited. At trial, he can only testify regarding those issues if Plaintiffs present the opinions by Mr. Knox that Mr. Reinhardt responded to in the Reinhardt Report.

Thus, this Court DENIES Plaintiffs' Reinhardt Motion because Mr. Reinhardt's opinion testimony regarding alternate sources of dust and costs of repair and remediation is proper rebuttal expert testimony.

## CONCLUSION

On the basis of the foregoing, Pioneer's Motion in Limine No. 2 to Exclude Opinion Testimony of Hector Valenzuela Related to Alleged Failure to Follow GAAMP with Respect to Pioneer's Use of Agricultural Chemicals, filed October 15, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART, and Plaintiffs' Motion in Limine No. 1 to Exclude Expert Testimony of Thomas Loudat, and Motion in Limine No. 2 to Exclude Certain Expert Testimony of James Reinhardt, both filed October 15, 2014, are

HEREBY DENIED.

In light of the instant Order, at trial, Plaintiffs are prohibited from presenting Dr. Valenzuela's opinion testimony regarding Pioneer's alleged failure to follow generally accepted agricultural management practices with respect to its use of pesticides and/or agricultural chemicals, except to the extent that Dr. Valenzuela's opinion testimony addresses the effect of the pesticides and/or agricultural chemicals on Plaintiffs' property and whether Pioneer complied with GAAMP to prevent and/or mitigate those effects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 13, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JIM AANA, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00231 LEK-BMK; JEFFREY CASEY, ET AL. VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL; CIVIL 12-00655 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE NO. 2; AND DENYING PLAINTIFFS' MOTION IN LIMINE NO. 1 AND MOTION IN LIMINE NO. 2**